**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| RAYMOND FLANKS, | Civil Action No. 23-06897 |
| *Plaintiff*, | |
| v. | Section G |
| | Chief Judge Nannette Jolivette Brown |
| THE CITY OF NEW ORLEANS, *et al.*, | Division 4 |
| *Defendants*. | Magistrate Judge Karen Wells Roby |

**STATEMENT OF UNCONTESTED FACTS IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Jason R. Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"), through undersigned counsel, respectfully submits this statement of uncontested facts in support of its motion seeking summary judgment on Plaintiff Raymond Flanks's claims.

1.     There is no evidence that Orleans Parish prosecutors during Mr. Connick's administration were trained, instructed, or encouraged to suppress exculpatory evidence from defendants.

2.     There is no evidence that, at the time of Mr. Flanks's prosecution in 1984–1985, there was any specific pervasive practice or custom among Orleans Parish prosecutors that was causing repeated *Brady* violations.

3.     There is no evidence that, at the time of Mr. Flanks's prosecution in 1984–1985, Mr. Connick had actual or constructive notice of a pervasive practice or custom in his office that was causing repeated *Brady* violations.

4.     There is no evidence that, at the time of Mr. Flanks's prosecution in 1984–1985, there was any defect in OPDA's official policies (including policies relating to training, supervision, and discipline) that was causing repeated *Brady* violations.

1

5.      There is no evidence that, at the time of Mr. Flanks's prosecution in 1984–1985, Mr. Connick had actual or constructive notice of a defect in his office's policies (including policies relating to training, supervision, and discipline) that was causing repeated *Brady* violations.

6.      There is no evidence that, at the time of Mr. Flanks's prosecution in 1984–1985, there was a pattern of *Brady* violations caused by Orleans Parish prosecutors that were very similar to the alleged violations in Mr. Flanks's case.

7.      There is no evidence that, at the time of Mr. Flanks's prosecution in 1984–1985, Mr. Connick had actual or constructive notice of a pattern of *Brady* violations caused by Orleans Parish prosecutors that were very similar to the alleged violations in Mr. Flanks's case.

8.      There is no evidence that Mr. Connick took any action with deliberate indifference to the constitutional rights of criminal defendants.

9.      From 1974 through 1985, the average number of cases accepted by OPDA for prosecution was approximately 7,084 per year.[1]

10.     From 1974 through 1985, there were approximately 522 trials and 5,175 guilty pleas on average each year. Therefore, the total average number of combined trials and guilty pleas per year was approximately 5,698.[2]

---

[1] Exhibit 1, Solanky Expert Report, at 5; *see also* Exhibit 2, Excerpts of 1989 Screening Division report, at 2, 4; Exhibit 3, Excerpts of 1990 Screening Division report, at 4; Exhibit 4, Excerpts of 1991 Screening Division report, at 6; Exhibit 5, Excerpts of 1992 Screening Division report, at 9; Exhibit 6, Excerpts of 1993 Screening Division report, at 8; Exhibit 7, Excerpts of 1994 Screening Division report, at 6; Exhibit 8, Excerpts of 1995 Screening Division report, at 7; Exhibit 9, Excerpts of 1996 Screening Division report, at 7; Exhibit 10, Excerpts of 1997 Screening Division report, at 7; Exhibit 11, Excerpts of 1998 Screening Division report, at 7; Exhibit 12, Excerpts of 1999 Screening Division report, at 7.

[2] Exhibit 1, Solanky Expert Report, at 10; *see also* Exhibit 13, Excerpts of 1988 Revised Annual Report at 2; Exhibit 14, Excerpts of 1989 Trial Division report at 5–7, 13–15; Exhibit 15, Excerpts of 1990 Trial Division report at 6–8, 14–17; Exhibit 16, Excerpts of 1991 Trials Division report at 7–9, 15–18; Exhibit 17, Excerpts of 1992 Trials Division report at 7–8, 13–16; Exhibit 18, Excerpts of 1993 Trials Division report at 6–7, 13–16; Exhibit 19, Excerpts of 1994 Trials Division report

11.     At the time of Mr. Flanks's prosecution in 1984–1985, OPDA employed a court reporter who was responsible for preparing transcripts of all testimony of lay witnesses (such as Mrs. Carnesi) before the grand jury in indicted cases. OPDA's official policy required that these transcripts be made available to the trial prosecutors, who were responsible for reviewing them for, among other things, exculpatory material that must be disclosed to the defense.[3]

12.     At the time of Mr. Flanks's prosecution in 1984–1985, prosecutors in the trials division attended weekly meetings led by the chief of trials at which they discussed pending cases, recent court decisions, policy matters, and relevant issues, including *Brady* issues.[4]

13.     At the time of Mr. Flanks's prosecution in 1984–1985, copies of new appellate decisions, and memoranda regarding those decisions—including decisions involving *Brady* obligations—were circulated to prosecutors, and lawyers from the appeals division would regularly attend meetings of the trials prosecutors to discuss these new decisions.[5]

14.     At the time of Mr. Flanks's prosecution in 1984–1985, prosecutors in the trials division were required to have pre-trial conferences with supervisors before taking a case to trial. One of the purposes of these conferences was to ascertain what discovery had been provided in the case and whether the State had satisfied its *Brady* obligations.[6]

---

at 5–6, 11, 13–15; Exhibit 20, Excerpts of 1995 Trials Division report at 5–7, 13–15, 17–18; Exhibit 21, Excerpts of 1996 Trials Division report at 7–9, 14–16, 19–20; Exhibit 22, Excerpts of 1997 Trials Division report at 6–7, 12, 14, 17–18; Exhibit 23, Excerpts of 1998 Trials Division report at 5–7, 13, 15, 18–19; Exhibit 24, Excerpts of 1999 Trials Division report at 5–7, 13, 18–19.

[3] Exhibit 25, Declaration of Diane Major, at ¶¶ 2–5; Exhibit 26, Declaration of Dennis Waldron, at ¶¶ 3–10.

[4] Exhibit 27, McElroy Depo., at 13, 35–38; Exhibit 28, Bane Depo., at 10, 16–18, 179–184; Exhibit 29, Cannizzaro Depo., at 36, 129–132.

[5] Exhibit 28, Bane Depo., at 166–169; Exhibit 30, McElroy Trial Testimony, at 750–752.

[6] Exhibit 27, McElroy Depo., at 21, 41–44.

15.    There is no testimony by any of the prosecutors who worked on Mr. Flanks's case suggesting that they were following a specific policy causing suppression of exculpatory evidence.

16.    There is no testimony by any of the prosecutors who worked on Mr. Flanks's case suggesting that they were trained or instructed in ways that caused them to misunderstand their *Brady* obligations or otherwise fail to comply with them.

Respectfully submitted,

/s/ Matthew J. Paul
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
Inga C. Petrovich, 31284
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com
icp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*

4