| | |
|---|---|
| **From:** | Melissa Montle |
| **To:** | Richard Davis |
| **Subject:** | Raymond Flank OPDA File |
| **Date:** | Thursday, June 2, 2022 1:55:00 PM |
| **Attachments:** | Raymond Flank-OPDA from DocsTools (151 pages).pdf |

EXHIBIT K

OPDA-FLANKS023869



POST ARRAIGNMENT ACTION — DATE 8/28/84 (29) — A.D.A. Will — REMARKS – REASONS — CODE

Δ app. hung jury 7-5 GAC

reset 10/29/84 — NEXT CONTINUANCE DATE

SUBMITTED TO DA'S DATA ENTRY

POST ARRAIGNMENT ACTION — DATE 10/29/84 — A.D.A. Will — REMARKS – REASONS — CODE

Δ app. Ⓣ cont b/c evidence to be sent for further testing

status 1/4/85 — NEXT CONTINUANCE DATE Ⓣ

SUBMITTED TO DA'S DATA ENTRY

POST ARRAIGNMENT ACTION — DATE 1/4/85 — A.D.A. Will — REMARKS – REASONS — CODE

Ⓣ reset 2/25/85 — NEXT CONTINUANCE DATE

SUBMITTED TO DA'S DATA ENTRY

POST ARRAIGNMENT ACTION — DATE 2/25/85 — A.D.A. Will — REMARKS – REASONS — CODE

Ⓣ cont by Δ b/c of newly discovered evidence

Ⓜ 4/19/85 — Ⓣ 5/14/85 — NEXT CONTINUANCE DATE

SUBMITTED TO DA'S DATA ENTRY

POST ARRAIGNMENT ACTION — DATE 5/14/85, 5/15/85 — A.D.A. Will / Whittak — REMARKS – REASONS — CODE

Ⓣ VERDICT: GAC

Ⓢ RECOMMENDATION: LIFE

SENT. JUNE 11 — NEXT CONTINUANCE DATE

SUBMITTED TO DA'S DATA ENTRY

POST ARRAIGNMENT ACTION — DATE 6/11/85 — A.D.A. Will — REMARKS – REASONS — CODE

Δ app. sent LIFE DOC

NEXT CONTINUANCE DATE

SUBMITTED TO DA'S DATA ENTRY

POST ARRAIGNMENT ACTION — DATE — A.D.A. — REMARKS – REASONS — CODE

close

SUBMITTED TO DA'S DATA ENTRY — NEXT CONTINUANCE DATE

DEFENDANT NAME — BOF NO. — DEFENSE ATTORNEY — PHONE NUMBER

CERTIFIED DA OFFICE COPY

#299-809 "E"   1   14:30      L-17352-83   14:30
FLANK, RAYMOND            Def:   RAYMOND FLANK

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023871

CERTIFIED DA OFFICE COPY

**DEFENDANT RELEASE STATUS** (ALSO NOTE CHANGES IN STATUS AND DATES)

- [ ] PERSONAL RECOGNIZANCE
- [ ] CASH BOND MADE $
- [ ] SURETY BOND MADE
- [ ] PROPERTY BOND MADE
- [x] PRE-TRIAL DETENTION

**PLEA OFFERS**

| DATE | DEFENSE COUNSEL | A.D.A. | REMARKS |
| --- | --- | --- | --- |
| | | | |

APPROVED BY

**SENTENCE**

COMPLETE ALL THAT APPLY

CONFINEMENT PERIOD LIFE

___ PARISH PRISON
✓ DEPARTMENT OF CORRECTIONS

___ SINGLE SENTENCE
___ CONCURRENT SENTENCES
___ CONSECUTIVE SENTENCES
✓ LIFE IMPRISONMENT
___ DEATH
___ CONFINEMENT OR FINE

FINE $
SUSPENDED SENTENCE PERIOD
PROBATION PERIOD
PROBATION TYPE ___ SUPERVISED ___ UNSUPERVISED
___ SENTENCED AS HABITUAL OFFENDER

**APPEAL**

GILBERT

- [x] APPEAL FILED

COURT
DATE OF APPEAL
DISPOSITION
DATE OF DISPOSITION

CHECK LIST FOR CLOSING FILES

1. CLOSED TO ALL DEFENDANTS? ✓
2. SENTENCE INFO. ON FILE? ✓
3. COPY OF BOND IN FILE? N/A
5. WAS SENTENCE LEGAL ONE?
6. VICTIM LETTER SENT?
7. IF NOLLED IS FORM 101 SIGNED OFF?

CERTIFIED DA OFFICE COPY

# OFFICE OF THE DISTRICT ATTORNEY PARISH OF ORLEANS

ARRAIGNMENT ACTION

DATE 1-23-84 ☐ GUILTY PLEA ☐ NOT GUILTY PLEA ☐ JURY TRIAL ☐ NON-JURY TRIAL

A.D.A. DUBELIER

JUDGE BECKER — STATUS HEARING & ARRAIGN 2-6-84

DEFENSE COUNSEL C.D.P. CLYDE MERRITT

REPORTER

☐ SUBMITTED TO DARTS DATA ENTRY

POST ARRAIGNMENT ACTION — REMARKS - REASONS — CODE

DATE 2-6-84 A.D.A. DUBELIER

CONTINUED TO 2-15-84 FOR Δ TO HIRE LAWYER

NEXT CONTINUANCE DATE 2-15-84

☐ SUBMITTED TO DARTS DATA ENTRY

POST ARRAIGNMENT ACTION — REMARKS - REASONS — CODE

DATE 2-15-84 A.D.A. DUBELIER

Δ app & app Clyde Merritt atty

NEXT CONTINUANCE DATE 2/28/84

CLOSED

☐ SUBMITTED TO DARTS DATA ENTRY

POST ARRAIGNMENT ACTION — REMARKS - REASONS — CODE

DATE 2/28/84 A.D.A. Will

Δ app PNG 2-28-84 S.C.

Clyde Merritt atty

NEXT CONTINUANCE DATE

(M) 3/23/84

☐ SUBMITTED TO DARTS DATA ENTRY

POST ARRAIGNMENT ACTION — REMARKS - REASONS — CODE

DATE 3/23/84 A.D.A. Will

All motions filed — Lunacy filed

NEXT CONTINUANCE DATE

☐ SUBMITTED TO DARTS DATA ENTRY

POST ARRAIGNMENT ACTION — REMARKS - REASONS — CODE

DATE 4/5/84 A.D.A. Sharpe / Ciaccio

Lunacy hearing held

1. Dr. Cox testified that Δ is competent to stand trial

Dr. Kittey - same

Δ found to be competent

DEFENDANT OUT - 1ST WEEK OF MAY

5/2/84 ordly Batz (SH) 4/18

☐ SUBMITTED TO DARTS DATA ENTRY

POST ARRAIGNMENT ACTION — REMARKS - REASONS — CODE

DATE 4/10/84 Δ app. Will set (T) date 8/8/84

(T) 8/28/84

NEXT CONTINUANCE DATE 8/8/84

☐ SUBMITTED TO DARTS DATA ENTRY

POST ARRAIGNMENT ACTION — REMARKS - REASONS — CODE

DATE 8/22/84 A.D.A. WHITTAKER / WILLIAMS

M/TBID DENIED

DISCOVERY SATISFIED

SUPPRESS MOOT

(COMP) M.J. QUASH DENIED

8/28/84

OPDA-FLANKS023874

# Heist suspect also booked in slay case

**By WALT PHILBIN and BOB USSERY**

A man suspected of robbing an A&P early Friday was booked a short time later with a Dec. 17 murder after his car had a flat tire and he was picked up by a police tow truck.

Raymond Flank, 20, 830 N. Prieur, was booked Friday afternoon with murder and armed robbery in the Dec. 17 shooting death of Martin P. Carnesi, 69, of eastern New Orleans and with the armed robbery of the supermarket at 6600 Morrison Road.

Seventh District officers arrested Flank as he sat inside a police tow truck near Franklin Avenue and Elder street about 20 minutes after the A&P holdup.

Unaware that a holdup had just occurred, the tow truck operator saw Flank's car hobbling along on three tires and a rim on Interstate 10 and towed the car out of traffic.

While his car was being towed, Flank sat in the cab of the tow truck with an A&P grocery bag at his feet on the floorboard.

Seventh District policemen Claude Flot and Dan Riley said they saw Flank's car and the tow truck at a service station and realized it matched the description of the getaway car in the A&P robbery.

Officers said they found a plastic grocery bag containing $1,209 and a .25-caliber automatic pistol.

The officers notified Seventh District investigators who determined Flank was a possible suspect in the Carnesi slaying. Police had suspected Carnesi may have been slain by a man responsible for a number of holdups of elderly people in the Pine Village subdivision in the past few weeks.

A police spokesman said Friday afternoon that Flank is a suspect in "numerous other armed robberies in the Pines Village area," and that the victims of those crimes would be asked to attend police line-ups.

The holdup at the A&P began about 5 a.m. when a man entered the store, made a purchase, and pulled a gun on the cashier. The man put the money in a plastic A&P bag and drove away in what witnesses described as a light gray or blue car with a flat tire, police said.

One witness followed the getaway car until it turned onto the Morrison Road exit of I-10 and headed eastbound in the westbound lanes, according to police. At some point, the getaway car made a U-turn and began heading in the right direction. About 10 minutes after the holdup, an off-duty policeman driving on I-10 noticed the car with the flat, and called for a police tow truck, police said.

The tow truck then towed Flank's car from the side of the interstate near the Franklin Avenue exit to a service station near Franklin and Elder, police said.

A few minutes later, Flot and Riley spotted the car and arrested Flank.

Carnesi, a locksmith who retired from Woodward Wight & Company Ltd., about four years ago, was shot to death by a man who approached him as he said goodbye to his wife outside their home at 6901 Deanne St., at the intersection of Pines Boulevard, about 8:30 a.m. Dec. 17.

The killing took place in the 6000 block of Pines, alongside the house where Carnesi had lived since the early 1950s.

That was Carnesi's regular parking space, his daughters said. They said their father had a ritual of walking out to the curb and seeing their mother off when she left for work every Saturday morning at an antique store in Lacombe.

A neighbor later told police she had noticed a man walking up and down in the area, and Carnesi's daughters quoted their mother, Fay, as saying she noticed a man wearing a shower cap walking past on Pines Boulevard as she sat in the car.

According to Debbie Gonzales, one of Carnesi's daughters, her mother had no money in her purse, and her father had only $3 in his pocket, which was not taken.

OPDA-FLANKS023875

CERTIFIED DA OFFICE COPY

# Judge declares mistrial after jury fails to agree

**By JASON DePARLE**
*Staff writer*

Federal court

A mistrial was declared Wednesday after a jury failed to reach a verdict in the first-degree murder trial of a man accused of killing an elderly eastern New Orleans man during an armed robbery.

Criminal District Judge Rudolph Becker III declared the mistrial in the case of Raymond Flank, 20, 830 N. Prieur.

Prosecutors Jim Williams and Bruce Whittaker said Flank killed Martin P. Carnesi, 69, on Dec. 17, in front of his home at 6901 Deane St.

Carnesi's wife, Fay, testified that her husband had walked her to the curb, where she was awaiting a ride, when Flank approached them, pulled a gun, and demanded money. Carnesi was reaching in his pocket to comply when Flank shot him, she testified.

Defense attorney Clyde Merritt argued that Mrs. Carnesi failed to provide police with a detailed description of the suspect at the time of the shooting. He said this cast doubt on her identification of Flank during the trial.

Police arrested Flank six days after the shooting as he was fleeing from an armed robbery at a Morrison Road A&P. Police stopped Flank as his car was hobbling along Interstate 10 near Franklin Avenue with a flat tire. They then discovered he fit the description of the robbery suspect, and found him with the robbery money and a gun. Flank pleaded guilty to the robbery last month, but has not been sentenced.

Police experts testified that the gun carried by Flank during the robbery was the same gun that killed Carnesi. The car Flank was driving resembled one that Mrs. Carnesi saw fleeing the scene of the shooting, she said.

Merritt argued that the ballistics identification was scientifically inexact because of sloppy police work. He also chided the police for not bringing photographs to court to corroborate the ballistics testimony.

Flank's brother, Ralph, testified that Raymond was home asleep during the shooting. No other defense witnesses testified.

Prosecutors said they will try Flank again. If convicted of first-degree murder, he could receive the death penalty.

OPDA-FLANKS023876

CERTIFIED DA OFFICE COPY



# OFFICE OF THE DISTRICT ATTORNEY
## PARISH OF ORLEANS
### SCREENING ACTION FORM

Page ___ of ___ Pages

CASE NO.

DATE RECEIVED FROM NOPD

| ACCEPTED | REFUSED | DIVERTED | OTHER |
|---|---|---|---|
| (Circle if any charge is accepted) | (Circle only if all charges refused) | | HOMICIDE |

DEFENDANT'S NAME (LAST) FLANK (FIRST) RAYMOND (MIDDLE) RACE N SEX B DATE OF BIRTH 09/17/61

DEFENDANT ADDRESS 3307 PRIEF ST CITY LA MAGISTRATE'S CASE NO. 142738

NO. OF CO-DEFENDANTS  DATE SCREENED 1-24-94 SCREENED BY: REVIEWED BY:

RELEASE STATUS AT DISPOSITION
- ☐ 1 Personal Recognizance
- ☐ 2 Cash Bond -- Amount $_____
- ☐ 3 Surety Bond -- Amount $_____
- ☐ 4 Property Bond -- Amount $_____
- ☒ 5 Pre-Trial Detention

CHARGES ACCEPTED

| ITEM NO. | ARREST NO. | CHARGE | CLASS | SEQ. NO. | COUNT SFX | TITLE | STATUE | PARA | SUB PARA | ATTEMPT ETC. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1735233 | 382072 | MURDER | | | | | | . | | |
| | | | | | | | | . | | |
| | | | | | | | | . | | |
| | | | | | | | | . | | |

WORDING OF BILL OF INFORMATION FOR EACH COUNT

DATE OF OFFENSE            DATE OF ARREST

CHARGES REFUSED OR DIVERTED

| ITEM NO. | ARREST NO. | CHARGE | CLASS | SEQ. NO. | COUNT SFX | DISPOSITION REFUSAL CODE | TITLE | STATUTE | PARA | SUB PARA | ATTEMPT ETC. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1735233 | 382072 | | | | | | | . | | | |
| | | | | | | | | . | | | |
| | | | | | | | | . | | | |

REFUSAL REASONS: (Use English Text from DARTS "Standard Case Jacket Entries" booklet plus amplifying remarks)
STATUTE NO.

REMARKS AND OFFENSE SUMMARY

CRIMINAL SHERIFF

FORM OPDA 104-A



CERTIFIED DA OFFICE COPY

OPDA-FLANKS023877

OFFICE OF THE DISTRICT ATTORNEY
PARISH OF ORLEANS

WITNESS WORK SHEET

TRANS T253

| DEFENDANT'S NAME (Last) | (First) | (Middle) | ITEM NO. | MAGISTRATE OR COURT CASE NO. | B OF I NO. |
|---|---|---|---|---|---|
| FLANK | RAYMOND | | L-1735283 | 142738 | 245-827 |

| NO. | POLICE NAME, RANK, BADGE NO. AND ARREST CREDIT # | ADDRESS | E DIGIT CODE | PHONE |
|---|---|---|---|---|
| 1. | DET. JOHN DILLMAN Homicide Division | 715 S. BROAD ST. N.O., LA. | | HOME / WORK 826-5150 |
| 2. | DET. RICHARD MARINO M.C.I. - 7TH District | 5403 READ ROAD N.O., LA. | | HOME / WORK 245-1382 |
| 3. | TECHNICIAN OTHO STUBBS Crime Lab | 715 S. BROAD ST. N.O., LA. | | HOME / WORK 826-5211 |
| 4. | P/o D.T. RILEY 7TH District | 5403 READ ROAD N.O., LA. | | HOME / WORK 245-1382 |

OTHER WITNESSES — LIST IN ORDER OF CALL

| NO. | NAME | ADDRESS | # DIGIT CODE | PHONE |
|---|---|---|---|---|
| 5. | P/o J. DUCOS Crime Lab | 715 S. BROAD ST. N.O., LA. | | HOME 482-5591 / WORK 826-5211 |
| 6. | P/o ALBERT SPIESS 7TH District | 5403 READ ROAD N.O., LA. | | HOME 753-8200 / WORK 245-1382 |
| 7. | P/o LEON FRISARD 7TH District | 5403 READ ROAD N.O., LA. | | HOME / WORK 245-1382 |
| 8. | DET. PASCAL SALADINO Homicide Division | 715 S. BROAD ST. N.O., LA. | | HOME / WORK 826-5150 |
| 9. | DR. MONROE SAMUELS CORONER'S OFFICE | 2700 TULANE AVE. N.O., LA. | | HOME / WORK 827-9230 |
| 10. | MRS. FAY CARNESI | 6901 DEANNE ST. N.O., LA. | | HOME ████████ / WORK |
| 11. | GEORGE B. PENEGUY | 6900 DEANNE ST. N.O., LA. | | HOME 242-9686 / WORK |
| 12. | MUREL S. PENEGUY | 6900 DEANNE ST. N.O., LA. | | HOME 242-9686 / WORK 242-7366 |
| 13. | MICHELLE SIMERAL | 6921 DOWNMAN RD. N.O., LA. | | HOME 246-3565 / WORK 241-9173 |

DATES SUBPOENAS MAILED OR WITNESSES NOTIFIED

*TYPES OF WITNESS CODES

**FIRST DIGIT**
A  Arresting Officer
B  Assisting Officer
D  Investigating Officer
1  Other PD
2  Victim
3  Eyewitness
6  Fingerprint
8  Handwriting
5  Narc. Chemist
C  Other Chemist
9  Other Expert

**SECOND DIGIT**
E  Essential
N  Non-Essential

D. A. FILE

FORM OPDA 174

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023878

Police Item No. L-17352-83

## The State of Louisiana

PARISH OF ORLEANS

SS

Criminal District Court For The Parish Of Orleans

THE GRAND JURORS of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Orleans, in the name and by the authority of the said State, upon their oath, PRESENT

That one  RAYMOND FLANK,

late of the Parish of Orleans on the  SEVENTEENTH  day of  DECEMBER

in the year of our Lord, one thousand, nine hundred EIGHTY-THREE  with force and arms in the Parish

of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans

committed first degree murder of one MARTIN CARNESI, while in the

perpetration or attempted perpetration of an armed robbery,

contrary to the form of Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same.

_____
District Attorney for the Parish of Orleans

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023879

STATE OF LOUISIANA    CRIMINAL DISTRICT COURT

   VS.        PARISH OF ORLEANS

RAYMOND FLANK     NO. 299-809, SECTION "E"

### NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER CRIMES TO PROVE KNOWLEDGE

   PLEASE TAKE NOTICE that the State of Louisiana intends to introduce evidence of other crimes of Raymond Flank during the trial of the above-captioned proceedings for the following reasons:

I.

   Raymond Flank was indicted by the Orleans Parish Grand Jury on January 19, 1984 whith the First Degree Murder of Martin Carnesi which occurred on December 17, 1983.

II.

   The defendant was arrested on December 23, 1983 by members of the 7th District of the NOPD on an unrelated charge of armed robbery of an A&P supermarket on 6600 Morrison Road.

III.

   That pursuant to his arrest a bag was seized from the defendant which contained a .25 caliber Raven automatic pistol.

IV.

   That it was later learned that this pistol was the same pistol which was used in the first degree murder of Martin Carnesi.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023880

V.

Section 446 of Title 15 of the Louisiana Revised Statute provides that:

> "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent..."

VI.

That evidence of the defendant's possession of the concealed pistol is not merely repetitive and cumulative, nor is it a subterfuge for depicting the defendant's bad character or propensity for bad behavior, but serves the actual purpose for which it is intended, i.e., to prove knowledge.

WHEREFORE, the State of Louisiana respectfully submits that evidence of the defendant's possession the concealed pistol is admissible under the authorities cited herein and that the State should be permitted to introduce such evidence.

JAMES WILLIAMS
Assistant District Attorney

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023881

OPDA-FLANKS023882

CERTIFIED DA OFFICE COPY.

Police Item No. L-17352-83

## The State of Louisiana

PARISH OF ORLEANS

} SS

Criminal District Court For The Parish Of Orleans

THE GRAND JURORS of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Orleans, in the name and by the authority of the said State, upon their oath, PRESENT That one RAYMOND FLANK,

late of the Parish of Orleans on the SEVENTEENTH day of DECEMBER in the year of our Lord, one thousand, nine hundred EIGHTY-THREE with force and arms in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans committed first degree murder of one MARTIN CARNESI, while in the perpetration or attempted perpetration of an armed robbery,

contrary to the form of Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same.

_____
District Attorney for the Parish of Orleans



NO.

SECTION

STATE OF LOUISIANA
versus

INDICTMENT FOR

Foreman of Grand Jury

New Orleans,_____19

Returned into open Court and recorded and

filed_____19

_____Minute Clerk

Arraigned_____19

and pleaded

_____Minute Clerk

The accused_____

was sentenced on this_____day of_____19

_____

_____

_____

_____

_____Minute Clerk

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023883

OPDA-FLANKS023884

CERTIFIED DA OFFICE COPY

# OFFICE OF THE DISTRICT ATTORNEY
## PARISH OF ORLEANS

### WITNESS WORK SHEET

TRANS T253

| DEFENDANT'S NAME (Last) | (First) | (Middle) | ITEM NO. | MAGISTRATE OR COURT CASE NO. | B OF I NO. |
|---|---|---|---|---|---|
| FLANK | RAYMOND | | L-1735283 | 142738 | 245-827 |

| NO. | POLICE NAME, RANK, BADGE NO. AND ARREST CREDIT # | ADDRESS | 2 DIGIT CODE | PHONE |
|---|---|---|---|---|
| 1. | DET. JOHN DILLMAN Homicide Division | 715 S. BROAD ST. N.O., LA. | | HOME WORK 826-5150 |
| 2. | DET. RICHARD MARINO M.C.I. - 7TH District | 5403 READ ROAD N.O., LA. | | HOME WORK 245-1382 |
| 3. | TECHNICIAN OTHO STUBBS Crime Lab | 715 S. BROAD ST. N.O., LA. | | HOME WORK 826-5211 |
| 4. | P/O D.T. RILEY 7TH DISTRICT | 5403 READ ROAD N.O., LA. | | HOME WORK 245-1382 |

OTHER WITNESSES — LIST IN ORDER OF CALL

| NO. | NAME | ADDRESS | 2 DIGIT CODE | PHONE |
|---|---|---|---|---|
| 5. | P/O J. DUCOS Crime Lab | 715 S. BROAD ST. N.O., LA. | | HOME 482-5551 WORK 826-5211 |
| 6. | P/O ALBERT SPIESS 7TH DISTRICT | 5403 READ ROAD N.O., LA. | | HOME 753-8200 WORK 245-1382 |
| 7. | P/O LEON FRISARD 7TH DISTRICT | 5403 READ ROAD N.O., LA. | | HOME WORK 245-1382 |
| 8. | DET. PASCAL SALADINO Homicide Division | 715 S. BROAD ST. N.O., LA. | | HOME WORK 826-5150 |
| 9. | DR. MONROE SAMUELS Coroner's Office | 2700 TULANE AVE. N.O., LA. | | HOME WORK 827-9230 |
| 10. | MRS. FAY CARNESI | 6901 DEANNE ST. N.O., LA. | | HOME ~~REDACTED~~ WORK |
| 11. | GEORGE B. PENEGUY | 6900 DEANNE ST. N.O., LA. | | HOME 242-9686 WORK |
| 12. | MUREL S. PENEGUY | 6900 DEANNE ST. N.O., LA. | | HOME 242-9686 WORK 242-7366 |
| 13. | MICHELLE SIMERAL | 6921 DOWNMAN RD. N.O., LA. | | HOME 246-3565 WORK 241-9173 |

DATES SUBPOENAS MAILED OR WITNESSES NOTIFIED

*TYPES OF WITNESS CODES

**FIRST DIGIT**
A  Arresting Officer
B  Assisting Officer
D  Investigating Officer
I   Other PD
2  Victim
3  Eyewitness
6  Fingerprint
8  Handwriting
5  Narc. Chemist
C  Other Chemist
9  Other Expert

**SECOND DIGIT**
E  Essential
N  Non-Essential

D. A. FILE

FORM

OPDA-FLANKS023885

CERTIFIED DA OFFICE COPY

# CASE REVIEW SHEET

(TO BE COMPLETED IN ALL CASES IN WHICH A HOMICIDE OR
RAPE INDICTMENT IS RETURNED)

STATE VS. ___RAYMOND FLANK___

CHARGE ___14:30(FIRST DEGREE MURDER)___

CASE NO. AND SECTION ___299-809 "E"___

PRESENTED TO THE GRAND JURY BY ___ADA ERIC DUBELIER___

DATE FORWARDED TO SECTION
BY SCREENING DIVISION ___JANUARY 20, 1984___

DATE RECEIVED IN SECTION ___1-20-84___

WE, THE UNDERSIGNED, HAVE REVIEWED THIS CASE FOR PROSECUTION PURPOSES AND
AGREE THAT THE CASE HAS MERIT AND SHOULD PROCEED TO TRIAL AS CHARGED.

SENIOR SECTION ASSISTANT ___Eric A. Dubel___ DATE _1-20-84_

JUNIOR SECTION ASSISTANT _____ DATE _____

SECTION INVESTIGATOR _____ DATE _____

IF YOU DISAGREE WITH THIS CHARGE OR FEEL THAT THE CASE CANNOT BE SUCCESSFULLY
PROSECUTED **AS CHARGED, WITHOUT REDUCTIONS**, PLEASE COMMENT BELOW:

_____

_____

_____

_____

_____

_____

_____
SENIOR TRIAL ASSISTANT

_____
DATE

**INSTRUCTIONS TO SENIOR TRIAL ASSISTANT:**

1. COMPLETE THIS FORM AND FORWARD THE PINK COPY TO THE FIRST ASSISTANT DISTRICT
   ATTORNEY WITHIN SEVEN (7) CALENDAR DAYS OF THE DATE ON WHICH THIS CASE WAS
   FORWARDED TO YOU BY THE SCREENING DIVISION.

2. KEEP THE WHITE COPY (ORIGINAL) IN THE CASE FILE FOR YOUR RECORDS.

OPDA FORM 1983/1

(WHITE)
ORIGINAL — FILE COPY

STATE OF LOUISIANA             CRIMINAL DISTRICT COURT

VERSUS                         PARISH OF ORLEANS

RAYMOND FLANK                  NO.299-809SECTION " E "

### MOTION TO QUASH INDICTMENT

MAY IT PLEASE THE COURT:

Now comes the defendant herein, Raymond Flank through undersigned counsel and moves this Honorable Court to quash the indictment herein pursuant to Article 531 of the Louisiana Code of Criminal Procedure on the following grounds:

I.

Raymond Flank is presently charged with first degree murder pursuant to La.R.S. 14:30. *NO RESPONSE*

II.

The statute on which the indictment is based, R.S. 14:30 is violative of the 8th Amendment of the Constitution of the United States in that the said statute authorizes the infliction of the cruel and unusual punishment of death. *U.S.S.Ct. DISAGREES*

III.

The statute under which the defendant is charged allows the State of Louisiana to prosecute a defendant for First Degree Murder under circumstances which indicate only Second Degree Murder without any requirement limiting the state to distinguish between the degress of murder. *SO?*

IV.

Allowing the defendant to be tried for First Degree Murder is contrary to the law of Louisiana, denies defendant due process of law, denies equal protection fo the law and illegally exposes defendant to the death penalty. *NO RESPONSE.*

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023886

## V.

The prosecution, if this case goes to trial as a First Degree Murder case, will death qualify the jury and exclude jurors who could not be excluded from any case but capital murder, depriving defendant of a fairly representative jury, a fair trial, due process and equal protection of the law. The statute under which defendant is charged and the method of jury selection permits the exclusion of a whole segment of persons (by death qualifications re Witherspoon challenges for cause by the prosecutor) who indicate they do not favor the death penalty, leaving the remainder as death qualified jurors. OK By J.S.S. Ct.

## VI.

The statute under which the defendant is charged and the method of jury selection are unconstitutonal in violation of the Eighth and Fourteenth Amendments to the United States Constitution because the jury selected to determine the issue of guilt or innocence should not be a death qualfied jury; defendant is entitled to have the sentence determination phase of the trial decided by a second and entirely different jury that decided guilt or innocence because: OUR PENALTY PROVISION OK'D BY V.S.S. Ct.

a. A death qualified jury is biased in favor of the State on the issue of guilt or innocence and not only on the issue of the death penalty;

b. The defendant is entitled to a reasonable delay between the first phase of the trial (determination of guilt or innocence) and the second phase of the trial where the jury determines life or death, and defendant should not be forced to face the same jury for sentence that decided guilty.

c. The statute providing for an immediate sentencing hearing is in violation of the due process of law clause becasue defendant should not have faced a death qualified jury immediately after the determination of guilt by that jury and

-2-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023887

Article 905.2 makes no provisions for delay of such sentencing hearing and defendant is entitled to a delay in the second phase of the trial.

    d.  Article 905.1(a) is unconstitutional because it allows the defendant to be sentenced by the same death-qualified jury that determined guilt; Article 905.1(b) is unconstitutional because it makes a mistrial granted in the sentencing phase apply only to the sentencing hearing part of the trial (Art. 905.2) instead of granting the defendant the right to a full mistrial on the issue of guilt or innocence as well.

    e.  Article 905.2 is unconstitutional because it allows the State to introduce bad character evidence against defendant in the sentencing hearing whether or not defendant places this evidence at issue.

## VII.

Article 905.4 is unconstitutional becaues it provides no guidelines as to what standard of proof (beyond a reasonable doubt or preponderance of the evidence) to stablish mitigating or aggravating circumstances. Art. 905.4 makes no provisions for:

OK'D BY U.S.S. Ct.

    a.  a psychiatric evaluation to be directed specifically to mitigating factors relative to the probability that defendant is not a danger to society (future dangerousness);

    b.  the likelihood of future acts of violence by defendant and the impact of emotional pressure or duress on defendant when the offense was committed and the psychiatric evaluation as to whether the deceased's conduct contributed to the possibility of defendant's actions responsive to duress and emotional pressure;

    c.  a requirement of written findings (in addition to listing aggravating circumstances) by the jury to show its basis of decision and thus facilitate review by trial judges and appellate courts;

-3-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023888

d.  a mechanism for "proportionality review" as a means to compare cases in which the death penalty is imposed with those in which it is not imposed.

Article 905.4 is unconstitutional because it requires the defendant to bear the risk of non-persuasion to the existence of mitigating factors where the State of Louisiana should bear the burden of proof as to every issue.

VIII.

The statute and procedure under which defendant is charged and tried, as it now exists, creates a limitation on the availibility of judicial mercy because it unfairly prohibits defendant's right to submit the issue of guilt to the judge alone as well as the determination of sentence solely to the court.

OK'D 6Y 6.CT.

IX.

The statutes on which the indictment is based, R.S. 14:30 together with C.Cr.P. Art. 905-905.9 are violative of the Eighth Amendment of the Constitution of the United States, as construed in the United States Supreme Court capital punishment decisions of July 2 and 6, 1976 (hereinafter referred to as the death cases), in that it neither provided for the substantive sentencing review, review of the fitness of the death sentence on the whole record, nor comparative proportionality review of death sentences throughout the State of Louisiana.

NOT TRUE.

X.

The statutes as referred to above, on which the indictment is based are violative of the Eighth Amendment of the Constitution of the United States, as construed by the Death Cases in that the death penalty is not a deterrent to future homicides.

NO SUCH PROVISION IN CONSTITUTION

XI.

The statutes on which the indictment is based R.S. 14:30 is violative of the Eighth and Fourteenth Amendments of the United States Constitution as construed by the Death Cases in that said statute authorizes the jury to return a verdict providing for life

-4-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023889

in prison as an alternative to the death penalty; and that said alternative punishment is a less drastic means of accomplishing the legislative goals of deterring the defendant and others from future homicides. *OK*.

### XII.

The statute on which the indictment is based, R.S. 14:30, is violative of the Eighth Amendment to the Constitution of the United States as construed by the Death Cases, as applied to the defendant in that the death penalty is "so totally without penological justification (for the defendant's alleged offense) that it results in a gratuitous infliction of suffering." <u>Gregg v.Georgia</u>, 96 S.Ct. 882 (1976). *?*

### XIII.

The statute on which the indictment is based, R.S. 14:30, is violative of the Eighth Amendment to the Constitution of the United States as construed by <u>Furman v. Georgia</u>, 408 U.S. 238 (1972) and the Death Cases in that said statutes, as applied, results in the arbitrary and discriminatory application of the death penalty. *OK'D by S. ct*   XIV.   The statutes on which the indictment is based, R.S. 14:30 and C.Cr.P. Art. 905.4 are violative of the Eighth and Fourteenth Amendments to the United States Constitution as construed by the Death Cases, in the sub-sections (a) through (g) of C.Cr.P. Art. 905.4 are arbitrary and an irrational classification in light of the deterrent effect intended by the Legislature's premulgating said statute.   *NOT TRUE. OK'D BY S. ct.*

### XV.

The statute on which the indictment is based, R.S. 14:30 and C.Cr.P. Art. 905.4 sub-section (g) are violative of the Eighth and Fourteenth Amendments in that the language of sub-section (g) "the offense was committed in an especially heinous, atrocious, or cruel manner" is an overbroad classification reasonable applying

-5-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023890

to most homicides set forth under sub-section (a) through (g) of Art. 905.4 of the Code of Criminal Procedure, thereby unconstitutionally shifting the burden to the defendant to prove that his alleged homicide was not "committed in an especially heinous, atrocious or cruel manner." Mullaney v. Wilbur, 95 S.Ct. 1811 (1975).   *IRRELEVANT AS TO THIS CASE.*

XVI.

The Grand Jury that indicted the defendant and the Petit Jury Venire from which the Grand Jurors and Petit Jurors are selected does not and will not include any citizens who are not registered to vote as the commissioner, by ommission, neglect, "color of law" or upon reliance on an Attorney General's Opinion, does not place in the General Petit Venire Box or the Grand Jury Box any names other that those who volunteer or which are submitted to the commissioner by the registrar of voters of Orleans Parish, all of which is contrary to the order of the Supreme Court of Louisiana of October 29,1974.

XVII.

The statutes on which the indictment is based, R.S. 14:30 together with Art. 814 of the Code of Criminal Procedure are unconstitutional as the latter allows a jury to qualify a First Degree Murder Verdict by returning a lesser responsive verdict, and since the discretion vested in the jury in Louisiana is absolute and without recourse to judicial review for justification on the facts of the case the jury is permitted to determine death, life, or a verdict providing for up to twenty-one years at hard labor for the same offense against different individuals without any standards and without any accounting. This illegality is made more likely to create abuse since the Legislature has amended Art. 778 C.Cr.P. eliminating the remedy of directed verdict.

-6-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023891

VIII.

The Statute on which the indictment is based, R.S. 14:30 is unconstitutional in that the prosecutor is permitted to plea bargain for a guilty plea on a lesser offense, so that some defendants indicted for First Degree Murder will escape with sentences less harsh that death while others will eventually be consigned to die for indistinguishable offenses upon unaccountable grounds, therefore, the death penalty for First Degree Murder cannot be considered at non-arbitrary.

XIX.

That C.Cr.P. Art. 798(2) as amended by Act. 1968, Ex. Sess. No. 13, Section 1 is unconstitutional according to at least one opinion of the United States Supreme Court decision in _Furman v. Georgia_, 402 U.S. 238, 92 S.Ct. 2726 in that;

a.  that any and all jurors excused by authority of said cited article eliminates "an identifiable cross-section of the community", which according to a Gallup Poll, is an excess of 40% of all groups and an excess of 50% of all black groups;

b.  that any and all jurors excused by authority of sub-section (a) of said Article is unconstitutional as per _Furman_ in that an attempt is made to implement Art. 817, (Acts. 1966) No. 310 before being amended by Act 1972. No. 502 Section 1, Acts 1973, No. 125, Section 1.

XX.

R.S. 14:30.1(b) is unconstitutional as it is impossible to interpret or define for the following reasons:

a.  that parts of the cited statute which reads "under circumstances that would be First Degree Murder, under Art. 30 "is meaningless and without a method of proof as Art. 30 does not include or define what circumstances if any constitute First Degree Murder other than the specific intent to kill or inflict great bodily harm.

-7-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023892

b. The cited statute requires that the killing must be without any of the aggravating circumstances listed in Art. 905.4 C.Cr.P. which is impossible to prove and, in fact, is proven without any evidence. To obtain a conviction without any evidence or based on a negative statute, is in violation of Art. 1, Section 16 of the Louisiana Constitution of 1974. It also establishes two separate crimes and punishment for the same crime without any guidelines.

Respectfully submitted,

CLYDE D. MERRITT
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEFENDER PRO.
2700 TULANE AVENUE, ROOM 112
NEW ORLEANS, LA. 70119
TELEPHONE: 821-8101

ORDER

Considering the foregoing motion:

IT IS ORDERED BY THE COURT, that the State of Louisiana on this _____ day of _____, 1984, show cause at a contradictory hearing why the foregoing Motion to Quash the Indictment should not be granted.

New Orleans, Louisiana, this ____ day of _____, 1984.

J U D G E

-8-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023893

STATE OF LOUISIANA                    CRIMINAL DISTRICT COURT

VS.                                   PARISH OF ORLEANS

RAYMOND FLANK                         NO.   299-809   SECTION "E"

ANSWER TO BILL OF PARTICULARS
& DISCOVERY & INSPECTION

NOW INTO COURT, comes the State of Louisiana, through the undersigned Assistant District Attorney for the Parish of Orleans, and in answer to defendant's motion, states:

1.    12/17/84, 6000 block of Pines Blvd, 10:00 a.m.

2.    12/23/84, 730 S. White Street, 3:00 p.m.

3.    14:30 while in commission of armed robbery or attempted armed robbery.

4.    None.

5.    Yes.

6.    905.4 (a), (c).

7-9.  None.

10.   a.  No.
      b.  Yes.
      c-d.  No.

11.   None.

12.   No.

13-14.  Yes.

15.   State will comply.

16.   12/23/84, pistol, clothing & automobile.

17.   Yes.

18.   None.

19.   State will comply.

20.   No.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023894



21. Yes.

22. Armed robbery.

23. No.

24. None.

25. No.

26. None.

27. One.

28. See #27.

29. None.

30. No.

31. See #3.

32. Not entitled.

33. Martin Carnesi.

34-36. No.

37. Not entitled.

38. No.

WHEREFORE, the State prays that its answer be deemed good and sufficient in law, and that it be relieved from further answering.

<div align="right">_____<br>Assistant District Attorney</div>

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023895

STATE OF LOUISIANA

    VS.

RAYMOND FLANK

CRIMINAL DISTRICT COURT

PARISH OF ORLEANS

NO.  299-809    SECTION "E"

### ANSWER TO PRAYER FOR OYER

    NOW INTO COURT, comes the State of Louisiana, through the undersigned Assistant District Attorney for the Parish of Orleans, and in answer to defendant's motion, states:

    1.   No rights form.

    2-5.  None.

    6.   State will comply.

    WHEREFORE, the State prays that its answer be deemed good and sufficient in law, and that it be relieved from further answering.

                                  Assistant District Attorney

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023896

STATE OF LOUISIANA             CRIMINAL DISTRICT COURT

VS.                            PARISH OF ORLEANS

RAYMOND FLANK                  NO. 299-809, SECTION "E"

### NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER CRIMES TO PROVE KNOWLEDGE

PLEASE TAKE NOTICE that the State of Louisiana intends to introduce evidence of other crimes of Raymond Flank during the trial of the above-captioned proceedings for the following reasons:

I.

Raymond Flank was indicted by the Orleans Parish Grand Jury on January 19, 1984 whith the First Degree Murder of Martin Carnesi which occurred on December 17, 1983.

II.

The defendant was arrested on December 23, 1983 by members of the 7th District of the NOPD on an unrelated charge of armed robbery of an A&P supermarket on 6600 Morrison Road.

III.

That pursuant to his arrest a bag was seized from the defendant which contained a .25 caliber Raven automatic pistol.

IV.

That it was later learned that this pistol was the same pistol which was used in the first degree murder of Martin Carnesi.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023897

V.

Section 446 of Title 15 of the Louisiana Revised
Statute provides that:

> "When knowledge or intent forms an
> essential part of the inquiry, testimony
> may be offered of such acts, conduct or
> declarations of the accused as tend to
> establish such knowledge or intent..."

VI.

That evidence of the defendant's possession of the
concealed pistol is not merely repetitive and cumulative, nor
is it a subterfuge for depicting the defendant's bad character
or propensity for bad behavior, but serves the actual purpose
for which it is intended, i.e., to prove knowledge.

WHEREFORE, the State of Louisiana respectfully
submits that evidence of the defendant's possession the con-
cealed pistol is admissible under the authorities cited herein
and that the State should be permitted to introduce such evi-
dence.

JAMES WILLIAMS
Assistant District Attorney

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023898

STATE OF LOUISIANA

VS.

RAYMOND FLANK

CRIMINAL DISTRICT COURT

PARISH OF ORLEANS

NO. 299-809 SECTION "E"

ANSWER TO MOTION TO
SUPPRESS THE IDENTIFICATION

NOW INTO COURT comes the State of Louisiana, through the undersigned Assistant District Attorney for the Parish of Orleans, and in answer to defendant's Motion to Suppress the Identification states that:

Any and all identification in the possession of the State which it seeks to use against the defendant in this case was obtained incidental to the use of all substantive and procedural safeguards to which the defendant is entitled under the laws and Constitutions of the United States of America and the State of Louisiana.

WHEREFORE, the State prays that its answer be deemed good and sufficient in law, and that the defendant's Motion to Suppress the Identification be denied.

_____
Assistant District Attorney

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023899

STATE OF LOUISIANA

VS.

RAYMOND FLANK

CRIMINAL DISTRICT COURT

PARISH OF ORLEANS

NO.  299-809    SECTION "E"

ANSWER TO MOTION TO
SUPPRESS THE CONFESSION

NOW INTO COURT, comes the State of Louisiana, through the undersigned Assistant District Attorney for the Parish of Orleans, and in answer to defendant's motion, states:

There is no confession or inculpatory statement.

WHEREFORE, the State prays that its answer be deemed good and sufficient in law, and that it be relieved from further answering.

_____
Assistant District Attorney

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023900

STATE OF LOUISIANA

VS.

RAYMOND FLANK

CRIMINAL DISTRICT COURT

PARISH OF ORLEANS

NO. 299-809  SECTION "E"

ANSWER TO MOTION TO
SUPPRESS THE EVIDENCE

NOW INTO COURT, comes the State of Louisiana, through the undersigned Assistant District Attorney for the Parish of Orleans, and in answer to defendant's motion, states:

All evidence seized from the defendant was previously the subject of a Motion to Suppress the Evidence Hearing held on May 4, 1984 in State vs. Raymond Flank #299-825.

WHEREFORE, the State prays that its answer be deemed good and sufficient in law, and that it be relieved from further answering.

_____
Assistant District Attorney

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023901

STATE OF LOUISIANA          AUG 09 1985   CRIMINAL DISTRICT COURT

VERSUS                                    PARISH OF ORLEANS

RAYMOND FLANK                             NO.299-8090 SECTION "E"

APPLICATION FOR BILL OF PARTICULARS AND MOTION FOR
                DISCOVERY AND INSPECTION

MAY IT PLEASE THE COURT:

Now comes the defendant, through his undersigned counsel and moves this Honorable Court for an order granting this, his application for bill of particulars, pleading that he is unable to prepare his defense on the information filed against him unles and until he is furnished with the particulars requested herein, and requesting that the Honorable Court order the state to provide for discovery and inspection the items and information requested herein and as provided by LSA-C.Cr.P. Art. 485 and 716 et.seq.

1. State the date, time and location of the commission of the offense charged. 12/17/84   6000 BLK. PINES BLVD. 10:00 A.M.

2. State the date, time, and location of the defendant's arrest.   12/23/83   730 S. WHITE   3:00 P.M.

3. State with particularity the statute under which the defendant is charged i.e., citing applicable parts and subsections. 14:30 WHILE IN COMISSION OF ARMED ROBBERY OR ATTEMPTED ARMED ROBBERY.

4. Assuming responsive charges/verdicts, state with particularity the statutes the State feels are responsive citing applicable parts and sub-sections. NONE

5. Does the State intend to ask a penalty of death assuming such verdict to be applicable? YES

6. Assuming the possibility of sentencing hearing upon what aggravating circumstance(s) does the State intend to rely, other than as alleged in the Bill of Indictment?

905.4   (a), (c).

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023902

7. Does the State intend to introduce any oral statements alleged to have been made by the defendant to a person(s) not associated with any law enforcement agencies? If so, please give the date, time, place and officers and other persons present at the time of the oral statement and or statements were made as provided by LSA-C.Cr.P. Art. 716B.   NONE

8. Does the State intend to introduce oral statements alleged to have been made by the defendant to be a law enforcement officer? If so, please indicate whether the statements were made before or after the arrest of the defendant and whether or not the statements were made in response to interrogation by law enforcement officers? If so, please provide by LSA-C.CR.P. Art. 716C.   NONE

9. Does the District Attorney have knowledge of or the control and custody of any written or recorded statements allegedly made by the defendant? If so, please provide the defendant with same or an opportunity to inspect and copy, photograph or otherwise reproduce same within fifteen days of the trial, as provided by C.Cr.P. Art. 716A.   NONE

10. Was any identification made of the defendant (and by whom and when); as the perpetator of the offense?

    a. at the scene;   NO

    b. by photo line-up;   YES

    c. by physical line-up;   NO

    d. by any other method.   NO

11. Any failures to identify the defendant through any identification process.   NONE

-2-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023903

12. Is the State in possession, control or custody of any books, papers, documents, photographs, tangible objects, buildings, places, copies, or portions thereof which are favorable to the defendant and which are material and relevant to the issue of guilt or innocence? C.Cr.P. Art. 718(1). NO

13. Is the State in possession, control or custody of any books, papers, documents, photographs, tangible objects, buildings, places, copies or portions thereof which are intended for use by the State as evidence on the trial of this matter? C.Cr.P. Art. 718(2). YES

14. Is the State in possession, control or custody of any books, papers, documents, photographs, objects, buildings, places or portions or copies thereof which were obtained from or belong to the defendant? C.Cr.P. Art. 718(3). YES

15. If the answer to either 12, 13, or 14 is yes, please provide the defendant with a copy of same or an opportunity to inspect, copy, examine, test scientifically, photograph or otherwise reproduce each and all of the items which are the subject of the affirmative answer, as provided by C.Cr.P. Art. 718? STATE WILL COMPLY.

16. If the answer to 14 is yes, please state the exact time and place where such evidence was taken and the name(s) of each of the persons from whom such evidence was taken and whether or not such evidence was seized by virtue of a search warrant or consent to search? 12/23/84 PISTOL, CLOTHING & AUTOMOBILE

17. Has any evidence now or heretofore in the possession of the State or which the State intends to use in the prosecution of this case, been submitted to any examination or test, including, but not limited to any chemical, physical or other scientific examination or test? C.CR.P. Art. 719. YES

-3-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023904

18. Does the State have in its possession any evidence materially favorable to the defendant or provided by the defendant? If so, would the said information be provided to the petit jury in the trial of this matter? NONE

19. Does the District Attorney have in his possession custody or control any records of the defendant's criminal arrest and convictions? If so, please furnish the defendant with a copy of same provided by C.Cr.P. Art. 717. STATE WILL COMPLY.

20. Is the State in possession of any physical evidence of tangible property which it intends to introduce into evidence on the trial of this matter which was not covered in the above? NO

21. Does the District Attorney intend to offer evidence of the commission of any other crime admissible under the authority of La.R.S. 15:445 or 446? - YES -

22. Does the State intend to offer into evidence a motive attributed to the alleged act of the defendant? If so, please provide same. To ARMED ROBBERY

23. Does the State allege that the defendant committed the crime in concert or in conspiracy with another? If yes, please provide the defendant with any and all hearsay statements of the co-conspirators as provided by C.Cr.P. Art. 721. NO

24. If the answer to no. 23 is yes, what deal or arrangements have been made by the District Attorney or members of the New Orleans Police Department for the testimony of the co-conspirators or co-defendant? NONE

25. Is the State in possession or control of the record of arrest and convictions of the co-defendant or co-conspirators? If so, please make same available to defendant. NO

26. Please provide the defendant with any and all confessions, inculpatory statements and or exculpatory statements made by the co-conspirator or co-defendant as required by C.Cr.P. Art. 722. NONE                          -4-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023905

27. What is the number of wounds on the body of the alleged victim?  ONE

28. What wound(s) caused the death of the victim?  #27

29. What, if any dangerous weapon or instrument was found on the person of the deceased or around or near the body or at or near the scene of the alleged homicide?  NONE

30. If no dangerous weapon or instrument was found on the person or on the scene does the investigation of the homicide reveal that the victim had in his possession and/or attempted to use a dangerous weapon or instrument on the defendant?  NO

31. If the answer to No. 3 is 14:30, what does the State allege are the aggravating circumstances that existed at the time of the alleged offense, if any, other than as alleged in the Bill of Indictment?  SEE #3

32. If the answer to No. 31 is C.Cr.P., Art. 905.4(a) please state the elements and essentials as required in the Bill of Indictment for attempted or armed robbery?  NOT ENTITLED.

33. What is the name of the victim of the attempted or armed robbery?  MARTIN CARNESI

34. If the homicide and the robbery occurred at different addresses, please list each address stating the time of each offense.  No

35. Does the State allege that the homicide occurred while the defendant was fleeing the scene of the robbery.  NO

36. Is the name of the victim of the robbery and the homicide different?  NO

37. What is the object that was subject of the robbery?  NOT ENTITLED

38. Were any fingerprints lifted or attempted to be lifted from the scene or any object of the robbery?  NO

WHEREFORE, your mover prays that the District Attorney for the Parish of Orleans, State of Louisiana, show cause on a date and a time fixed by this Honorable Court why the Bill of Particulars and Discovery requested herein should not be furnished to defendant.

CLYDE D. MERRITT
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEF.PRO.
2700 TULANE AVE.,ROOM 112
NEW ORLEANS, LA. 70119
TELEPHONE: 821-8101

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023906

<u>O R D E R</u>

LET the District Attorney for the Parish of Orleans be and he is hereby ordered to show cause on the ____day of _____,1984, why the Bill of Particulars and Discovery herein requested should not be furnished to the defendant and a copy of same be served on him through counsel.

New Orleans, Louisiana, this ____ day of _____,1984.

_____
J  U  D  G  E

-6-

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023907

*All evidence seized from the defendant was previously the subject of a motion to suppress the evidence hearing held on May 4, 1984 in St v Raymond Flank 299-825.*

AUG 09 AND

AUG 03 ENT'D

please answer →

STATE OF LOUISIANA

VERSUS

RAYMOND FLANK

CRIMINAL DISTRICT COURT

PARISH OF ORLEANS

NO. 299-809 SECTION "E "

### MOTION TO SUPPRESS THE EVIDENCE

Now into this Honorable Court comes the defendant herein, appearing through his undersigned counsel, and protests that he has had his constitutional rights violated as are guaranteed by the Constitution of the United States of America and the Constitution of the State of Louisiana, in that the evidence to be used against the defendant has been unlawfully and illegally obtained and that the defendant moves that this evidence be suppressed in any criminal proceedings against him for the following reasons, to-wit:

1. That the evidence to be used against the defendant whether physical evidence or any form, statement, or confession, was not seized or obtained incidental to a valid arrest and/or search.

2. That the evidence to be used against the defendant was seized or obtained as the result of an unlawful search without a valid warrant and without probable cause.

WHEREFORE, the defendant prays that this evidence sought to be used by the State of Louisiana in this matter or any related proceedings, be ordered suppressed in its entirety by this Honorable Court, and that the State of Louisiana, through its authorized representative be prohibited from introducing same or making reference thereto during the trial of this cause.

Respectfully submitted,

AUG 08 ENT'D

CLYDE D. MERRITT
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEFENDER PRO.
2700 TULANE AVENUE, ROOM 112
NEW ORLEANS, LA.  70119
TELEPHONE: 821-8101

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023908



## O R D E R

Let the District Attorney for the Parish of Orleans be and he is hereby ordered to show cause on the_____day of_____,1984, why the Motion to Suppress the Evidence should not be maintained and that the evidence sought to be used be excluded and declared inadmissible by the State as the basis of its criminal prosecution.

New Orleans, Louisiana, this____day of_____,1984.

_____
J U D G E

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023909



*please answer→ There is no confession or inculpatory statement.*

STATE OF LOUISIANA                    CRIMINAL DISTRICT COURT

VERSUS          AUG 09                PARISH OF ORLEANS

RAYMOND FLANK                         NO.299-809   SECTION "E"

### MOTION TO SUPPRESS THE CONFESSION

Now into this Honorable Court comes the defendant herein, appearing through his undersigned counsel, and protests that he has had his constitutional rights violated as are guaranteed by the Constitution of the United States of America and the Constitution of the State of Louisiana, in that the confession to be used against the defendant has been unlawfully and illegally obtained and that the defendant moves that this confession be suppressed in any criminal proceedings against him.

WHEREFORE, the defendant prays that this confession sought to be used by the State of Louisiana in this matter or any related proceedings, be ordered suppressed in its entirety by this Honorable Court, and that the State of Louisiana, through its authorized representative be prohibited from introducing same or making reference thereto during the trial of this cause.

Respectfully submitted,

_____
CLYDE D. MERRITT
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEFENDER PRO.
2700 TULANE AVENUE, ROOM 112
NEW ORLEANS, LA.  70119
TELEPHONE: 821-8101

### ORDER

Let the District Attorney for the Parish of Orleans show cause on the ____day ____,1984, why the Motion to Suppress the Confession should not be maintained and that the confession sought to be used be excluded and declared inadmissible by the State as the basis of its criminal prosecution.

New Orleans, Louisiana, this____day of____,1984.

_____
J U D G E

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023910

*please answer    std. answer*

STATE OF LOUISIANA                 CRIMINAL DISTRICT COURT

VERSUS                                      PARISH OF ORLEANS

RAYMOND FLANK                     NO.299-809 SECTION "E "

## MOTION TO SUPPRESS THE IDENTIFICATION

Now into this Honorable Cout comes the defendant herein, appearing through his undersigned counsel, and protests that he has had his constitutional rights violated as are guarantted by the Constitution of the United States of America and the Constitution of the State of Louisiana, in that the identification to be used against the defendant has been unlawfully and illegally obtained and that the defendant moves that his identification be suppressed in any criminal proceedings against him for the following reasons, to-wit:

I

Defendant was viewed under circumstances which suggested that he was the perpetrator of the crime for which he is charged herein, which violated those principles announced by the United States Supreme Court in United States v. Wade, 87 S.Ct. 1926; Stovall v. Denno, 87 S.Ct. 1951.

II

The suggestion involved so tainted the identification as to cause any identification of defendant to be in violation of his rights as protected by the due process clause of the 14th Amendment to the United States Constitution.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023911

WREFORE, the defendant prays that this Motion to Suppress the Identification be maintained and prays that this identification sought to be used by the State of Louisiana, in this matter, or any related proceedings, be ordered suppressed in its entirety by this Honorable Court, and that the State through its authorized representative be prohibited from introducing same or making reference thereto during the trial of this cause.

Respectfully submitted,

CLYDE D. MERRITT
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEFENDER PRO.
2700 TULANE AVENUE, ROOM 112
NEW ORLEANS, LA.  70119
TELEPHONE: 821-8101

O R D E R

Let the District Attorney for the Parish of Orleans, be and he is hereby ordered to show cause on the_____day of_____ ,1984, why the Motion to Suppress the Identification should not be maintained and that the evidence sought to be used be excluded and declared inadmissible by the State as the basis of its criminal prosecution.

New Orleans, Louisiana, this____day of_____,1984.

J U D G E

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023912



STATE OF LOUISIANA                    CRIMINAL DISTRICT COURT

VERSUS              AUG 0 9 1977    PARISH OF ORLEANS

RAYMOND FLANK                        NO.299-809  SECTION "E"

<u>PRAYER FOR OYER</u>

MAY IT PLEASE THE COURT:

Now into Court comes the above captioned defendant, through undersigned counsel, who, with respect, represents adequate defense to the charge contained in this information, he desires and is entitled to oyer, pre-trial inspection and reproduction of the following, to-wit:

1. The rights of the arrestee form used in connection with the aest of the defendant. No *RTS. FORM*

2. All written or oral statemednts made by the defendant made to officers at the time or after his arrest. *NONE*

3. A true and correct copy and/or description of any objects found or seized at the place of the alleged offense or any other place for use as evidence in connection with this case.

4. A true and correct copy of any arrest warrant and/or search warrant, either and/or both that issued against the defendant or the place from which he was arrested. *NONE*

5. A true and correct copy of any reports made in reference to fingerprint classifications as to the object, seized in this case. *NONE*

6. Any and all documents which are properly the subject of Article 716, 717, 718, 719, 720, 721 and 722 of the Louisiana Code of Criminal Procedure, as enacted in Act 515 of the 1977 Legislature including but not limited to:    *STATE WILL*
    A. Autopsy protocol                              *COMPLY.*

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023913

B.  Proces verbal

C.  Lab reports, coroner's report and all scientific reports and experiments requested in the Bill of Particulars and Discovery

D.  All documents requested in the Bill of Particulars and Discovery

E.  The arrest and conviction record of all of the witnesses the State intends to call at trial or pre-trial hearings of this case other than police officers.  Said arrest and conviction records to include that of the deceased.

Respectfully submitted,

CLYDE D. MERRITT
ATTORNEY FOR DEFENDANT
ORLEANS INDIGENT DEFENDER PRO.
2700 TULANE AVE.,ROOM 112
NEW ORLEANS, LOUISIANA 70119
TELEPHONE: 821-8101

## O R D E R

IT IS ORDERED BY THE COURT that the District Attorney for the Parish of Orleans show cause on the _____ day of _____,1984, why the accused should not be granted oyer and pre-trial inspection of these things described and requested in the foregoing motion.

New Orleans, Louisiana, this ___ day of _____,1984.

_____
J U D G E

## CERTIFICATE

I CERTIFY THAT a copy of the foregoing Prayer for Oyer has been served on the Disrict Attorney for the Parish of Orleans this __ day of _____,1984.

_____
CLYDE D. MERRITT

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023914

Homicide

**OFFICE OF THE DISTRICT ATTORNEY**
**PARISH OF ORLEANS**
**SCREENING ACTION FORM**

Page 1 of 1 Pages

CASE NO.
12-18

DATE RECEIVED FROM NOPD
1-12-84  R. Kessel

ACCEPTED
(Circle if any charge is accepted)

REFUSED
(Circle only if all charges refused)

DIVERTED

(OTHER)
HOMICIDE

| DEFENDANT'S NAME (LAST) | (FIRST) | (MIDDLE) | RACE | SEX | DATE OF BIRTH |
|---|---|---|---|---|---|
| FLANK | RAYMOND | | N | M | 09/17/61 |

DEFENDANT ADDRESS
8307  PRIER ST  CITY LA   MAGISTRATE'S CASE NO. 142738

| NO. OF CO-DEFENDANTS | DATE SCREENED | SCREENED BY: | CODE | # OF 1 NO. |
|---|---|---|---|---|
| NONE | 1-19-84 | ADA Long  Robert Long | 39-40 75223 | 20-24 245827 |

REVIEWED BY:

MOTION NO. (CCN)
00591212

**CHARGES ACCEPTED**

| ITEM NO. | ARREST NO. | CHARGE | CLASS | SEQ. NO. 26-27 | COUNT SFX 28-29 | CHARGE CODE | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | TITLE 40-49 | STATUE 50-53 | PARA 54-55 | SUB PARA 56-56 | ATTEMPT ETC. 58-59 |
| L1735283 | 882072 | FIRST DEGREE MURDER | 1 | 10 | A | 14 | 0030 | | | |

WORDING OF BILL OF INFORMATION FOR EACH COUNT

"A TRUE BILL" - (901) - INDICTED 1-19-84
COMMITTED FIRST DEGREE MURDER OF ONE
MARTIN CARNESI, WHILE IN THE PERPETRATION
OR ATTEMPTED PERPETRATION OF AN ARMED
Robbery

| DATE OF OFFENSE | DATE OF ARREST |
|---|---|
| 12-17-83 | 12-23-83 |

RELEASE STATUS AT DISPOSITION
☐1 Personal Recognizance
☐2 Cash Bond — Amount   $_____
☐3 Surety Bond — Amount   $_____
☐4 Property Bond — Amount  $_____
☒5 Pre-Trial Detention

**CHARGES REFUSED OR DIVERTED**

| ITEM NO. | ARREST NO. | CHARGE | CLASS | SEQ. NO. 26-27 | COUNT SFX 28-29 | DISPOSITION REFUSAL CODE | CHARGE CODE | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | TITLE 40-49 | STATUTE 50-53 | PARA 54-55 | SUB PARA 56-56 | ATTEMPT ETC. 58-59 |
| ▬▬ | ▬▬ | | | | | | | | | | |

REFUSAL REASONS: (Use English Text from DARTS "Standard Case Jacket Entries" booklet plus amplifying remarks)
STATUTE NO.

**REMARKS AND OFFENSE SUMMARY**

FORM OPDA 106-A

D. A. CASE JACKET  CERTIFIED DA OFFICE COPY

OPDA-FLANKS023915

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023916



△ Raymond Flank

Call Ronnie Richards

re: lineup photo & report

None made.

Also checked w/ Bob Long.

SECTION " C "

OFFICE OF THE DISTRICT ATTORNEY
REQUEST FOR GRAND JURY SUBPOENAS

ADA ROBERT LONG

1-12-84

_____JANUARY 19_____, 1984

___9:00___ A.M.

POLICE ITEM NUMBER L-17352-83

THE STATE OF LOUISIANA VS.___RAYMOND FLANK NM 22
8307 PRIEUR ST.
NEW ORLEANS, LA.

CHARGED WITH THE FIRST DEGREE MURDER(DURING THE PERPETRATION OR ATTEMPTED
~~PERPETRATION OF AN ARMED ROBBERY~~

OF ONE  MARTIN CARNESI WM 68
6901 DEANNE ST.
NEW ORLEANS, LA.

WHICH OCCURRED AT  6000 BLOCK OF PINES BLVD.

ON (DATE) DECEMBER 17, 1983   AT (TIME) APPROXIMATELY 10:10 A.M.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| WITNESS | ADDRESS |
|---|---|
| ✓DR.  ROBERT ZELENAK | ORLEANS PARISH CORONER'S OFFICE |
| ✓DET. JOHN DILLMAN | NOPD HOMICIDE DIVISION 715 S.BROAD ST. |
| P/O D.T. RILEY | NOPD 7TH DISTRICT 5403 READ ROAD |
| ✓P/O OTHO STUBBS | NOPD CRIME LAB 715 S.BROAD ST. |
| ✓MRS. FAY CARNESI | 6901 DEANNE ST.  NEW ORLEANS, LA. |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023917

STATE OF LOUISIANA          CRIMINAL DISTRICT COURT

VS.                         PARISH OF ORLEANS

RAYMOND FLANK              NO. 299-809 SECTION "E"

Transcript of testimony of Ralph Flank only, at trial in above captioned matter, conducted on August 29, 1984, in Section "E" Criminal District Court, the Honorable Rudolph F. Becker, III, presiding judge.

------------------------------------------------------------

APPEARANCES:

Mr. Clyde Merritt           Attorney for the Defendant

Mr. Bruce Whittacker        Assistant District Attorney

Mr. Jim Williams            Assistnat District Attorney

------------------------------------------------------------

Carmel D. Stroud, Official Court Reporter

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023918

RALPH J. FLANK, after first having been duly sworn, did testify

as follows:

DIRECT EXAMINATION

EXAMINATION BY MR. MERRITT:

Q.   Your full name for the record?

A.   Ralph J. Flank.

Q.   And Ralph, are you related to Raymond Flank?

A.   Yes sir.

Q.   And what is that relationship?

A.   Brother.

Q.   And on December 17, 1983, where did you reside?

A.   At 830 North Prieur.

Q.   And on that date where did Raymond reside?

A.   The same.

Q.   On-how old is Raymond by the way?

A.   20, 20 years old.

Q.   And how old are you?

A.   23.

Q.   Do you have another brother in this courtroom?

A.   Yes.

Q.   And what is his name?

A.   Percy.

Q.   I ask Percy to stand up your Honor.

(Individual stood up in courtroom).

Q.   And how old is Percy?

A.   To my knowledge, 30, or 31.  Maybe older.

Q.   Is Ralph Tall--is Raymond taller or shorter than you?

A.   Ralph's taller.  He should be about an inch taller.

Q.   On the morning hours of December 17, 1983, more particularly
     between 9 and 10:30, where was Raymond  at that time?

A.   Sleeping to my knowledge.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023919

Q. And how are you in the position to tell the jury where Raymond was at that time?

A. Because usually every Satruday morning we had got into a habit of having breakfast on a Saturday morning. Just kind of habit.

(The Court requested the witness speak up).

A. Every Saturday morning we had gotten into the habit of having breakfast together, me and my brother. And the three of us was the family at one time, together. That's what had happened to my knowledge.

Q. On the morning of the 17th what time did you arrive home?

A. Well I had been home all that night. The 17th. On the 16th, all night I had been home.

Q. Where were you working at that time?

A. I had just finished working with Schwegmann's and every Saturday we would get paid and I would come straight home and have breakfast with Raymond most of the time and most of the time I'd shop--do my shopping at work. At that time I was just turning over to working a parttime job with Earl's Beauty Supply and it was just a few hours in the evening, something about one to four or five o'clock.

Q. Is there any doubt in your mind on December 17th, 1983 between the hours of 9 and 10:30 a.m., your brother was home with you?

A. None whatsoever.

Q. I show you what'sbeen previously marked as S-4 for purposes of identification by the State of Louisiana as their exhibit and ask you if you recognize that and if so how?

A. Yes.

2

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023920

Q. And what is that?

A. That's our own weapon, a revolver that belongs to me.

Q. And on December 17, 1983 to the best o 'your knowledge where was that weapon?

A. In my coat picket.

Q. And where was your coat pocket?

A. In my chifforobe.

BY MR. WHITTACKER:

The State has no objection to the admission of that document your Honor.

EXAMINATION BY MR. MERRITT:

Q. I show you an exhibit marked D-1 and ask you if you can identify that and if so, what is it?

A. Yes. It's a receipt that is a copy from I guess one of the papers the receipts that they had to my knowledge I thought I was going to receive some more papers that would signify purchase of my weapon.

Q. From whom did you receive that?

A. The guy at the sporting goods place--not the same guy I purchased the gun from, but the other guy that was working there at the time.

Q. Is there serial number listed on here?

A. Right.

Q. What is that serial number?

A. 683233.

Q. And the serial number on this gun? Is that the same as on this invoice?

A. 683233. Yes.

Q. Now when you kept that gun, did you keep it chambered?

A. I kept it on safety.

3

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023921

Q.  Alright did you also keep it hcambered on safety?

A.  No I don't--what do you mean cocked?

Q.  Yes.

A.  No, never.

Q.  How would you fire the gun if you were going to fire it other than removing the safety?

A.  I don't think I could fire it.  I would have to remove the safety.

Q.  After you remove the safety . . .

A.  It would cock it to the air of course, to the sky.

Q.  That means chambering a shell?

A.  Right.

Q.  And did you keep a shell chambered at all times?

A.  No.

Q.  Prior to December 17th, and of course, December 23rd, were you having any difficulties with that gun and if what tell the members of the jury?

A.  Well, I didn't really get a chance to go to a firing range or anything with the gun.  But I purchased the gun for a job--I was doing some security work at night, and it was like the first year I had it, the New Year's had came in and I had fired the gun that night and it wasn't really acting right at all. Some kind of way it got jammed so I figured that I didn't know something about it, and after that right of way I putit away into my jacket guarding myself keeping it out the way of traffic or anybody getting their hands to it.

Q.  Did the fire pin have any problems with it that you know?

A.  Well, maybe it could hve been a problem, but I didn't really have the knowledge to know that.  That's the reason I had put it up to try to bring it back to the shop as soon as I could have.

4

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023922

BY MR. MERRITT:

Thank you.

CROSS EXAMINATION

EXAMINATION BY MR. WILLIAMS:

Q. Mr. Flank have you ever been convicted of a crime?

A. No sir.

Q. Mr. Flank you just testified that you did some security work?

A. Yes sir.

Q. For whom?

A. Earl's Beauty Supply, for a private house there that he was building.

Q. And you carried that gun in connection with that security work?

A. WEll after a incident, a certain incident had went down, then I went and purchased the gun. And I talked to him about it and he told me as long as it was in my name is was alright.

Q. Did yo have a special officer's permit to carry that gun?

A. No I didn't carry it  I had it in the house with me.  I didn't carry it around.   It was where I was sleeping.

Q. So you said you had, you were working inside of a house?

A. Right. I was jusst more or less in one place.  I wasn't merely walking around.

Q. So you never concealed that gun?

A. To carry it, no, no.  No sir not at all.

Q. And you kept that gun in your robe in your house?

A. No it was in  a coat.

Q. Did you keep it in the coat to hide it in a coat?

A. Not really.  I was in a sense putting it away where I knew it was at.  I didn't think I really had to hide it from anybody.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023923

Q. But you never carried a concealed weapon?

A. No sir.

Q. Did your brother know where that gun was?

A. Not to my knowledge.

Q. Now, you testified that on the 17th that you are absolutely that your brother was home at your hosue on Prieur between 9 and 10:30?

A. Yes sir. The reason I said that because he was--pants was going to get some clothes from the cleaners during that time, whch was before, a couple of weeks ago before Christmas. Clothes he was planning on wearing on that day, Christmas.

Q. I thought you testified he was sleeping at home that's why he ate breakfast with you.

A. Well he was sleeping, but that's what I said, after, you know, he was preparing to do that that day, and he was home and that day afterhe had, you know, got up and got ready to go out, that was the plans that day.

Q. What time did he get out of bed the following Sunday?

A. The following Sunday?

Q. The next day.

A. Well I had no knowledge of that. I got up and went to church myself.

Q. What time did he get out of bed on the Friday before this Saturday?

A. A Friday?

Q. Yes sir.

A. I really don't have too much knowledge of that.

Q. What about the Thursday before? The Saturday that you are so sure of?

A. Well we were also planning that weekend to do some work with my brother and all on his house.

6

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023924

Q.  I am talking about Thursday, what time did your brother get
    out of bed on Thursday?

A.  I really don't know.  Maybe about . . .

Q.  Are you guessing now?

A.  Not really--I really don't know, alright.  I am guessing.

Q.  What about the Monday after the Saturday you are so sure, what
    time did he get out of bed on that day?

A.  I really--I had I really wasn't acknowledging, you know the
    time.  During the weekend I pretty much know about
    you know, his dealings with, because that's when I
    have a chance to do some work on my automobile, a
    few more things around the house and the washateria,
    things like that.

Q.  So you are not sure when he got out of bed on--you are
    positive he was in bed asleep on December 17th?

A.  On the weekend, that weekend.  Yes because I know he was
    kind of sleeping pretty hard and I noticed that.

Q.  Now what time did he get out of bed on December 23rd?

A.  The 23rd, it was that morning before the robbery was suppose
    to occur--is that what you are talking about?

Q.  I am talking about December 23rd, what time did he get out
    of bed?

A.  I can't recall.

Q.  Well think?  Was he living with you on December 23rd, 1983?

A.  Yes he was.

Q.  Okay, did you work on--do you remember what day of the
    week that was?

A.  I think it was--on the 23rd was it a Friday.  I think it was
    a Friday.

Q.  Did you work on that Friday?

A.  Yes . . .

7

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023925

Q. What time . . .

A. Now that I can recall, yes.

Q. What time did you work?

A. I had been working from about one to about 4 o'clock that evening.

Q. In the morning?

A. No in the evening--the afternoon.

Q. Where were you approximately 5 o'clock in the morning on December 23rd?

A. I was at my house.

Q. Where was your brother approximately 5 o'clock in the morning on December 23rd?

A. To my knowledge. I didn't know. I got nervous and went straight out to look for him and, well after I noticed my jacket was gone and it was kind of windy outside, I went out to look for him, but I went to look for my jacket and it wasn't there. And I had went out to look for him, not seeing my jacket, so I kind of panicked and I went to calling my relatives and people to find out . . .

Q. What color was that jacket?

A. It was a brown jacket.

Q. Brown jacket? Kind of like a wind breaker?

A. No. It was long coat.

Q. On December 12, 1983, do you remember where you were approximately 8 o'clock in the morning?

A. On December 12th?

Q. Yes sir.

A. To my knowledge I was home.

Q. Where was your brother?

A. I don't know.

8

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023926

Q. Was he home, are you positive, or are you guessing?

A. He usually be home.

Q. I don't want a usually, do you remember December 12th, at 8 o'clock in the morning was your brother home at that time?

A. I don't know exactly.

Q. You don't know?

A. I don't know.

Q. So he could have been out of the house somewhere right?

A. Yes, it's a possibility.

Q. You have a car Mr. Flank?

A. Yes sir.

Q. What kind of car do you have?

A. '74 Ford, brown Torino.

Q. Let me show you a picture that's been previously marked as State's exhibit number 14, do you recognize this car Mr. Flank?

A. No sir I do not.

Q. That's not your car is it?

A. No sir.

Q. Does your brother have a car?

A. No sir.

Q. Have you ever seen your brother in this kind of car?

A. No sir.

Q. Could your brother have been in that car on December 23, 1984?

A. Maybe, it's a possibility. . .

Q. How is it . . .

A. Maybe it's a possibility . . .

Q. How is it a possibility?

A. Because you see if he was gone out the house and I didn't see him, he could have been flying. Honestly.

9

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023927

Q.  Mr. Flank, do you, when did you become aware that your
    brother had been arrested for first degree murder?

A.  Well I didn't now about the murder thing until after I heard
    about the robbery.  And when I found the jacket
    gone I had called the police and had them write up
    a report.

Q.  Is this your jacket?

A.  Yes sir.

Q.  This is your jacket?

A.  Yes sir.

Q.  You let your brother use your jacket?

A.  Well, really I don't--if it's cold outside I don't really
    tell him anything, I mean if he would take a jacket.

Q.  So what date as best as you can remember do you recall your
    brother being arrested for first degree murder of
    Martin Carneci?

A.  When did I well--the first day that I came up to court.

Q.  What date was that?

A.  (Pause).

Q.  What month was that?

A.  I think it was in January.

Q.  In January?

A.  Yes, something like that.

Q.  Did your brother come home on December 23rd, 1983?

A.  He had been home yes.

Q.  On the 23rd--what time was he home?

A.  He had been home the better part of the day, till in the
    morning.

Q.  I ask you that question again.  December 23rd, 1983, your
    brother was home the better part of the morning?

A.  To my knowledge yes.

10

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023928

Q. Are you positive about that?

A. (Pause).

Q. Yes or no?

A. Well I don't know how long he was home.

Q. But he was home during the morning?

A. Yes.

Q. And it was daylight?

A. Yes.

Q. Alright so I guess Mr. Flank the first thing you did when you found out your brother was arrested for first degree murder, you went straight to the police and you told them, "My brother couldn't have done that because he was with me", isn't that what you did?

A. No sir.

Q. Why?

A. Because I had no knowledge knowing he was arrested for murder. To my knowledge it was armed robbery.

Q. After you found out your brother was arrested for the first degree murder of Martin Carneci, you said it was some time in January, is that correct?

A. After the trial, yes. I came for the trial and I found out he had been suppose to have been affilliated with robbery, which he had got ten years for. I had no knowledge about no murder.

Q. Did you visit your brother in the back?

A. Yes.

Q. When did you go visit him?

A. I don't know on Thursday nights.

Q. On Thursday nights, every Thursday night?

A. No, when I got a chance, yes.

11

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023929

Q. I will repeat this question again so it is clear for the jury. When was the first time you saw your brother after you knew that he was arrested for first degree murder--what month was that?

A. The same month . . .

Q. Of what month, you tell me. These people don't know, they have to know what month.

A. It was January.

Q. It was January.

A. Yes.

Q. So I guess in January whenever it was and you found out your brother was arrested for first degree murder, which is a capital offense, tht he could get the electric chair for, you went straight to the police didn't you, and told them that he couldn't have done that because he was home with me?

A. No I did not sir.

Q. Why?

A. You are putting words in my mouth.

Q. Why didn't you do that?

A. Because I have no knowledge of that, still do not have any knowledge of that, the only knowledge I have of him being affilliated with breaking the law is that of the robbery sir.

Q. But Mr. Flank, you knew that your brother was charged with first degree murder?

A. No I did not sit. This is why we are here, now, today.

Q. Mr. Flank you answer my question. When did you find out that he was chargedand indicted with first degree murder and he had to go to court, when did you find that out?

12

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023930

A. It was in January.

Q. So you knew he was charged with first degree murder, right, in January?

A. Well yes.

Q. Did you know the penalty for first degree murder was?

A. Yes, somewhat.

Q. You knew he could possibly get the electric chair?

A. Yes.

Q. You knew that?

A. Yes.

Q. And knew hehad been arrested for it? Why didn't you go to the police and tell them about your alibi then, why?

A. What alibi are you talking about sir?

Q. The one you are telling this jury right now. That he was in bed asleep?

A. I saw him when he was talking person to person.

Q. No we are talking to these twelve, these thirteen people right here. Why did you tell the police about the fact that he was home asleep when this murder was committed?

A. I did not know anything about the murder. The first thing I found out about anything that my brother had been affilliated with breaking the law was that he was arrested for robbery one morning that I looked for him, no one was there and it was early in the morning and I don't know what is was and I just drove out the house and I went looking for him and the next thing I find out--I call up here and I find out he was up here for robbery.

13

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023931

Q. Mr. Flank you misunderstand everything that I've asked you. Let me ask you this question. Let's suppose hypothetically that you and your brother were together on say January 1st, you knew it was the first because it was the morning after New Year's Eve, on January 1st, and the police came and got you out of bed and you were with your brother all night long. all night long you were together and the police came and got you out of your bed and charged you with aggravated rape--said you raped some woman, and you knew you didn't do it, now if you were your brother would you expect your brother since he was with you that whole time to go tell the police "My brother was with me, he couldn't have raped that woman" . . .

BY MR. MERRITT:

It's a hypothetical question, it assumes facts that are not in evidence and it is improper.

BY MR. WILLIAMS:

Your Honor, I don't think this manunderstands my question, your Honor, I have to be able to refer to him somehow.

BY THE COURT:

I will overrule the objection Mr. Merritt.

BY MR. MERRITT:

Note an exception.

BY THE COURT:

Exception noted.

EXAMINATION BY MR. WILLIAMS:

Q. Now answer that, tell the jury that.

A. Would you please say that again sir?

Q. On January 1st at 8o'clock in the morning, you are with your brother, at your house sleeping. . .

14

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023932

A.   Right.

Q.   You are with your brother from twelve midnight, the night before, New Year's Eve, until 8 o;clock in the morning at all times. You had just fallen asleep you had been out all night together with him . . .

A.   Right.

Q.   The police come, kick your door in, they grabbed you and they say you raped this woman, you are under arrest for aggravated rape, you go to jail, do you understand, do you follow me?

A.   Yes, yes.

Q.   Now wouldn't you expect that your brother would go to the police and tell them, "He couldn't have done that, because I was with him". Wouldn't you expect your brother to do that?

A.   Well that really would have been up to my brother, not a thing of me expecting this of him.

Q.   Is this your natural brother?

A.   Yes sir.

Q.   You came from the same mother?

A.   Yes sir.

Q.   Were you close to him?

A.   Very much.

Q.   And you would think it would be up to him to come to alibi you if he . . .

A.   Well, I mean, hey, I mean, it's a thing like if we were together on that night, I mean, and the police call themself, doing their job, and they apprehended a suspect, it wouldn't be in his powers to just say that, but I mean, I don't see really what good it would do unless the evidence is proceeded and every-thing is . . .

15

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023933

OPDA-FLANKS023934

Q. Well do you recall that man and you, recall talking to him?

A. I recall introducing myself to him. Well us introducing ourselves.

Q. Mr. Flank did you tell that man that your brother shouldn't have stolen your gun?

A. No sir.

Q. Do you know how to put that clip in there?

A. Yes sir.

Q. Would you put it in there?

A. Sure. (Witness demonstrating).

Q. Do you know how to chamber a round?

A. A bullet, yes.

Q. Show the jury how to do that.

A. (Demonstrating).

Q. Take the safety off you have to unload. That's the only way to chamber a round?

A. Yes, to my knowledge.

BY MR. WILLIAMS:

No other questions.

(The witness was excused.)

17

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023935

C E R T I F I C A T E

I, the undersigned court reporter, hereby certify that the foregoing seventeen pages of proceedings in case number 299-809, are true and correct to the best of my understanding and ability. Transcription completed February 8, 1985.

CARMEL D. STROUD,
Official Court Reporter

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023936

# SCHEDULED EVENT FORM

CASE NUMBER _____                           SYSTEM NUMBER _____

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| HK-85 | Raymond Flank | T | C | S | 109 | |
| | | | | | | |
| | | | | | | |

NXT DATE 2-25-85    NEXT EVENT T    AGA Whittaker    CODE BWWI    DATA ENTRY

JDGE

CPORTER

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| | | | | | | |
| | | | | | | |
| | | | | | | |

DATE    NEXT EVENT    AGA    CODE    DATA ENTRY

REMARKS

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| | | | | | | |
| | | | | | | |
| | | | | | | |

NEXT EVENT    AGA    CODE    DATA ENTRY

REMARKS

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| | | | | | | |
| | | | | | | |
| | | | | | | |

NEXT EVENT    AGA    CODE    DATA ENTRY

REMARKS

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023937

CASE REVIEW AND TRIAL BRIEF

STATE vs.

(1) RAYMOND FLANK

(2) _____

(3) _____

CASE NUMBER: 299-809E
VIOLATION (S): 30
ITEM NUMBER: L-17352-83
DATE OF OFFENSE: 12-17-83
TIME OF OFFENSE: 10 AM
LOCATION: 10000 BLK. PINES BLVD.
DATE OF ARREST: 11-23-83
LOCATION: 730 SO. WHITE

---

INVESTIGATOR'S WORKUP

NAME: NOBLE

DATE RECEIVED IN SECTION _____
DATE INITIAL REVIEW COMPLETE _____
INV. _____ SR. ADA _____ JR. ADA _____

BILL OF INFORMATION CHECKED AND ACCURATE - DATE(S) ✓ PLACE(S) ✓ NAME(S) ✓
CHARGE(S) ✓ AMENDMENTS NEEDED _____

WITNESS LIST - ADDRESSES O.K. ✓ PHONE #'S O.K. ✓ DATE CHECKED 4-12-84

PRELIMINARY HEARING - DATE HELD _____ TRANSCRIPT ORDERED _____ RECEIVED _____

GRAND JURY TESTIMONY - DATE GIVEN _____ ORDERED _____ RECEIVED _____

| DEFENDANT(S) | B OF I NUMBER | B OF I PHOTO | PRINT OUT | FBI RAP | # OF CONV. FEL. MISD. | CERT. COPIES ORD'D REC'D | BOND IN FILE |
|---|---|---|---|---|---|---|---|
| 1. FLANK, RAYMOND | 245-827 | ✓ | ✓ | ✓ | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

REPORTS AND PHOTOS

| CRIME LAB (CLOTHING, WEAPONS, ETC.) | ORDERED | RECEIVED | CORONER | HOMICIDE ✓ RAPE | ORDERED | RECEIVED |
|---|---|---|---|---|---|---|
| 1. SCENE PHOTOS | | | DAY RECORD | | 4-12-84 | 4-19-84 |
| 2. CRIME SCENE REP'T. | 4-12-84 | 4-27-84 | AUT. PROTOCOL | | 4-12-84 | 4-19-84 |
| 3. BALLISTICS REP'T. | ✓ | ✓ | PROCESS VERBAL | | 4-12-84 | 4-19-84 |
| 4. | 4-12-84 | 4-19-84 | COR, PICS. | | 4-12-84 | 4-19-84 |
| 5. | | | LINEUP PHOTO TOX. AND REPORT | | 4-12-84 | NONE HELD |

| EVIDENCE | | MULTIPLE BILLS | | | | DEFENDANT AT LARGE | |
|---|---|---|---|---|---|---|---|
| ITEM | LOCATION | CONV. | PLACE | ORDERED | RECEIVED | DATE AT LARGE: | |
| 1. CASING | CP 4 F | | | | | AM'T OF CAPIAS: | |
| 2. PELLET | " | | | | | COPY OF BOND: | |
| 3. V'S PRINTS | " | | | | | COPY OF B.F.: | |
| 4. GUN | " | | | | | COPY OF SATISFACTION: | |
| 5. PHOTO LINEUP | " | | | | | DATE IN N.C.I.C.: | |
| 6. | | PACKAGE COMPLETED: | | | | | |

Defendant on active probation ( ) inactive probation ( ) parole ( ) Case # _____
Action taken _____ Date _____
Problems in case: _____

A.D.A. CHECK LIST PRIOR TO TRIAL

| NEEDED | FILED, IN FILE OR LOCATED AND EXAMINED | N/A | ITEM |
|---|---|---|---|
| 1. ( ) | ( ) | ( ) | complete and accurate witness list |
| 2. ( ) | ( ) | ( ) | computer print out |
| 3. ( ) | ( ) | ( ) | FBI rap sheets (current and updated) |
| 4. ( ) | ( ) | ( ) | certified copies of convictions for trial |
| 5. ( ) | ( ) | ( ) | complete multiple bill package |
| 6. ( ) | ( ) | ( ) | lunacy reports |
| 7. ( ) | ( ) | ( ) | all defense motions |
| 8. ( ) | ( ) | ( ) | all state's answers |
| 9. ( ) | ( ) | ( ) | motion to discover alibi witnesses (Art. 727) |
| 10. ( ) | ( ) | ( ) | motion to discover defense documents (Art. 724) |
| 11. ( ) | ( ) | ( ) | motions to discover reports of examinations or tests (Art. 725) |
| 12. ( ) | ( ) | ( ) | motions to discover defense of mental conditions (Art. 726) |
| 13. ( ) | ( ) | ( ) | notice of intent to use confession (Art. 768) |

OPDA(300)80

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023938

OPDA-FLANKS023939

CERTIFIED DA OFFICE COPY

S C H E D U L E D   E V E N T   F O R M

CASE NUMBER _____    SYSTEM NUMBER _____



| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| 4-5-85 | Raymond Flank | T | C | S | 109 | |

EXT DATE 2-25-85  NEXT EVENT T  AGA Whittaker  CODE Bush T  DATA ENTRY

JDGE  REMARKS

RPORTER

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| | | | | | | |

EXT DATE  NEXT EVENT  AGA  CODE  DATA ENTRY

JDGE  REMARKS

RPORTER

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| | | | | | | |

EXT DATE  NEXT EVENT  AGA  CODE  DATA ENTRY

JDGE  REMARKS

RPORTER

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STAT |
|------|-----------|-------|--------|----------------|---------------|----------------|
| | | | | | | |

NEXT EVENT  AGA  CODE  DATA ENTRY

REMARKS

OPDA-FLANKS023940

CERTIFIED DA OFFICE COPY

CASE REVIEW AND TRIAL BRIEF

STATE vs.

(1) RAYMOND FLANK

(2) _____

(3) _____

CASE NUMBER: 299-809E
VIOLATION (S): 30
ITEM NUMBER: L-17352-83
DATE OF OFFENSE: 12-17-83
TIME OF OFFENSE: 10 AM
LOCATION: 1000 BLK. PINES BLVD.
DATE OF ARREST: 11-23-83
LOCATION: 730 SO. WHITE

-------------------------------------------------

INVESTIGATOR'S WORKUP

NAME: NOBLE

DATE RECEIVED IN SECTION _____
DATE INITIAL REVIEW COMPLETE _____
INV. _____ SR. ADA _____ JR. ADA _____

BILL OF INFORMATION CHECKED AND ACCURATE - DATE(S) ✓ PLACE(S) ✓ NAME(S) ✓
CHARGE(S) ✓ AMENDMENTS NEEDED _____

WITNESS LIST - ADDRESSES O.K. ✓ PHONE #'S O.K. ✓ DATE CHECKED 4-13-84

PRELIMINARY HEARING - DATE HELD _____ TRANSCRIPT ORDERED _____ RECEIVED _____

GRAND JURY TESTIMONY - DATE GIVEN _____ ORDERED _____ RECEIVED _____

| DEFENDANT(S) | B OF I NUMBER | B OF I PHOTO | PRINT OUT | FBI RAP | # OF CONV. FEL. MISD. | CERT. COPIES ORD'D REC'D | BOND IN FILE |
|---|---|---|---|---|---|---|---|
| 1. FLANK, RAYMOND | 245-827 | ✓ | ✓ | ✓ | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

REPORTS AND PHOTOS

| CRIME LAB (CLOTHING, WEAPONS, ETC.) | ORDERED | RECEIVED | | | ORDERED | RECEIVED |
|---|---|---|---|---|---|---|
| | | | CORONER | HOMICIDE ✓ RAPE | | |
| 1. SCENE PHOTOS | 4-12-84 | 4-27-84 | DAY RECORD AUT. PROTOCOL | | 4-13-84 | 4-19-84 |
| 2. CRIME SCENE REP'T. | ✓ | ✓ | PROCESS VERBAL | | 4-13-84 | 4-19-84 |
| 3. BALLISTICS REP'T. | 4-12-84 | 4-19-84 | COR. PICS. | | 4-13-84 | 4-19-84 |
| 4. | | | LINEUP PHOTO TOX. | | 4-13-84 | 4-19-84 |
| 5. | | | AND REPORT | | 4-12-84 | NONE HELD |

| EVIDENCE | | MULTIPLE BILLS | | | | DEFENDANT AT LARGE | |
|---|---|---|---|---|---|---|---|
| ITEM | LOCATION | CONV. | PLACE | ORDERED | RECEIVED | DATE AT LARGE: | |
| 1. CASING | CP & F | | | | | AM'T OF CAPIAS: | |
| 2. PELLET | " | | | | | COPY OF BOND: | |
| 3. V'S PRINTS | " | | | | | COPY OF B.F.: | |
| 4. GUN | " | | | | | COPY OF SATISFACTION: | |
| 5. PHOTO LINEUP | " | | | | | | |
| 6. | | PACKAGE COMPLETED: | | | | DATE IN N.C.I.C.: | |

Defendant on active probation ( ) inactive probation ( ) parole ( ) Case # _____
Action taken _____ Date _____
Problems in case: _____

A.D.A. CHECK LIST PRIOR TO TRIAL

| NEEDED | FILED, IN FILE OR LOCATED AND EXAMINED | N/A | ITEM |
|---|---|---|---|
| 1. ( ) | ( ) | ( ) | complete and accurate witness list |
| 2. ( ) | ( ) | ( ) | computer print out |
| 3. ( ) | ( ) | ( ) | FBI rap sheets (current and updated) |
| 4. ( ) | ( ) | ( ) | certified copies of convictions for trial |
| 5. ( ) | ( ) | ( ) | complete multiple bill package |
| 6. ( ) | ( ) | ( ) | lunacy reports |
| 7. ( ) | ( ) | ( ) | all defense motions |
| 8. ( ) | ( ) | ( ) | all state's answers |
| 9. ( ) | ( ) | ( ) | motion to discover alibi witnesses (Art. 727) |
| 10. ( ) | ( ) | ( ) | motion to discover defense documents (Art. 724) |
| 11. ( ) | ( ) | ( ) | motions to discover reports of examinations or tests (Art. 725) |
| 12. ( ) | ( ) | ( ) | motions to discover defense of mental conditions (Art. 726) |
| 13. ( ) | ( ) | ( ) | notice of intent to use confession (Art. 768) |

OPDA(30D)80

A.D.A. CHECK LIST PRIOR TO TRIAL (CONTINUED)

| | NEEDED | FILED, IN FILE OR LOCATED AND EXAMINED | N/A | ITEM |
|---|---|---|---|---|
| 14. | ( ) | ( ) | ( ) | witness statements |
| 15. | ( ) | ( ) | ( ) | scene photos |
| 16. | ( ) | ( ) | ( ) | victim photos |
| 17. | ( ) | ( ) | ( ) | lineup photos and supplemental report |
| 18. | ( ) | ( ) | ( ) | pro se verbal |
| 19. | ( ) | ( ) | ( ) | autopsy protocol |
| 20. | ( ) | ( ) | ( ) | rape examination reports |
| 21 | ( ) | ( ) | ( ) | blood typing - alcohol level reports |
| 22. | ( ) | ( ) | ( ) | crime lab reports - weapons, clothing, fingerprints, hair comparison, etc. |
| 23. | ( ) | ( ) | ( ) | weapons |
| 24. | ( ) | ( ) | ( ) | clothing and other physical evidence |
| 25 | ( ) | ( ) | ( ) | central lockup documents |
| 26. | ( ) | ( ) | ( ) | evidence list |
| 27. | ( ) | ( ) | ( ) | voir dire questions |
| 28. | ( ) | ( ) | ( ) | opening statement |
| 29. | ( ) | ( ) | ( ) | closing statement |
| 30. | ( ) | ( ) | ( ) | rebuttal statement |

TRIAL PREPARATION

| | | DONE | N/A |
|---|---|---|---|
| 1. | visit to scene | | |
| 2. | additional photos by D.A. photographer | | |
| 3. | file state discovery motions | | |
| 4. | locate all witnesses | | |
| 5. | order and review transcripts - prior trial, motions, preliminary hearing, grand jury | | |
| 6. | interview all witnesses | | |
| 7. | check central lockup documents | | |
| 8. | check defendant's belongings at Parish Prison | | |
| 9. | verify subpoenas well in advance | | |
| 10. | check subpoena returns | | |
| 11. | pull old cases and refusals on defendant(s) and witnesses | | |
| 12. | run all witnesses and victims in computer | | |
| 13. | write and submit special charges | | |
| 14. | ask for sequestration of witnesses | | |
| 15. | file 768 notice | | |

LEGAL PROBLEMS ANTICIPATED

CHECK IF APPLICABLE

1. chain of evidence
2. admissibility of evidence
3. admissibility of statements
4. evidence of other crimes
5. privileges
6. surprise or hostile witnesses - impeachment
7. prior inconsistent statements - proof of
8. reputation evidence
9. other: _____

DEFENSES ANTICIPATED

CHECK IF APPLICABLE

1. alibi
2. misidentification
3. insanity
4. frame
5. reasonable doubt
6. racism
7. try the cops, victim, you, witnesses
8. sympathy
9. sloppy police work
10. police brutality
11. intoxication
12. other: _____

CASE REVIEWED - READY FOR TRIAL

SUPERVISOR _____       DATE _____

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023941

## NEW ORLEANS POLICE DEPARTMENT — XX INCIDENT REPORT / SUPPLEMENTAL REPORT

PAGE 1 OF 9

1. ITEM NUMBER: L-17352-83

**EVENT**

| Field | Value |
|---|---|
| 2. SIGNAL | 64-30 |
| 3. INCIDENT | Armed Robbery & Murder |
| 4. DATE/TIME OCCURRED | 12/17/83 10 AM |
| 5. DIST | 7 |
| 6. SECTOR | 702 |
| 7. LOCATION OF OCCURRENCE | 6000 Pines Blvd. |
| 6. DATE/TIME OF REPORT | 12/17/83 10:15 |
| 8. ZONE/SUBZONE | D01 |
| 10. WEATHER | 2 |
| 11. TEMP | 50 |
| 12. LIGHTING | G |
| 13. BULLETIN REQD | X YES |

☐ SELF INITIATED  ☐ FLAGGED DOWN  X CFS

**WITNESS/REPORTING PERSON/VICTIM**

14. NAME  X VICTIM  ☐ REPORTING PERSON  ☐ WITNESS  ☐ PERSON INTERVIEWED
CARNESI, MARTIN (LAST NAME / FIRST NAME / MIDDLE NAME)
RACE W  SEX M  DATE OF BIRTH 11/06/15
VICTIM'S RACE/SEX: 1601 WHITE, 1610 MALE
16. HOME ADDRESS: 6901 Deanne St.
17. HOME PHONE: 242-7531
18. DRIVER'S LICENSE: Unknown
OCCUPATION: Retired
19. BUSINESS ADDRESS: Nome
20. BUSINESS PHONE: X
21. SOC. SECURITY NO.: X
15. RESIDENCE STATUS: X 630 N O RESIDENT
22. SOBRTY 5  INJURY 1  TYPE INJURY: Gun Shot To Chest
TREATED: DOA  MEDICAL X  TRANS X  23. TRANS. TO: Coroner's Office
24. DOCTOR/CORONER: Asst. Cor. Dr. J. Rosenber

25. NAME  X VICTIM  ☐ REPORTING PERSON  X WITNESS  ☐ PERSON INTERVIEWED
CARNESI, FAY (LAST NAME / FIRST NAME / MIDDLE NAME)
RACE W  SEX F  DATE OF BIRTH 11/02/15
VICTIM'S RACE/SEX: 1601 WHITE, 1611 FEMALE
27. HOME ADDRESS: 6901 Deanne St.
28. HOME PHONE: 242-7531
29. DRIVER'S LICENSE: X
OCCUPATION: Housewife
30. BUSINESS ADDRESS: X
31. BUSINESS PHONE: X
32. SOC. SECURITY NO.: X
26. RESIDENCE STATUS: 630 N O RESIDENT
33. SOBRTY 1  INJURY 7  TYPE INJURY: X
TREATED X  MEDICAL X  TRANS X  34. TRANS. TO: X
35. DOCTOR/CORONER: X

36. NAME  ☐ VICTIM  ☐ REPORTING PERSON  ☐ WITNESS  X PERSON INTERVIEWED
YOUMANS, RUDOLPH E. (LAST NAME / FIRST NAME / MIDDLE NAME)
RACE W  SEX M  DATE OF BIRTH 12/17/48
VICTIM'S RACE/SEX: 1601 WHITE, 1610 MALE
38. HOME ADDRESS: 217 North Blvd.
39. HOME PHONE: 643-1615
40. DRIVER'S LICENSE: 3959188
OCCUPATION: Mailman
41. BUSINESS ADDRESS: 5919 Chef Menteur Hwy.
42. BUSINESS PHONE: 589-2624
43. SOC. SECURITY NO.: 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
37. RESIDENCE STATUS: ☐ 630 N.O. RESIDENT
44. SOBRTY 1  INJURY 7  TYPE INJURY: X
TREATED X  MEDICAL XX  TRANS X  45. TRANS. TO: X
46. DOCTOR/CORONER: X

**NUMBER OF ARRESTS**

47. NAME OF ARRESTEE — RACE — SEX — DATE OF BIRTH — 48. RIGHTS WAIVED ☐ YES ☐ NO — FORM NUMBER
49. ADDRESS — 50. DATE/TIME ARREST — 51. ARREST CREDIT — 52. RIGHTS ADVISED BY
53. ARREST LOCATION — 54. DIST. — 55. ZONE — 56. RELAT — 57. TRANS. UNIT — 58. TRANSPORTED BY
59. SOBRTY — INJURY — TYPE INJURY — TREATED — MEDICAL — TRANS — 60. TRANS. TO — 61. DOCTOR/CORONER

**ARRESTED SUBJECT**

MUNICIPAL ☐  STATE ☐  JUVENILE ☐  ALIAS — SOCIAL SECURITY — MAGISTRATE DATE — TIME

62. CHARGES/COMMENTS

NAME (PRINT) — ADDRESS (PRINT) — (DATE & TIME) — RELATIONSHIP
HEREBY TAKE CUSTODY OF THE ABOVE NAMED CHILD AND PROMISE TO BRING HIM/HER TO COURT, PROBATION DEPARTMENT, OR THE JUVENILE DIVISION, WHEN NOTIFIED
RELEASED BY (PRINT) — SIGNATURE — CUSTODIAN

**CODES**

| WEATHER | LIGHTING | RACE | SOBRIETY | INJURY | TREATED | MEDICAL/TRANS. | RELATIONSHIP TO VICTIM |
|---|---|---|---|---|---|---|---|
| 1. CLEAR | G — GOOD | I — Indian | 1. SOBER | 1. Fatal | 1. REFUSED | 1. POLICE EMS | 1. HUSBAND/WIFE / 7. COMMON LAW |
| 2. CLOUDY | F — FAIR | S — Spanish | 2. HBD | 2. Critical Non-Fatal | 2. TREATED/RELEASED | 2. OTHER EMS | 2. FATHER/MOTHER / 8. RELATIVES |
| 3. RAIN | P — POOR | B — Negro | 3. INTOX | 3. Serious Non-Fatal | 3. HOSPITALIZED | 3. POLICE | 3. SON/DAUGHTER / 8. STRANGER (KNOWN TO AREA) |
| 4. SNOW | | W — White | 4. DRUGS | 4. Serious | | 4. CIVILIAN | 4. BROTHER/SISTER / 10. COMPLETE STRANGER |
| 5. FOG | | O — Oriental | 6. UNKNOWN | 5. Moderate | | | 5. EMPLOYEE/EMPLOYER |
| 6. OTHER | | X — Other | | 6. Minor | | | 6. FRIEND/ACQUAINTANCE |
| | | | | 7. No Injury | | | |

**ADM**

| Field | Value |
|---|---|
| 63. DETECTIVE | John Dillmann Unit 3142 |
| 64. TECHNICIAN | J. Ducos 3721 |
| 65. EMS / TOW / OTHER | Unit 1807 |
| 89. ACCESS NUMBER | |
| 66. REPORTING OFFICER | P.O. Albert Spiess  BADGE 1479 |
| 67. REPORTING OFFICER | P.O. leon Frisard  BADGE 833 |
| 68. CAR | 706 |
| SUPERVISOR | SCHENTZ |

REV B NOV. 82

CERTIFIED DA OFFICE COPY

| NEW ORLEANS POLICE DEPARTMENT | X INCIDENT REPORT SUPPLEMENTAL REPORT | PAGE 2 OF 9 | 1. ITEM NUMBER L-17352-83 |
|---|---|---|---|

**EVENT**

| 2. SIGNAL 64-30 | 3. INCIDENT Armed Robbery & Murder | 4. DATE/TIME OCCURRED 12/17/83 10AM | 5. DIST 7 | SECTOR 702 | SELF INITIATED | FLAGGED DOWN | X CPS |
|---|---|---|---|---|---|---|---|

| 7. LOCATION OF OCCURRENCE 6000 DEANNE ST. | 8. DATE/TIME OF REPORT 12/17/83 10:15 | 9. ZONE/SUBZONE DO1 | 10. WEATHER 2 | 11. TEMP 50 | 12. LIGHTING G | 13. BULLETIN REQD X YES NO |
|---|---|---|---|---|---|---|

**WITNESS/REPORTING PERSON/VICTIM**

| 14. NAME ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS X PERSON INTERVIEWED GONZALES, JULIO H. | RACE W | SEX M | DATE OF BIRTH 12/31/45 | VICTIM'S RACE/SEX ☐ 1601 WHITE ☐ 1602 BLACK ☐ 1603 OTHER / ☐ 1610 MALE ☐ 1611 FEMALE |
|---|---|---|---|---|
| 16. HOME ADDRESS 6911 Deanne St. | 17. HOME PHONE 245-0561 | 18. DRIVER'S LICENSE 4118598 | OCCUPATION Salesman |
| 19. BUSINESS ADDRESS 1319 Montegut St. | 20. BUSINESS PHONE 944-2481 | 21. SOC. SECURITY NO. 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 | 15. RESIDENCE STATUS ☐ 630 N.O. RESIDENT ☐ 631 METRO RESIDENT / ☐ 632 TOURIST ☐ 633 BUSINESS |

| 22. SOBRTY 1 | INJURY 7 | TYPE INJURY X | TREATED X | MEDICAL X | TRANS X | 23. TRANS. TO X | 24. DOCTOR/CORONER XX |
|---|---|---|---|---|---|---|---|

| 25. NAME ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☐ PERSON INTERVIEWED Mumme, Paul D. | RACE W | SEX M | DATE OF BIRTH 12/16/36 | VICTIM'S RACE/SEX ☐ 1601 WHITE ☐ 1602 BLACK ☐ 1603 OTHER / ☐ 1610 MALE ☐ 1611 FEMALE |
|---|---|---|---|---|
| 27. HOME ADDRESS 6650 Virgilian | 28. HOME PHONE 242-7160 | 29. DRIVER'S LICENSE 1277808 | OCCUPATION Yard Supervisor |
| 30. BUSINESS ADDRESS 2900 Peoples Ave. | 31. BUSINESS PHONE 947-0174 | 32. SOC. SECURITY NO. 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 | 26. RESIDENCE STATUS ☐ 630 N.O. RESIDENT ☐ 631 METRO RESIDENT / ☐ 632 TOURIST ☐ 633 BUSINESS |

| 33. SOBRTY 1 | INJURY 7 | TYPE INJURY X | TREATED X | MEDICAL X | TRANS X | 34. TRANS. TO X | 35. DOCTOR/CORONER X |
|---|---|---|---|---|---|---|---|

| 36. NAME ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☐ PERSON INTERVIEWED SIMERAL, MICHELLE | RACE W | SEX F | DATE OF BIRTH 04/21/67 | VICTIM'S RACE/SEX ☐ 1601 WHITE ☐ 1602 BLACK ☐ 1603 OTHER / ☐ 1610 MALE ☐ 1611 FEMALE |
|---|---|---|---|---|
| 38. HOME ADDRESS 6921 Downman Rd. | 39. HOME PHONE 246-3565 | 40. DRIVER'S LICENSE X | OCCUPATION Cashier |
| 41. BUSINESS ADDRESS Downman Rd. | 42. BUSINESS PHONE 241-9173 | 43. SOC. SECURITY NO. X | 37. RESIDENCE STATUS ☐ 630 N.O. RESIDENT ☐ 631 METRO RESIDENT / ☐ 632 TOURIST ☐ 633 BUSINESS |

| 44. SOBRTY 1 | INJURY 7 | TYPE INJURY X | TREATED X | MEDICAL X | TRANS X | 45. TRANS. TO X | 46. DOCTOR/CORONER X |
|---|---|---|---|---|---|---|---|

**NUMBER OF ARRESTS**

| 47. NAME OF ARRESTEE | RACE | SEX | DATE OF BIRTH | 48. RIGHTS WAIVED ☐ YES ☐ NO | FORM NUMBER |
|---|---|---|---|---|---|
| 49. ADDRESS | 50. DATE/TIME ARREST | 51. ARREST CREDIT | 52. RIGHTS ADVISED BY |
| 53. ARREST LOCATION | 54. DIST | 55. ZONE | 56. RELAY | 57. TRANS. UNIT 58. TRANSPORTED BY |
| 59. SOBRTY | INJURY | TYPE INJURY | TREATED | MEDICAL | TRANS | 60. TRANS. TO | 61. DOCTOR/CORONER |

**ARRESTED SUBJECT**

| MUNICIPAL ☐ | STATE ☐ | JUVENILE ☐ | ALIAS | SOCIAL SECURITY | MAGISTRATE DATE | TIME |
|---|---|---|---|---|---|---|

62. CHARGES/COMMENTS

| HEREBY TAKE CUSTODY OF THE ABOVE NAMED CHILD AND PROMISE TO BRING HIM/HER TO COURT. PROBATION DEPARTMENT. OR THE JUVENILE DIVISION. WHEN NOTIFIED | | | |
|---|---|---|---|
| NAME (PRINT) | ADDRESS (PRINT) | (DATE & TIME) | RELATIONSHIP |

RELEASED BY (PRINT) — SIGNATURE CUSTODIAN

**CODES**

| WEATHER | LIGHTING | RACE | SOBRIETY | INJURY | TREATED | MEDICAL/TRANS. | RELATIONSHIP TO VICTIM |
|---|---|---|---|---|---|---|---|
| 1. CLEAR | | 1 — Indian | 1. SOBER | 1. Fatal | 1. REFUSED | 1. POLICE EMS | 1. HUSBAND/WIFE | 7. COMMON LAW |
| 2. CLOUDY | G — GOOD | S — Spanish | 2. HBD | 2. Critical Non-Fatal | 2. TREATED/RELEASED | 2. OTHER EMS | 2. FATHER/MOTHER | 8. RELATIVES |
| 3. RAIN | | B — Negro | 3. INTOX | 3. Serious Non-Fatal | 3. HOSPITALIZED | 3. POLICE | 3. SON/DAUGHTER | 9. STRANGER |
| 4. SNOW | F — FAIR | W — White | 4. DRUGS | 4. Severe | | 4. CIVILIAN | 4. BROTHER/SISTER | (KNOWN TO AREA) |
| 5. FOG | | O — Oriental | 5. UNKNOWN | 5. Moderate | | | 5. EMPLOYEE/EMPLOYER | 10. COMPLETE |
| 6. OTHER | P — POOR | X — Other | | 6. Minor | | | 6. FRIEND/ACQUAINTANCE | STRANGER |
| | | | | 7. No Injury | | | | |

**ADM**

| 63. DETECTIVE X | 64. TECHNICIAN X | 65. EMS / TOW / OTHER X | 69. ACCESS NUMBER |
|---|---|---|---|

| 66. REPORTING OFFICER P.O. Albert Spiess | BADGE 1479 | 67. REPORTING OFFICER P.O. Leon Frisard | BADGE 833 | 68. CAR 706 | SUPERVISOR |
|---|---|---|---|---|---|

REV. 8 NOV 82

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023943

N.O.P.D. — CONTINUATION    PAGE 4 OF

| 70. CHARGES | 71. ITEM: |
|---|---|
| R.S. 14 Art 64-30 | L-17352-83 |

**TOTAL PERPETRATORS**

72. NAME — ☒ WANTED ☐ ARRESTED ☐ STATE ☐ MISSING ☐ MUNICIPAL ☐ RUNAWAY
Unknown

| RACE | SEX | DATE OF BIRTH |
|---|---|---|
| N | M | 20-30yrs |

73. ADDRESS
Unknown

| RELAT. | HEIGHT | WEIGHT |
|---|---|---|
| 10 | 5-10"-6-0" | 135-145 |

**PERPETRATOR RACE/SEX**
☐ 1601 WHITE
☒ 1602 BLACK
☐ 1603 OTHER
☒ 1610 MALE
☐ 1611 FEMALE

74. NAME — ☐ ARRESTED ☐ WANTED ☐ STATE ☐ MUNICIPAL ☐ MISSING ☐ RUNAWAY
x

| RACE | SEX | DATE OF BIRTH |
|---|---|---|
| x | x | x |

75. ADDRESS
x

| RELAT. | HEIGHT | WEIGHT |
|---|---|---|
| x | x | x |

**PERPETRATOR RACE/SEX**
☐ 1601 WHITE
☐ 1602 BLACK
☐ 1603 OTHER
☐ 1610 MALE
☐ 1611 FEMALE

**HAIR STYLE**
☐ 751 AFRO
☐ 752 BRAIDED
☐ 753 CURLY
☐ 754 STRAIGHT
☐ 755 CREWCUT
☐ 756 WAVY
☐ 757 BALD
☐ 758 BALD BACK
☐ 759 BALD FRONT
☐ 760 SHORT
☐ 761 MEDIUM
☐ 762 LONG

**HAIR COLOR**
☐ 731 BLONDE
☐ 732 RED
☐ 733 BROWN
☐ 734 BLACK
☐ 735 GREY/SILVER
☐ 736 SALT/PEPPER
☐ 737 MULTI-COLOR
☐ 738 PLAT BLONDE
☐ 739 STREAKED
☐ 740 GREY
☐ 741
☐ 742

**ARRESTED/WANTED SUBJECT**

**FACIAL HAIR**
☐ 771 NO SIDEBURNS
☐ 772 LONG SIDEBURNS
☐ 773 MUTTON CHOPS
☐ 774 BEARD
☐ 775 GOATEE
☒ 776 MUSTACHE thin
☐ 777 FU-MANCHU
☐ 778 HAIR UND. LIP
☐ 779 NEAT
☐ 780 UNSHAVEN
☐ 781 BUSHY EYEBROWS
☐ 782 THIN EYEBROWS
☐ 783 CLEAN SHAVEN

**BUILD**
☒ 801 SMALL/PETITE
☒ 802 THIN
☐ 803 MEDIUM
☐ 804 MUSCULAR
☐ 805 HEAVY/STOCKY
☐ 806 FLABBY
☐ 807 STOOPED SHOULDERS
☐ 808 NARROW SHOULDERS
☐ 809 BROAD SHOULDERS
☐ 810 LARGE CHEST
☐ 811 DWARF/MIDGET
☐ 812 LARGE BUTTOCKS

**EYES**
☐ 861 BLUE
☐ 862 BROWN
☐ 863 GREY
☐ 864 GREEN
☐ 865 PINK
☐ 866 BLOODSHOT
☐ 867 BULGING
☐ 868 CROSSED
☐ 869 MISSING/GLASS
☐ 870 SQUINTS/BLINKS
☐ 871 GLASSES/CONTACTS
☐ 872 SLANTED/ORIENTAL

**NOSE**
☐ 881 LARGE
☐ 882 SMALL
☐ 883 LONG
☐ 884 THIN
☐ 885 PUG
☐ 886 POINTED
☐ 887 BROAD
☐ 888 FLAT
☐ 889 BROKEN
☐ 890 HOOKED
☐ 891 RED/PURPLE
☐ 892 BIG NOSTRIL

**TEETH**
☐ 901 GOOD
☐ 902 IRREGULAR
☐ 903 DECAYED
☐ 904 PROTRUDING
☐ 905 GAPS
☐ 906 MISSING
☐ 907 CHIPPED
☐ 908 FALSE
☐ 909 GOLD
☐ 910 DESIGN
☐ 911 DIAMOND
☐ 912 BRACED

**COMPLEXION**
☐ 821 ALBINO
☐ 822 FAIR
☐ 823 RUDDY
☐ 824 OLIVE
☐ 825 LT SKIN
☒ 826 BROWN
☐ 827 DARK

**ACCENT**
☐ 1021 AFRO/AMERICAN
☐ 1022 SPANISH
☐ 1023 ORIENTAL
☐ 1024 FRENCH
☐ 1025 ENGLISH
☐ 1026 JAMAICAN

**SPEECH**
☐ 1001 SOFT/POLITE
☐ 1002 RASPY
☐ 1003 RAPID
☐ 1004 SLOW
☐ 1005 LOUD
☐ 1006 MUTE
☐ 1007 MUMBLES
☐ 1008 STUTTERS
☐ 1009 VULGAR
☐ 1010 APOLOGETIC
☐ 1011 EFFEMINATE
☐ 1012 TALKATIVE

**FACIAL ODDITIES**
☐ 821 BIRTHMARKS
☐ 822 BLOTCHES
☐ 823 FRECKLES
☐ 824 MOLES/WARTS
☐ 825 PIMPLES/POCKS
☐ 826 WRINKLES
☐ 827 HIGH CHEEKS
☐ 828 THICK LIP
☐ 829 HARELIP
☐ 830 LARGE EARS
☐ 831 CAULIFLOWER EARS
☐ 832 MISSING EARS

**ODDITIES**
☐ 841 BOW LEGS
☐ 942 LIMP
☐ 943 CRIPPLED ARM
☐ 944 MISSING ARM
☐ 945 MISSING FINGERS
☐ 946 MISSING HAND
☐ 947 MISSING FOOT
☐ 948 MISSING LEG
☐ 949 ABNORMAL GENITALS
☐ 950 BODY ODOR
☐ 951 LEFT HANDED
☐ 952 UNUSUAL ODORS

**SCARS**
☐ 961 CHEEK, LEFT
☐ 962 CHEEK, RIGHT
☐ 963 CHIN
☐ 964 EAR, LEFT
☐ 965 EAR, RIGHT
☐ 966 EYEBROW, LEFT
☐ 967 EYEBROW, RIGHT
☐ 968 LIP, UPPER
☐ 970 NOSE
☐ 971 BURN SCAR
☐ 972 ARM, LEFT

**SCARS**
☐ 973 ARM, RIGHT
☐ 974 HAND, LEFT
☐ 975 HAND, RIGHT
☐ 976 WRIST, LEFT
☐ 977 WRIST, RIGHT
☐ 978 CHEST
☐ 979 NECK
☐ 980 BACK
☐ 981 LEG, LEFT
☐ 982 LEG, RIGHT
☐ 983 TRACK MARKS
☐ 984

**TATTOOS**
☐ 985 ARM, LEFT
☐ 986 ARM, RIGHT
☐ 987 HAND, LEFT
☐ 988 HAND, RIGHT
☐ 989 FOREHEAD
☐ 990 CHEST
☐ 991 NECK
☐ 992 BACK
☐ 993 LEG, LEFT
☐ 994 LEG, RIGHT
☐ 995 CHEEK, LEFT
☐ 996 CHEEK, RIGHT

**APPAREL**
☐ 1041 CLOTH OVER FACE
☐ 1042 STOCKING OVER FACE
☐ 1043 MASK
☐ 1044 HEAD CLOTH/RAG
☐ 1045 EARRINGS
☐ 1046 SUNGLASSES
☐ 1047 RINGS
☐ 1048 GLOVES
☐ 1049 CAP/HAT
☐ 1050 MAN-FEMALE ATTIRE
☐ 1051 WESTERN WEAR
☐ 1052 TENNIS SHOES

**ADDITIONAL DESCRIPTION / CLOTHING — TATTOOS — SCARS AND TEETH —— IDENTIFIABLE #1 ☒  #2 ☐**

1. Dark blue or black pants, tan or beige windbreaker, with white milky showder cap.
subject armed with 25 cal. crome automatic.

2.

**VEHICLE**

☒ 1061 WANTED
☐ 1062 VICTIM
☐ 1063 STOLEN LOCAL
☐ 1064 STOLEN FOREIGN
☐ 1065 RCVD LOCAL
☐ 1066 IMPOUNDED
☐ 1067 SUSPECT
☐ 1068 RCVD FOREIGN

| 76. YEAR | 77. MAKE | 78. MODEL | 79. STYLE | 80. VIN/SERIAL NO. |
|---|---|---|---|---|
| Unk | Make | Unk | Unk | Unk |

| 81. LIC. NUMBER | 82. LIC. ST. | 84. LIC. YR. | 84. COLOR OF VEH | UCR CATEGORY | VALUE STOLEN | RECOVERED |
|---|---|---|---|---|---|---|
| Unk | Unk | Unk | Light Blue | D | X | X |

85. LOCATION OF RECOVERY
N/A

RECOVERY INFORMATION
DIST    ZONE/SUBZONE

☐ 1101 AMC    ☐ 1107 FORD    ☐ 1113 AUDI    ☐ 1119 PORSCHE    ☐ 1131 2 DOOR    ☐ 1137 MTRCYCLE    ☐ 1201    ☐ 1207    ☐ 1213
☐ 1102 BUICK    ☐ 1108 LINCOLN    ☐ 1114 DATSUN    ☐ 1120 TOYOTA    ☐ 1132 4 DOOR    ☐ 1138 BICYCLE    ☐ 1202    ☐ 1208    ☐ 1214
☐ 1103 CADILLAC    ☐ 1109 MERCURY    ☐ 1115 FIAT    ☐ 1121 TRIUMPH    ☐ 1133 STA./WAGON    ☐ 1139 OTHER    ☐ 1203    ☐ 1209    ☐ 1215
☐ 1104 CHEVY    ☐ 1110 OLDS    ☐ 1116 HONDA    ☐ 1122 VOLKS    ☐ 1134 PICK-UP    ☐ 1140    ☐ 1204    ☐ 1210
☐ 1105 CHRYSLER    ☐ 1111 PLYMOUTH    ☐ 1117 MAZDA    ☐ 1123 VOLVO    ☐ 1135 CONVERTIBLE    ☐ 1141    ☐ 1205    ☐ 1211
☐ 1106 DODGE    ☐ 1112 PONTIAC    ☐ 1118 M G    ☐ 1124 OTHER    ☐ 1136 TRUCK    ☐ 1142    ☐ 1206    ☐ 1212

**STOLEN/RECOVERED VEHICLE**

STOLEN / RECOVERED VEHICLE M.O.

☐ 570 VEHICLES
☐ 571 GAS STOLEN ONLY
☐ 572 BATTERY STOLEN ONLY
☐ 573 JOY RIDE
☐ 574 VIN CHANGED/RESOLD
☐ 575 LOCKS BROKEN OUT

☐ 576 LOCKED STEERING/TRANS. DEFEATED
☐ 577 USED IN OTHER CRIME
☐ 578 WINDOW ENTERED
☐ 579 KEYS LEFT IN CAR
☐ 580 CAR LEFT UNLOCKED BY VICTIM
☐ 581 CAR LEFT LOCKED BY VICTIM

☐ 591 FAMILY RESIDENTIAL
☐ 592 APARTMENT COMPLEX
☐ 593 HOUSING PROJECT
☐ 594 COMMERCIAL
☐ 595 PARK/PLAYGROUND
☐ 596 DESERTED HIGHWAY/STREET

66. ADDITIONAL DESCRIPTION

**WEAPON**

NCIC
☐ STOLEN
☐ NOT STOLEN

PAWNSHOP
☐ RECORD
☐ NO RECORD

| 87. MAKE | 88. MODEL | 89. CAL. | 90. SERIAL NO. | 91. BUTT NO. |
|---|---|---|---|---|

92. ADDITIONAL INFORMATION

WEAPON
☐ 1141 HAND GUN    ☐ 1147 VEHICLE    ☐ 1153 CHROME NICKEL    ☐ 1159 PUMP
☐ 1142 SHOTGUN    ☐ 1148 BLUNT INSTRUMENT    ☐ 1154 BLUE STEEL    ☐ 1160 BOLT
☐ 1143 RIFLE    ☐ 1149 THROWN OBJECT    ☐ 1155 SHORT BARREL    ☐ 1161 AUTOMATIC
☐ 1144 SIMULATED    ☐ 1150 EXPLOSIVE    ☐ 1156 DOUBLE BARREL    ☐ 1162 REVOLVER
☐ 1145 IMPLIED    ☐ 1151 LIQUID/GAS    ☐ 1157 SINGLE BARREL    ☐ 1163 ALT. STOCK
☐ 1146 KNIFE    ☐ 1152 OTHER    ☐ 1158 SAWED OFF    ☐ 1164 OTHER

FIREARM FEATURES

ACCESS NUMBER

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023944

**NEW ORLEANS POLICE DEPARTMENT**

**INCIDENT REPORT / SUPPLEMENTAL REPORT**   PAGE **3** of **9**

1. ITEM NUMBER: **L-17352-83**

| EVENT | | |
|---|---|---|
| 2. SIGNAL **64-30** | 3. INCIDENT **Armed Robbery & Murder** | |

4. DATE/TIME OCCURRED: **12-17-83 10am**
5. DIST: **7**
6. SECTOR: **702**
☐ SELF INITIATED  ☐ FLAGGED DOWN  ☒ CFS

7. LOCATION OF OCCURRENCE: **6000 Deanne St.**

8. DATE/TIME OF REPORT: **12-17-83 10:15am**
9. ZONE/SUBZONE: **D-01**
10. WEATHER: **2**
11. TEMP: **50**
12. LIGHTING: **G**
13. BULLETIN REQD: ☒ YES ☐ NO

**WITNESS/REPORTING PERSON/VICTIM**

14. NAME ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☒ PERSON INTERVIEWED
**Peneguy, George B.** (LAST NAME / FIRST NAME / MIDDLE NAME)
RACE **W** SEX **M** DATE OF BIRTH **7-8-15**
VICTIM'S RACE/SEX: ☒ 1601 WHITE  ☐ 1602 BLACK  ☐ 1603 OTHER  ☒ 1610 MALE  ☐ 1611 FEMALE

16. HOME ADDRESS **6900 Deanne St.**
17. HOME PHONE **242-9686**
18. DRIVER'S LICENSE **571646771a.**
OCCUPATION **Retired**

19. BUSINESS ADDRESS **None**
20. BUSINESS PHONE **None**
21. SOC. SECURITY NO. **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**
15. RESIDENCE STATUS: ☒ 630 N O RESIDENT  ☐ 631 METRO RESIDENT  ☐ 632 TOURIST  ☐ 633 BUSINESS

22. SOBRTY. **1**  INJURY **7**  TYPE INJURY **X**  TREATED **X**  MEDICAL **X**  TRANS **X**  23. TRANS. TO **X**  24. DOCTOR/CORONER **X**

25. NAME ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☒ PERSON INTERVIEWED
**Peneguy, Murel S.** (LAST NAME / FIRST NAME / MIDDLE NAME)
RACE **W** SEX **F** DATE OF BIRTH **12-27-25**
VICTIM'S RACE/SEX: ☒ 1601 WHITE  ☐ 1602 BLACK  ☐ 1603 OTHER  ☐ 1610 MALE  ☒ 1611 FEMALE

27. HOME ADDRESS **6900 Deanne St.**
28. HOME PHONE **242-9686**
29. DRIVER'S LICENSE **107034871a.**
OCCUPATION **Clerk**

30. BUSINESS ADDRESS **6600 Morrison Rd.**
31. BUSINESS PHONE **242-7366**
32. SOC. SECURITY NO. **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**
26. RESIDENCE STATUS: ☒ 630 N.O. RESIDENT  ☐ 631 METRO RESIDENT  ☐ 632 TOURIST  ☐ 633 BUSINESS

33. SOBRTY. **1**  INJURY **7**  TYPE INJURY **X**  TREATED **X**  MEDICAL **X**  TRANS **X**  34. TRANS. TO **X**  35. DOCTOR/CORONER **X**

36. NAME ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☐ PERSON INTERVIEWED
(LAST NAME / FIRST NAME / MIDDLE NAME)
RACE  SEX  DATE OF BIRTH
VICTIM'S RACE/SEX: ☐ 1601 WHITE  ☐ 1602 BLACK  ☐ 1603 OTHER  ☐ 1610 MALE  ☐ 1611 FEMALE

38. HOME ADDRESS
39. HOME PHONE
40. DRIVER'S LICENSE
OCCUPATION

41. BUSINESS ADDRESS
42. BUSINESS PHONE
43. SOC. SECURITY NO.
37. RESIDENCE STATUS: ☐ 630 N.O. RESIDENT  ☐ 631 METRO RESIDENT  ☐ 632 TOURIST  ☐ 633 BUSINESS

44. SOBRTY.  INJURY  TYPE INJURY  TREATED  MEDICAL  TRANS  45. TRANS. TO  46. DOCTOR/CORONER

**NUMBER OF ARRESTS / ARRESTED SUBJECT**

47. NAME OF ARRESTEE
RACE  SEX  DATE OF BIRTH
48. RIGHTS WAIVED ☐ YES ☐ NO  FORM NUMBER

49. ADDRESS
50. DATE/TIME ARREST
51. ARREST CREDIT
52. RIGHTS ADVISED BY

53. ARREST LOCATION
54. DIST.  55. ZONE  56. RELAT  57. TRANS. UNIT  58. TRANSPORTED BY

59. SOBRTY.  INJURY  TYPE INJURY  TREATED  MEDICAL  TRANS  60. TRANS. TO  61. DOCTOR/CORONER

MUNICIPAL ☐  STATE ☐  JUVENILE ☐  ALIAS
SOCIAL SECURITY
MAGISTRATE DATE  TIME

62. CHARGES/COMMENTS

NAME (PRINT)  ADDRESS (PRINT)  (DATE & TIME)  RELATIONSHIP

HEREBY TAKE CUSTODY OF THE ABOVE NAMED CHILD AND PROMISE TO BRING HIM/HER TO COURT, PROBATION DEPARTMENT, OR THE JUVENILE DIVISION, WHEN NOTIFIED

RELEASED BY (PRINT)  SIGNATURE CUSTODIAN

**CODES**

| WEATHER | LIGHTING | RACE | SOBRIETY | INJURY | TREATED | MEDICAL/TRANS. | | RELATIONSHIP TO VICTIM |
|---|---|---|---|---|---|---|---|---|
| 1. CLEAR | | I — Indian | 1. SOBER | 1. Fatal | 1. REFUSED | 1. POLICE EMS | 1. HUSBAND/WIFE | 7. COMMON LAW |
| 2. CLOUDY | G — GOOD | S — Spanish | 2. HBD | 2. Critical Non-Fatal | 2. TREATED/RELEASED | 2. OTHER EMS | 2. FATHER/MOTHER | 8. RELATIVES |
| 3. RAIN | | B — Negro | 3. INTOX | 3. Serious Non-Fatal | 3. HOSPITALIZED | 3. POLICE | 3. SON/DAUGHTER | 9. STRANGER |
| 4. SNOW | F — FAIR | W — White | 4. DRUGS | 4. Severe | | 4. CIVILIAN | 4. BROTHER/SISTER | (KNOWN TO AREA) |
| 5. FOG | | O — Oriental | 5. UNKNOWN | 5. Moderate | | | 5. EMPLOYEE/EMPLOYER | 10. COMPLETE STRANGER |
| 6. OTHER | P — POOR | X — Other | | 6. Minor | | | 6. FRIEND/ACQUAINTANCE | |
| | | | | 7. No Injury | | | | |

**ADM**

63. DETECTIVE: **X**
64. TECHNICIAN: **X**
65. EMS / TOW / OTHER: **X**
69. ACCESS NUMBER

66. REPORTING OFFICER **P/O Albert Spiess**  BADGE **1479**
67. REPORTING OFFICER **P/O LeOn Frisard**  BADGE **833**  68. CAR **706**
SUPERVISOR

REV 9 NOV 82

CERTIFIED DA OFFICE COPY



N.O.P.D. — PROPERTY CONTINUATION  PAGE 6 OF 9   ITEM L-17352-83

| SEQ | QUAN | BRAND/MANUFACTURER | DESCRIPTION/MODEL | SERIAL NO | UCR CATEGORY | VALUE STOLEN | RECOVERED |
|---|---|---|---|---|---|---|---|
| A | 1 | Ladies blue handbag, with two handles and one zipper, containing various personal papers in the victims name. | | | K | 25.00 | |

Evidence

| B | 1 | Spent .25 cal. casing found on the scene lying next to the victims body | | | | | |

Above evidence was removed from the scene by the crime lab for processing

Narrative

Mrs Fay Carnesi stated that on 12-17-83 at about 10am she had got into her vehicle ( 1979 Mazda, GLC, sta/wag, La.Lic# 766B440 ) which was parked on pines blvd., in the middle on the block. Mrs Carnesi further stated that as she was sitting in the vehicle waiting for her husband to come out and saw a negro male subject walking across her front lawn . Mrs Carnesi went on to say that the subject stopped at the intersection of pines and deanne and looked in all directions. Mrs Carnesi further stated that the sub ect then walked past her on pines walking toward W. Laverne ( east bound direction ). Mrs Carnesi then stated that her husband then came out of the residence and walked up to her and talking for a minute or so, then kissed her goodbye. Mrs carnesi went on to say that as her husband stood up ( was leaning over to kiss his wife ) the subject was standing next to her husband. Mrs carnesi then stated that the subject then pulled a gun from his pocket and pointed it at her husband and stated " GIVE ME YOUR MONEY " her husband at that time looked at the subject and told him what are you talking about. The subject then reached for the victims pants pocket and her husband grabbed the subjec hand. The subject then pushed her husband back and pointed directly at her husband a shot him. Mrs Carnesi then started yelling and screaming and the subject turned and poin the gun at her and stated " Give me your money". Mrs Carnesi then grabbed her purse off the front seat and tossed it at the subject. The subject then took the purse and ran on pines st back toward deanne st. Mrs Carnesi then got out the car and looked at her husba then ran behind the subject. Mrs Carnesi saw a light blue vehicle take off from the curb, which was parked down from her residence on the same side of the street. Mrs Carnesi could not see if the subject was driving because of the bushes blocking her view Mrs Carnesi at this time started yelling and screaming that her husband had been shot. Mrs C rnesi then ran back to her husband that was lying on the ground and the next thing several neighbors and relatives were all around. Mrs Carnesi further stated that she could identify the subject if she saw him again.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023946

OPDA-FLANKS0239947

# NEW ORLEANS POLICE DEPARTMENT

**INCIDENT REPORT SUPPLEMENTAL REPORT** — PAGE 3 OF 0

1. ITEM NUMBER: L-17359-83

| EVENT | | |
|---|---|---|
| 2. SIGNAL: 64-30 | 3. INCIDENT: Armed Robbery & Murder | 4. DATE/TIME OCCURRED: 12-17-83 10am | 5. DIST: 7 | 6. SECTOR: 702 | SELF INITIATED / FLAGGED DOWN / X CFS |
| 7. LOCATION OF OCCURRENCE: 6000 Deanne St. | 8. DATE/TIME OF REPORT: 12-17-83 10:15am | 9. ZONE/SUBZONE: D-01 | 10. WEATHER: 2 | 11. TEMP: 50 | 12. LIGHTING: G | 13. BULLETIN REQD: X YES |

**WITNESS/REPORTING PERSON/VICTIM**

14. NAME — PERSON INTERVIEWED: Peneguy, George B. — RACE W — SEX M — DATE OF BIRTH 7-8-15
VICTIM'S RACE/SEX: X 1601 WHITE, 1810 MALE
16. HOME ADDRESS: 6900 Deanne St. — 17. HOME PHONE: 242-9686 — 18. DRIVER'S LICENSE: 57164671a. — OCCUPATION: Retired
19. BUSINESS ADDRESS: None — 20. BUSINESS PHONE: None — 21. SOC. SECURITY NO.: 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 — 15. RESIDENCE STATUS: X 630 N.O. RESIDENT
22. SOBRTY: 1 — INJURY: 7 — TYPE INJURY: X — TREATED X — MEDICAL X — TRANS X — 23. TRANS. TO: X — 24. DOCTOR/CORONER: X

25. NAME — PERSON INTERVIEWED: Peneguy, Murel S. — RACE W — SEX F — DATE OF BIRTH 12-27-25
VICTIM'S RACE/SEX: X 1601 WHITE, X 1611 FEMALE
27. HOME ADDRESS: 6900 Deanne St. — 28. HOME PHONE: 242-9686 — 29. DRIVER'S LICENSE: 1070348?1a. — OCCUPATION: Clerk
30. BUSINESS ADDRESS: 6600 Morrison Rd. — 31. BUSINESS PHONE: 242-7366 — 32. SOC. SECURITY NO.: 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 — 26. RESIDENCE STATUS: X 630 N.O. RESIDENT
33. SOBRTY: 1 — INJURY: 7 — TYPE INJURY: X — TREATED X — MEDICAL X — TRANS X — 34. TRANS. TO: X — 35. DOCTOR/CORONER: X

**CODES**

| WEATHER | LIGHTING | RACE | SOBRIETY | INJURY | TREATED | MEDICAL/TRANS. | RELATIONSHIP TO VICTIM |
|---|---|---|---|---|---|---|---|
| 1. CLEAR | | I — Indian | 1. SOBER | 1. Fatal | 1. REFUSED | 1. POLICE EMS | 1. HUSBAND/WIFE | 7. COMMON LAW |
| 2. CLOUDY | G — GOOD | S — Spanish | 2. HBD | 2. Critical Non-Fatal | 2. TREATED/RELEASED | 2. OTHER EMS | 2. FATHER/MOTHER | 8. RELATIVES |
| 3. RAIN | | N — Negro | 3. INTOX | 3. Serious Non-Fatal | 3. HOSPITALIZED | 3. POLICE | 3. SON/DAUGHTER | 9. STRANGER (KNOWN TO AREA) |
| 4. SNOW | F — FAIR | W — White | 4. DRUGS | 4. Severe | | 4. CIVILIAN | 4. BROTHER/SISTER | 10. COMPLETE STRANGER |
| 5. FOG | | O — Oriental | 5. UNKNOWN | 5. Moderate | | | 5. EMPLOYEE/EMPLOYER | |
| 6. OTHER | P — POOR | X — Other | | 6. Minor / 7. No Injury | | | 6. FRIEND/ACQUAINTANCE | |

**ADM**
63. DETECTIVE: X — 64. TECHNICIAN: X — 65. EMS/TOW/OTHER: X — 69. ACCESS NUMBER:
66. REPORTING OFFICER: P/O Albert Spiess — BADGE 1479 — 67. REPORTING OFFICER: P/O LeOn Frisard — BADGE 833 — 68. CAR 706 — SUPERVISOR:

REV. 9 NOV. 82

| NOPD SIGNAL |  | NEW ORLEANS POLICE DEPARTMENT | | SUPP STATE COMPUTER NUMBER | | | |
|---|---|---|---|---|---|---|---|
| 64-30 | | UNIFORM MOTOR VEHICLE TRAFFIC ACCIDENT REPORT | | | | | |
|  | | AND INCIDENT REPORT | | NOPD ITEM NUMBER | | | |
| PAGE 7 OF 9 | | CONTINUATION SHEET | | L-17352-83 | | | |
| SEQ | QUANTITY | DESCRIPTION | SERIAL NO. | TYPE | STOLEN | RECOVERED | |
|  |  | Mrs Carnesi further stated that she believed the subject was going to shoot her husband | | | | | |
|  |  | again but when she started yelling and screaming the subject got afraid. | | | | | |
|  | P/I | Rudolph Youmans stated that he was driving on pines blvd in a west bound direction | | | | | |
|  |  | when he saw a subject lying on the ground and also discovered a female subject later | | | | | |
|  |  | learned to be Mrs Carnesi standing in the middle of the street yelling. Mr Youmans | | | | | |
|  |  | further stated that he pickup Mrs Carnesi and drove her to the intersection of pines and | | | | | |
|  |  | deanne st when several neighbors came out and was told of the incident. Mr Youmans stated | | | | | |
|  |  | that they were 5old to call the police. Mr Youmans waited on the corner of pines and deanne | | | | | |
|  |  | with Mrs Carnesi. | | | | | |
|  | P/I | Julio Gonzales stated that he is the son in law of the victim's and when he heard | | | | | |
|  |  | the yelling and screaming he came out of his residence at 6911 Deanne st ( which is next | | | | | |
|  |  | door to the victims ) and saw his mother in law standing on the corner he ran toward her | | | | | |
|  |  | and then looked down the street on pines and saw his father in law lying on the ground. | | | | | |
|  |  | Mr youmans then ran over to him and saw that he was shot in the chest. Mr Youmans then | | | | | |
|  |  | back to his residence and got several blankets. Mr Youmans went back to his father in law | | | | | |
|  |  | and placed the blankets on him to keep him from going into shock. Mr Youmans went on to | | | | | |
|  |  | say that another subject had stopped and helped him cover his father in law. | | | | | |
|  | P/I | Paul Mumme stated that he was driving by when he saw a subject lying on the | | | | | |
|  |  | ground in the middle of the block on pines blvd. Mr Mumme further stated he thought that | | | | | |
|  |  | the subject had a heart attack or something and stopped to help because he had completed | | | | | |
|  |  | a course in CPR. Mr Mumme went on to say that he was met by a subject later learned to | | | | | |
|  |  | be Mr Julio Youmans and assisted him in placing several blankets over the victim alomg | | | | | |
|  |  | with a pillow for the victims head. | | | | | |
|  | P/I | Ms Michelle Simeral stated that she is the granddaughter of the victims. MS | | | | | |
|  |  | Simeral stated that she heard yelling and screaming outside of her residence. Ms Simeral | | | | | |
|  |  | ran outside and observed a light blue car driving away very fast but cou d not give | | | | | |
|  |  | any other information on the vehicle. Ms Simeral walked to the corner and saw that her | | | | | |
|  |  | grandmother was upset and later learned that her grandfather had been shot. | | | | | |
|  | P/I | George Peneguy stated that he was sitting inside his residence ( 6900 Deanne ) | | | | | |
|  |  | at the kitchen table, talking to his wife Mrs Murel Peneguy. Mr Peneguy further stated that | | | | | |
|  |  | he was looking out the front window when he saw a negro male subject walking in front of | | | | | |
|  |  | his residence. Mr Peneguy went on to say that he watched the subject walk to the walkway | | | | | |
|  |  | area of his residence then cross the street and stand at the corner ( pines and deanne, | | | | | |
|  |  | same side of the victims residence ). Mr Peneguy further stated that the subject was | | | | | |

| REPORTING OFFICER | BADGE | REPORTING OFFICER | BADGE | NOPD ACCESS NUMBER |
|---|---|---|---|---|
| P/O Albert Spiess | 1479 | P/O Leon Frisard | 833 | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023948

| NOPD SIGNAL | NEW ORLEANS POLICE DEPARTMENT | | SUPP STATE COMPUTER NUMBER | |
|---|---|---|---|---|
| 64-30 | UNIFORM MOTOR VEHICLE TRAFFIC ACCIDENT REPORT | | | |
| PAGE 8 OF 9 | AND INCIDENT REPORT CONTINUATION SHEET | | NOPD ITEM NUMBER L-17352-83 | |

| SEQ | QUANTITY | DESCRIPTION | SERIAL NO. | TYPE | STOLEN | RECOVERED |
|---|---|---|---|---|---|---|
| | | looking back and to the side as if watching for something. Mr Peneguy went on to say that the subject then started walking down pines st toward W. Laverne ( east bound direction ). Mr Peneguy then lost sight of the subject. Mr Peneguy then stated shortly after he heard a popping noise and some screaming and yelling and he and his wife then ran to the door. Mr Peneguy then saw Mrs Carnesi running across the front lawn of her residence ( Carnesi ) Yelling " Daddy has been shot ", several times. Mr Peneguy along with his wife went back into the residence and called the police. Mr Peneguy and his wife then went outside and went over to the Carnesi residence ( 6901 Deanne St. ) and picked up the granddaughter and brought her back to their residence. Mr Peneguy stated that he did not see any vehicle or the subject run back in front of the residence. | | | | |
| P/I | | Murel Peneguy stated that she was sitting at the kitchen table with her husband drinking some coffee when her husband told her he saw a subject looking all around. Mrs Peneguy then looked out the window and saw the subject standing on the croner looking around in every direction and then walk down Pines St. toward W. Laverne, and out of sight. Mrs Peneguy went on to say that she then went to the bathroom when she heard the yelling and screaming outside . Mrs Peneguy with her husband ran outside and saw Mrs Carnesi yelling that her husband had been shot. Mrs Peneguy then went inside and called the police. Mrs peneguy then went to the Carnesi residence to see if she and her husband could help and took the great granddaughter to their for the time being. Mr Peneguy and Mrs Peneguy were able to give a discription of the subject that they sawwalking in front of their residence. | | | | |
| R/O | | Albert Spiess and Leon Frisard, assigned to the seventh district, car 706, reports responding to a call of a signal 34s, shooting at Deanne and Pine st on 12-17-83 at 10:07am. Upon arrival at the above location officers observed a subject lying on the groun next to a parked car. Officers checked the subject and found him to have been shot in the chect. Officer Albert Spiess ordered the Energency unit on a code 3. The subject was checked for vital signs but could not find any. Officers arrived on the scene at 10:12am and the emergency unit was ordered on a code 3 at that time. Officer Leon Frisard obtained a discript of the subject and the wanted vehicle from the victim and witnesses and the discription was broadcasted via channel 3 at 10:14am. At this time various seventh district units were in the area looking for the subject and vehicle. The officers at this time had the channel 3 dispatc order the necessary units, as it appears to be a possible signal 30 ( murder ). | | | | |
| | | At 10:45am Det. John Dillmann, of the Homicide division, assigned to car 3142 arrived on the scene and conducted his investigation. Det Dillmann observed a spent 25 cal casing on the ground next to the victim in the street. The scene had been secured by | | | | |

| REPORTING OFFICER | BADGE | REPORTING OFFICER | BADGE | NOPD ACCESS NUMBER |
|---|---|---|---|---|
| P/O Leon Frisard | 833 | P/O Albert Spiess | 1479 | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023949

| NOPD SIGNAL 64-30 | NEW ORLEANS POLICE DEPARTMENT UNIFORM MOTOR VEHICLE TRAFFIC ACCIDENT REPORT AND INCIDENT REPORT CONTINUATION SHEET | SUPP STATE COMPUTER NUMBER | | |
|---|---|---|---|---|
| PAGE 9 OF 9 | | NOPD ITEM NUMBER L-17352-83 | | |

| SEQ | QUANTITY | DESCRIPTION | SERIAL NO. | TYPE | STOLEN | RECOVERED |
|---|---|---|---|---|---|---|

Officers Frisard and Spiess with the assistance of P/O Roy D'archanglo, assigned to car 707, of the seventh district.

At 10:50am the coroner's investigator P. Lewis arrived on the scene and conducted his investigation.

At 10:58am crime lab units 3721, manned by Officer J. Ducos and 3722, manned by N. Oracio arrived on the scene and conducted their investigation . The crime lab unit 3721 conficiated the spent casing and will be placed on the evidence books after processing.

At 11:03am car 3, manned by Deputy Chief Louis Turner arrived on the scene and assisted in the investigation with supervision.

At 11:15am the coroner's wagon arrived on the scene, manned by Greg Mullen.

At 11:40am the Asst. Coroner arrived on the scene, manned by Dr. Jerry Rosenberg. Dr. Rosenberg pronounced the victim dead on the scene at that time.

At this time the victim was checked by the coroner and det. Dillmann for personal property and was released to the family (.property ). The propertty that was on the victim is listed as follows: 4-$5.00 bills, 2-$1.00 bills, one personal check in the amount of $96.00, $2.00 in change, and a set of keys.

The victims body was placed in the coroner's wagon and taken to the Coroner's office for further investigation.

Other units on the scene assisting in the investigation were unit 1807 ( emergency) manned by P/O Bill Suhle, and Emt C.J.Orgeron. Car 710, manned by Lt. John Ruth.

Officers Frisard and Spiess checked the neighborhood ( houses ) on both sides of the street for any possible information or witnesses with negative results. The officers also conducted a field search of the surrounding area in a six block square area for any evidence ( Possible the wanted subject may have thrown the victim's purse out the window of the wanted vehicle) with negative results.

The command desk was notified by Officers of the facts of the incident. Also Public information officer G. Krinkey was notified on the incident at 10:23am by the command desk.

Bulletin sent via teletype

Any additional information to follow in a supplemental report.

| REPORTING OFFICER | BADGE | REPORTING OFFICER | BADGE | NOPD ACCESS NUMBER |
|---|---|---|---|---|
| P/O Albert Spiess | 1479 | P/O Leon Frisard | 833 | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023950

CRIMINAL INVESTIGATION BUREAU

Off. 12-20-83    Off. FOLLOW UP    L-17352-83    Off.    Off. 7TH DISTRICT
Date ____    Time ____    Item ____    Location ____    Dist ____
Type of Offense MURDER
Victim MARTIN CARNESI  WM AGE 69    Name of Business ____ Address FORMERLY- 6901 DEANNE ST. Phone ____
Weapon POSSIBLE 75 CALIBER PISTOL    Stolen Value ____    Recovered Value ____
Arrested/Wanted/Accused NO ARREST AT THIS TIME
Description — SEE ORIGINAL DAILY REGARDING SCENE INVESTIGATION
Witness:

INVESTIGATING DETECTIVE.......... JOHN DILLMANN

ASSIST. DETECTIVE................ PASCAL SALADINO


REGARDING THE ABOVE INCIDENT DET. PASCAL SALADINO ASSIGNED TO THE CRIMINAL INVESTIGATION BU.
HOMICIDE UNIT, RESPECTFULLY REPORTS OF ASSITING DET. JOHN DILLMANN IN THE ABOVE OFFENSE.
DET. SALADINO PROCEEDED TO THE CORONER'S OFFICE ON THE MORNING OF SATURDAY DECEMBER 18, 1983
FOR THE PURPOSE OF VIEWING THE AUTOSPY OF ONE MARTIN CARNESI THE VICTIM OF A MURDER. THE
AUTOPSY WAS PERFORMED BY CORONER'S ASSISTANCT PATHOLOGIST DR. MONROE SAMUELS AT APPROXIMATELY
10:00 A.M. UPON COMPLETION DR. SAMUELS INFORMED DET. SALADINO THE VICTIM OF THIS OFFENSE
EXPIRED AS A RESULT OF A GUN SHOT WOUND OF THE LEFT UPPER CHEST. DR. SAMUELS ADDED, HE WAS
SUCCESSFUL IN RECOVERING A PELLET FROM THE BODY OF THE VICTIM. DR. SAMUELS EXPLAINED THE
ENTRANCE WOUND WP LOCATED AT THE UPPER LEFT CHEST AREA AND THE PELLET TRAVELED ON AN ANGLE
AND ▆▆▆▆▆ LODGED IN THE LOWER RIGHT REAR SECTION OF THE VICTIM'S BACK. DR. SAMUELS
PRESENTED THE PELLET TO DET. SALADINO TO VIEW AND AT THIS TIME, DET. SALADINO NOTED THE
PELLET TO BE POSSIBLY OF 75 CALIBER IN GOOD BALISTICS CONDITION.

PELLET ( COPPER COATED SURFACE) WAS LATER TRANSFERED TO THE CRIME LAB. FOR PROCESSING IN THE
BALLISTIC'S SECTION OF THIS DEPARTMENT. FULL DETAIL REPROT TO BE FORWARD TO DET. JOHN
DILLMANN AT A LATER DATE AND THIS INFORMATION WILL BE MADE A PART OF THE CASE FILE..


DET. PASCAL SALADINO


DETS. ASSIGNED DET. JOHN DILLMANN    DATE 12-20-83

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023951

H3-212

## CRIMINAL INVESTIGATION BUREAU

Off. Date 12/17/83    Off. Time 10:00AM    Item L- 17352-83    Off. Location XX    Off. Dist XX    XX

Type of Offense Murder-Follow-Up    Name of Business _____    Phone _____

Victim _____    Address _____    Phone _____

Weapon _____    Stolen Value _____    Recovered Value _____

Arrested/Wanted/Accused SEE NARRATIVE

Description _____

Witness:

Detective John Dillmann, assigned to the Homicide Unit of the Major Offense Bureau, reports of continuing the follow-up investigation into the fatal shooting of one Martin Carnesi, white male, age 69, formerly residing 6901 Deanne st. This incident occured at approximately 10:00AM, Saturday, December 17, 1983, in the 6000 block of Pine Blvd.

Relative to this investigation, at about 10:00AM, Monday, December 19, 1983, Det. Dillmann met with Det. Mike Lentz, assigned to the M.C.I. Unit of the Seventh District. As previously mentioned, the wanted subject in this offense is currently wanted for numerous armed robberies in the Seventh District area. Det. Lentz provided the investigating detective with copies of the most recent Armed Robbery Reports in the area of Pine Village. After reviewing these reports the following incidents are pertenent to this investigation;

1- November 29, 1983, Armed Robbery, Foch and Dwyer Rd, Item # K-29818-83
2- December 03, 1983, Armed Robbery, 6300 block Pine Blvd, Item # L-2521-83
3- December 08, 1983, 6600 Block Morrison Rd, Armed Robbery,.Item # L-7810-83
4- December 12, 1983, Armed Robbery, Dwyer and Foch sts, Item #L-12171-83
5- December 17, 1983, Armed Robbery, Murder, 6000 Pine Blvd, Item # L- 17352-83
6- December 18, 1983, Armed Robbery, 6600 Morrison Rd, Item # L-18303-83

A review of these reports reflected that the wanted subject is a black male, early to late twenties, 5'8" to 5'11" tall, medium build, brown skinned, musthace, wearing a white or pink, plastic shower cap. This subject is armed with a small caliber nickel plated automatic. He is driving a old, light blue or gray vehicle. All of the aforementioned offenses have occured in the area of Pine Village(Dowman Rd, Morrison Rd, etc), between the hours of 6:00AM and 11:00AM. Several of the victim's can identify the perpetrator. Copies of the above mentioned reports have been made a part of the case file.

As of the completion of this daily, all the victim's in the above mentioned robberies will be interviewed and a more detailed discription obtained. All efforts are being made to identify the perpetrator and secure his apprehension.

THIS INVESTIGATION IS CONTINUING, FULL REPORT TO FOLLOW..................................

DETS. ASSIGNED DET. JOHN DILLMANN    DATE 12/19/83

N° 001434    REFERENCES:    SUPV. SIGNATURE

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023952

CRIMINAL INVESTIGATION BUREAU

Off. Date **12/17/83** Off. Time **10:05AM** Item Name **L-17352-83** Off. Location **6000 Blk of Pine Blvd.** Dist

Type of Offense **Murder** Name of Business Phone

Victim Address Phone

Weapon **SEE NARRATIVE** Stolen Value Recovered Value

Arrested/Wanted/Accused

Description

Witness:

## INFORMATION DAILY

DATE AND TIME OCCURED- Saturday, December 17, 1983/ 10:05AM.

LOCATION OCCURED- 6000 block of Pine Blvd.

VICTIM- Carnesi, Martin, white male, age 69yrs, formerly residing 6901 Deanne st.

WEAPON USED- 25 caliber automatic, nickel plated.

WANTED SUBJECT- Unknown black male, twenty-five to thirty years of age, five feet ten inches tall, one hundred and fifty pounds, medium build, brown skinned. Subject was clad in dark pants, light colored windbreaker, Subject was wearing a white plastic shower cap on his head. Subject also has a light musthace.

WANTED VEHICLE- Unknown make and model, light blue vehicle.

WITNESSES - Mrs. Fay Carnesi, white female, age 68 yrs, residing 6901 Deanne st.(verbal)
Mr. George Peneguy, white male, age 68 yrs , residing 6900 Deanne st,(verbal)
MRS. Marle Peneguy, white female, age 58 yrs, residing 6900 Deanne st, (verbal)

SYNOPSIS- At approximately 10:00AM, Saturday, December 17, 1983, Mrs. Carnesi was accompanied to her parked vehicle by her husband, Martin Carnesi. This vehicle was parked in the 6000 block of Pine Blvd, adjacent to the Carnesi residence. Mrs. Carnesi entered the vehicle on the drivers side and the victim kissed her goodby. At this point the wanted subject approched and produced a 25 caliber nickel plated automatic. He demanded the victim's money and reached into his pocket. The victim resisted and was shot in the upper left chest. The victim fell to the ground and Mrs. Carnesi through her purse out of the window at the perpetrator. The wanted subject fled on Pine Blvd. to Deanne st. and turned in a lake direction. He then entered a light blue colored vehicle which was parked in a lake direction, directly in front of 6901 Deanne st. He then made good his escape. The victim's wallet and Mrs. Carnesi's purse were both stolen by the perpetrator. These items contained credit cards, drivers licenses, and checks, in the names of Mr.& Mrs. Carnesi.

It should be mentioned that the perpetrator in this offense is currently wanted for numerous armed robberies in the area of Pine Village(Downman and Morrison Rd) From all indications, this subject takes advantage of the elderly. He had robbed several victim's while they were waiting for a bus or while walking in this residential neighborhood.

As of the completion of this daily, it has been established that Martin Carnesi was the victim of an armed robbery murder. Mrs. Carnesi was unable to furnish

con't

DETS. ASSIGNED **DET. JOHN DILLMANN** DATE **12/17/83**

Nº **001424** REFERENCES: SUPV. SIGNATURE

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023953

Page # 2                    Daily # 001424              Item # L- 17352-83

a detailed, typed written statement because of her physical condition. This statement will be rendered at a later date. Members of the Seventh District M.C.I. unit are working in conjunction with the investigating detective.

THIS INVESTIGATION IS CONTINUING, FULL REPORT TO FOLLOW.............................

DET. JOHN DILLMANN.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023954

ITEM# L-17352-83  CRIME SCENE TECHNICIAN REPORT    PAGE 1 OF 4

(DIV) REQUESTING SERVICE: HOMICIDE

LOCATION: PINES Blvd. AND DEANNE    SIGNAL: 30

VICTIM: MARTIN CARMISE    ACCUSED: UNKNOWN AT PRESENT

DATE & TIME REC'D. 12-17-83   10:35 AM   DATE & TIME ARRIVED 12-17-83   10:55 AM

RECEIVED SCENE FROM P/O A. SPIESS    DATE & TIME 12-17-83   10:55 AM

SERVICES PERFORMED: ✓ PHOTOS ✓ SKETCH ___ LATENT PRINTS ✓ PHYS. EVIDENCE

PERSONS WHO HAVE ENTERED SCENE:

INVESTIGATION OFFICER (S) DET. J. DILLMAN ; P/O SPIESS ; P/O FRISARD

OTHER: LT. J. RUTH ; CAPT. REEVS ; CHIEF TURNER

DID INVESTIGATING OFFICER (S) REQUEST ADDITIONAL SERVICES AT THE COMPLETION OF THE SCENE INVESTIGATION? YES___ NO ✓ NO OFFICER ON SCENE___

| PHOTO# | PHOTOGRAPHS TAKEN - LOCATION | DESCRIPTION |
|---|---|---|
| #1 | PINES Blvd. ; DEANNE    iTEM# | |
| #2 | " | STREET SIGNS AT INTERSECTION |
| #3 | " | VEH.'S LIC.# 766B440    MAZDA GLC |
| #4 | " | Body - RIGHT Side |
| # | " | "  - LEFT Side |
| # | " | "  - HEAD TO FEET |
| #7 | " | "  - FEET TO HEAD |
| #8 | | Spent CASING ON GROUND NEAR Body. |
| #9 | | Body - FACE AND CHEST WOUND |
| #10 | " | " |
| #11 | " | CloSE-UP OF WOUND. |

| TECHNICIAN: | BADGE# | TECHNICIAN: | BADGE# | SUPERVISOR |
|---|---|---|---|---|
| J. DUCOS | 1167 | N. ORAZIO | 1915 | Sgt. |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023955

| CONTINUATION | | EVIDENCE COLLECTED | | PAGE 2 OF 4 |

ITEM #: L-17352-83

| DATE & TIME COLLECTED | DESCRIPTION OF EVIDENCE | REC'D. BY DATE & TIME | LABORATORY EXAM YES | NO |
|---|---|---|---|---|
| 12-17-83 11:15 AM | OFFICER J. DUCOS COLLECTED 1 SPENT 25 CAL. CASING FROM THE STREET NEAR THE VICTIM'S FEET. | M. Thomas 1:30 PM DEC 17 1983 CENTRAL EVIDENCE & PROPERTY DIV. | | X |
| 12-17-83 1:15 PM | OFFICER J. DUCOS OBTAINED 2 SETS OF INKED FINGERPRINT CARDS FROM THE VICTIM, MARTIN CARMISE W/M 69, IN THE CORONER'S OFFICE | | | X |
| 12-17-83 1:30 PM | OFFICER J. DUCOS TRANSPORTED THE ABOVE LISTED EVIDENCE TO THE CENTRAL PROPERTY & EVIDENCE ROOM. | | | |

*J. F. Ducos*

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023956



CERTIFIED DA OFFICE COPY

OPDA-FLANKS023957

# DEPARTMENT OF POLICE — NEW ORLEANS, LA.

## ARREST REGISTER - DISTRICT ATTORNEY'S COPY  *Homicide*

### ARRESTEE DATA

| ARRESTEE NAME | | | RACE | SEX | BIRTH DATE | HEIGHT | WEIGHT | HAIR | EYES | SKIN | ARREST NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FLANK | RAYMOND | | N | M | 091741 | 511 | 165 | BLK | BRO | MDR | 00802072 |

| ARRESTEE ADDRESS | | | CITY | STATE | | BIRTH STATE | NATIONALITY | BUREAU OF ID NO. |
|---|---|---|---|---|---|---|---|---|
| 8307 | PRIER | ST | NEWORLEANS | LA | | LA | LA | 245837 |

| OCCUPATION | EMPLOYER | MOTION NUMBER |
|---|---|---|
| PAINTER | SELF | 00591212 |

| ALIAS NAME | MARITAL STATUS | SOCIAL SEC. NO. | OPERATOR'S LICENSE NO. | LIC. ST. | YEAR |
|---|---|---|---|---|---|
| RAY | SINGLE | 437232141 | | | |

**MARKS - SCARS - TATTOOS - ETC.**
TATRHND INITIAL R, SCFHD

| IF INJURED DESCRIBE BY WHOM AND IF TREATED; IF INTOXICATED DESCRIBE TO WHAT DEGREE | ADDICT | METHADONE |
|---|---|---|
| REBOOKING | | |

| VEHICLE INVOLVED LICENSE NUMBER | LIC. ST. | YEAR | VEH. YR. | MAKE | MODEL | TYPE | COLOR | VEHICLE IDENTIFICATION NUMBER | DISPOSITION |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

### ARREST DATA

| LOCATION OF ARREST | | | DIST. & ZONE | DATE OF ARREST | TIME OF ARREST | DATE OF BOOKING | TIME OF BOOKING | ITEM NUMBER |
|---|---|---|---|---|---|---|---|---|
| 730 | S WHITE | ST | 1001 | 122383 | 0700 PM | 122383 | 0806 PM | L1735782 |

| ARRESTING OFFICER'S NAME | | OFFICER'S SER. | UNIT | ARREST CREDIT |
|---|---|---|---|---|
| DILLMAN | J | 1309 | 1111 | 23 |

| TRANSPORTING OFFICER'S NAME | | OFFICER'S SER. | UNIT |
|---|---|---|---|
| X | X | | |

NO FBI

### CHARGES AND COURT SCHEDULE

| ORDINANCE/STATUTE NO. | AFFIDAVIT NO. | RELATIVE TO | FOR ADDITIONAL CHARGES SEE SUPPLEMENTARY ARREST REGISTER |
|---|---|---|---|
| 1 RS 14-30 | | MURDER | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

24

M- 142738

| COURT OF TRIAL | SECTION | DATE OF TRIAL | TIME OF TRIAL |
|---|---|---|---|
| CDC | M | JAN. 6 | |

BOND

### OFFENSE DATA

| LOCATION OF OFFENSE | | | DATE OF OFFENSE | TIME OF OFFENSE | DAY OF WEEK | WEAPON |
|---|---|---|---|---|---|---|
| 4000 BLK | PINES | RD | 121703 | 1010 AM | SATURDAY | |

| COMPLAINANTS OR WITNESSES' NAME | | RACE | SEX | BIRTH DATE |
|---|---|---|---|---|
| 1. CARNESI | MARTIN | U | M | 110615 |

| ADDRESS | | | CITY | STATE | TELEPHONE NUMBER |
|---|---|---|---|---|---|
| 6901 | DEANNE | ST | NEWORLEANS | LA | 2427531 |

| COMPLAINANTS OR WITNESSES' NAME | RACE | SEX | BIRTH DATE |
|---|---|---|---|
| 2. | | | |

| ADDRESS | CITY | STATE | TELEPHONE NUMBER |
|---|---|---|---|
| | | | |

**REMARKS - BRIEF DESCRIPTION OF ARREST. USE SPACE FOR INFORMATION NOT PROVIDED IN BLOCKS**
SUBJECT ARRESTED FOR ARMED ROBBERY OF THE A&P FOOD STORE, 4400 MORRISON ROAD. SUBSEQUENT INVESTIGATION BY MEMBERS OF THE HOMICIDE DIVISION REVEALED THAT THE ARRESTED SUBJECT SHOT THE VICTIM DURING THE PERPETRATION OF AN ARMED ROBBERY..... REBOOKING..... 234647.

JAN. 6 5pm
JUDGE BOND NO BOND
ADA-REC NO BOND

| SIGNATURE | TIME IN | SIGNATURE |
|---|---|---|
| H. CRAIG | 0810 PM | E. HOULEMARD |
| DOORMAN (TYPE NAME) | | DESK SERGEANT (TYPE NAME) |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023958

# NEW ORLEANS POLICE DEPARTMENT

| INCIDENT REPORT | X SUPPLEMENTAL REPORT | PAGE 1 | 6 |

**1. ITEM NUMBER** L-17352-83

## EVENT

| 2. SIGNAL | 3. INCIDENT | 4. DATE/TIME OCCURRED | 5. DIST | 6. SECTOR | | |
|---|---|---|---|---|---|---|
| 30 | Murder | 12-17-84 10:00 AM | 7 | 702 | ☐ SELF INITIATED  ☐ FLAGGED DOWN  ☐ CFS | |

**7. LOCATION OF OCCURRENCE** 6000 Blk. Pines Blvd.

| 8. DATE/TIME OF REPORT | 9. ZONE/SUBZONE | 10. WEATHER | 11. TEMP | 12. LIGHTING | 13. BULLETIN REQD |
|---|---|---|---|---|---|
| 12-23-83 1:00 PM | D01 | 2 | 50 | G | ☐ YES ☒ NO |

## WITNESS/REPORTING PERSON/VICTIM

**14. NAME** ☒ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☐ PERSON INTERVIEWED
Carnesi, Martin (LAST NAME) (FIRST NAME) (MIDDLE NAME)

| RACE | SEX | DATE OF BIRTH | VICTIM'S RACE/SEX |
|---|---|---|---|
| W | M | 11-06-15 | ☒ 1601 WHITE  ☐ 1602 BLACK  ☐ 1603 OTHER  ☒ 1610 MALE  ☐ 1611 FEMALE |

**16. HOME ADDRESS** 6901 Deanne St.
**17. HOME PHONE** 242-7531
**18. DRIVER'S LICENSE**
**OCCUPATION** Retired

**19. BUSINESS ADDRESS** None
**20. BUSINESS PHONE**
**21. SOC. SECURITY NO.**
**15. RESIDENCE STATUS** ☐ 630 N.O. RESIDENT ☐ 631 METRO RESIDENT ☐ 632 TOURIST ☐ 633 BUSINESS

| 22. SOBRTY. | INJURY | TYPE INJURY | TREATED | MEDICAL | TRANS | 23. TRANS. TO | 24. DOCTOR/CORONER |
|---|---|---|---|---|---|---|---|
| 5 | 1 | GSW to Chest | DOA | X | X | Morgue | N/A |

**25. NAME** ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☐ PERSON INTERVIEWED
(LAST NAME) (FIRST NAME) (MIDDLE NAME)

| RACE | SEX | DATE OF BIRTH | VICTIM'S RACE/SEX |
|---|---|---|---|
| | | | ☐ 1601 WHITE  ☐ 1602 BLACK  ☐ 1603 OTHER  ☐ 1610 MALE  ☐ 1611 FEMALE |

**27. HOME ADDRESS**
**28. HOME PHONE**
**29. DRIVER'S LICENSE**
**OCCUPATION**

**30. BUSINESS ADDRESS**
**31. BUSINESS PHONE**
**32. SOC. SECURITY NO.**
**29. RESIDENCE STATUS** ☐ 630 N.O. RESIDENT ☐ 631 METRO RESIDENT ☐ 632 TOURIST ☐ 633 BUSINESS

| 33. SOBRTY. | INJURY | TYPE INJURY | TREATED | MEDICAL | TRANS | 34. TRANS. TO | 35. DOCTOR/CORONER |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**36. NAME** ☐ VICTIM ☐ REPORTING PERSON ☐ WITNESS ☐ PERSON INTERVIEWED
(LAST NAME) (FIRST NAME) (MIDDLE NAME)

| RACE | SEX | DATE OF BIRTH | VICTIM'S RACE/SEX |
|---|---|---|---|
| | | | ☐ 1601 WHITE  ☐ 1602 BLACK  ☐ 1603 OTHER  ☐ 1610 MALE  ☐ 1611 FEMALE |

**38. HOME ADDRESS**
**39. HOME PHONE**
**40. DRIVER'S LICENSE**
**OCCUPATION**

**41. BUSINESS ADDRESS**
**42. BUSINESS PHONE**
**43. SOC. SECURITY NO.**
**37. RESIDENCE STATUS** ☐ 630 N.O. RESIDENT ☐ 631 METRO RESIDENT ☐ 632 TOURIST ☐ 633 BUSINESS

| 44. SOBRTY. | INJURY | TYPE INJURY | TREATED | MEDICAL | TRANS | 45. TRANS. TO | 46. DOCTOR/CORONER |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## NUMBER OF ARRESTS

**1**

**47. NAME OF ARRESTEE** Flank, Raymond

| RACE | SEX | DATE OF BIRTH | 48. RIGHTS WAIVED | FORM NUMBER |
|---|---|---|---|---|
| N | M | 9-16-63 | ☐ YES ☒ NO | N/A |

**49. ADDRESS** 830 N. Prieur St.

| 50. DATE/TIME ARREST | 51. ARREST CREDIT | 52. RIGHTS ADVISED BY |
|---|---|---|
| 12-23-83 3:00PM | 29 | C. A. Flot Jr. |

**53. ARREST LOCATION** 730 S. White

| 54. DIST | 55. ZONE | 56. RELAT | 57. TRANS. UNIT | 58. TRANSPORTED BY |
|---|---|---|---|---|
| X | X | X | X | X |

| 59. SOBRTY. | INJURY | TYPE INJURY | TREATED | MEDICAL | TRANS | 60. TRANS. TO | 61. DOCTOR/CORONER |
|---|---|---|---|---|---|---|---|
| X | X | None | | | | | |

| MUNICIPAL ☐ | STATE ☐ | JUVENILE ☐ | ALIAS | SOCIAL SECURITY | MAGISTRATE DATE 1-6-84 | TIME 6:00PM |

## ARRESTED SUBJECT

**62. CHARGES/COMMENTS**

RS. 14 Art 30, Relative to the murder of Martin Carnesi.

Subject arrested for Armed Robbery of the A & P Food Store, 6600 Morrison Rd.
Subsequent investigation by members of the Homicide Division revealed that the
arrested subject shot the victim, during the perpetration of an armed robbery.

| NAME (PRINT) | ADDRESS (PRINT) | (DATE & TIME) | RELATIONSHIP |

HEREBY TAKE CUSTODY OF THE ABOVE NAMED CHILD AND PROMISE TO BRING HIM/HER TO COURT, PROBATION DEPARTMENT, OR THE JUVENILE DIVISION, WHEN NOTIFIED

RELEASED BY (PRINT)          SIGNATURE CUSTODIAN

## CODES

| WEATHER | LIGHTING | RACE | SOBRIETY | INJURY | TREATED | MEDICAL/TRANS. | RELATIONSHIP TO VICTIM |
|---|---|---|---|---|---|---|---|
| 1. CLEAR | G — GOOD | I — Indian | 1. SOBER | 1. Fatal | 1. REFUSED | 1. POLICE EMS | 1. HUSBAND/WIFE  7. COMMON LAW |
| 2. CLOUDY | F — FAIR | S — Spanish | 2. HBD | 2. Critical Non-Fatal | 2. TREATED/RELEASED | 2. OTHER EMS | 2. FATHER/MOTHER  8. RELATIVES |
| 3. RAIN | P — POOR | N — Negro | 3. INTOX | 3. Serious Non-Fatal | 3. HOSPITALIZED | 3. POLICE | 3. SON/DAUGHTER  9. STRANGER |
| 4. SNOW | | W — White | 4. DRUGS | 4. Severe | | 4. CIVILIAN | 4. BROTHER/SISTER  (KNOWN TO AREA) |
| 5. FOG | | O — Oriental | 5. UNKNOWN | 5. Moderate | | | 5. EMPLOYEE/EMPLOYER  10. COMPLETE |
| 6. OTHER | | X — Other | | 6. Minor | | | 6. FRIEND/ACQUAINTANCE  STRANGER |
| | | | | 7. No Injury | | | |

## ADM

**63. DETECTIVE** Det. John Dillmann
**64. TECHNICIAN**
**65. EMS / TOW / OTHER**
**69. ACCESS NUMBER**

| 66. REPORTING OFFICER | BADGE | 67. REPORTING OFFICER | BADGE | 68. CAR | SUPERVISOR |
|---|---|---|---|---|---|
| Det. John Dillmann | 1309 | | | | D.A. |

REV. B NOV. 82

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023959

**NEW ORLEANS POLICE DEPARTMENT** | **INCIDENT REPORT** / X **SUPPLEMENTAL REPORT**  PAGE 1 of 6 | 1. ITEM NUMBER L-17352-83

| EVENT | | |
|---|---|---|
| 2. SIGNAL 30 | 3. INCIDENT Murder | 4. DATE/TIME OCCURRED 12-17-84 10:00 AM  5. DIST 7  6. SECTOR 702 | □ SELF INITIATED  □ FLAGGED DOWN  □ CFS |
| 7. LOCATION OF OCCURRENCE 6000 Blk. Pines Blvd. | 8. DATE/TIME OF REPORT 12-23-83 1:00 PM  9. ZONE/SUBZONE D01  10. WEATHER 2 | 11. TEMP 50  12. LIGHTING G  13. BULLETIN REQD □ YES X NO |

| WITNESS/REPORTING PERSON/VICTIM | | |
|---|---|
| 14. NAME X VICTIM □ REPORTING PERSON □ WITNESS □ PERSON INTERVIEWED  Carnesi, Martin  (LAST NAME) (FIRST NAME) (MIDDLE NAME) | RACE W  SEX M  DATE OF BIRTH 11-06-15 | VICTIM'S RACE/SEX X 1601 WHITE  X 1610 MALE □ 1602 BLACK  □ 1611 FEMALE □ 1603 OTHER |
| 16. HOME ADDRESS 6901 Deanne St. | 17. HOME PHONE 242-7531  18. DRIVER'S LICENSE | OCCUPATION Retired |
| 19. BUSINESS ADDRESS None | 20. BUSINESS PHONE  21. SOC. SECURITY NO. | 15. RESIDENCE STATUS □ 630 N.O. RESIDENT  □ 632 TOURIST □ 631 METRO RESIDENT  □ 633 BUSINESS |
| 22. SOBRTY. 5  INJURY 1  TYPE INJURY GSW to Chest  TREATED DOA | MEDICAL X  TRANS X  23. TRANS. TO Morgue | 24. DOCTOR/CORONER N/A |
| 25. NAME □ VICTIM □ REPORTING PERSON □ WITNESS □ PERSON INTERVIEWED  (LAST NAME) (FIRST NAME) (MIDDLE NAME) | RACE  SEX  DATE OF BIRTH | VICTIM'S RACE/SEX □ 1601 WHITE  □ 1610 MALE □ 1602 BLACK  □ 1611 FEMALE □ 1603 OTHER |
| 27. HOME ADDRESS | 28. HOME PHONE  29. DRIVER'S LICENSE | OCCUPATION |
| 30. BUSINESS ADDRESS | 31. BUSINESS PHONE  32. SOC. SECURITY NO. | 26. RESIDENCE STATUS □ 630 N.O. RESIDENT  □ 632 TOURIST □ 631 METRO RESIDENT  □ 633 BUSINESS |
| 33. SOBRTY.  INJURY  TYPE INJURY  TREATED | MEDICAL  TRANS  34. TRANS. TO | 35. DOCTOR/CORONER |
| 36. NAME □ VICTIM □ REPORTING PERSON □ WITNESS □ PERSON INTERVIEWED  (LAST NAME) (FIRST NAME) (MIDDLE NAME) | RACE  SEX  DATE OF BIRTH | VICTIM'S RACE/SEX □ 1601 WHITE  □ 1610 MALE □ 1602 BLACK  □ 1611 FEMALE □ 1603 OTHER |
| 38. HOME ADDRESS | 39. HOME PHONE  40. DRIVER'S LICENSE | OCCUPATION |
| 41. BUSINESS ADDRESS | 42. BUSINESS PHONE  43. SOC. SECURITY NO. | 37. RESIDENCE STATUS □ 630 N.O. RESIDENT  □ 632 TOURIST □ 631 METRO RESIDENT  □ 633 BUSINESS |
| 44. SOBRTY.  INJURY  TYPE INJURY  TREATED | MEDICAL  TRANS  45. TRANS. TO | 46. DOCTOR/CORONER |

| NUMBER OF ARRESTS | | |
|---|---|---|
| 47. NAME OF ARRESTEE  1  Flank, Raymond | RACE N  SEX M  DATE OF BIRTH 9-16-63 | 49. RIGHTS WAIVED □ YES X NO  FORM NUMBER N/A |
| 48. ADDRESS 830 N. Prieur St. | 50. DATE/TIME ARREST 12-23-83 3:00PM  51. ARREST CREDIT 29 | 52. RIGHTS ADVISED BY C. A. Flot Jr. |
| 53. ARREST LOCATION 730 S. White | 54. DIST X  55. ZONE X  56. RELAT X  57. TRANS. UNIT X | 58. TRANSPORTED BY X |
| 59. SOBRTY. X  INJURY X  TYPE INJURY None  TREATED | MEDICAL  TRANS  60. TRANS. TO | 61. DOCTOR/CORONER |
| MUNICIPAL □  STATE □  JUVENILE □  ALIAS | SOCIAL SECURITY | MAGISTRATE DATE 1-6-84  TIME 6:00PM |

| ARRESTED SUBJECT |
|---|
| 62. CHARGES/COMMENTS  RS. 14 Art 30, Relative to the murder of Martin Carnesi.  Subject arrested for Armed Robbery of the A & P Food Store, 6600 Morrison Rd. Subsequent investigation by members of the Homicide Division revealed that the arrested subject shot the victim, during the perpetration of an armed robbery. |
| I, _____ NAME (PRINT) _____ ADDRESS (PRINT) _____ (DATE & TIME) _____ RELATIONSHIP  HEREBY TAKE CUSTODY OF THE ABOVE NAMED CHILD AND PROMISE TO BRING HIM/HER TO COURT, PROBATION DEPARTMENT, OR THE JUVENILE DIVISION, WHEN NOTIFIED  SIGNATURE  RELEASED BY (PRINT)  CUSTODIAN |

| CODES | WEATHER | LIGHTING | RACE | SOBRIETY | INJURY | TREATED | MEDICAL/TRANS. | | RELATIONSHIP TO VICTIM |
|---|---|---|---|---|---|---|---|---|---|
| | 1. CLEAR 2. CLOUDY 3. RAIN 4. SNOW 5. FOG 6. OTHER | G — GOOD F — FAIR P — POOR | I — Indian S — Spanish N — Negro W — White O — Oriental X — Other | 1. SOBER 2. HBD 3. INTOX 4. DRUGS 5. UNKNOWN | 1. Fatal 2. Critical Non-Fatal 3. Serious Non-Fatal 4. Severe 5. Moderate 6. Minor 7. No Injury | 1. REFUSED 2. TREATED/RELEASED 3. HOSPITALIZED | 1. POLICE EMS 2. OTHER EMS 3. POLICE 4. CIVILIAN | 1. HUSBAND/WIFE 2. FATHER/MOTHER 3. SON/DAUGHTER 4. BROTHER/SISTER 5. EMPLOYEE/EMPLOYER 6. FRIEND/ACQUAINTANCE | 7. COMMON LAW 8. RELATIVES 9. STRANGER (KNOWN TO AREA) 10. COMPLETE STRANGER |

| ADM | 63. DETECTIVE Det. John Dillmann | 64. TECHNICIAN | 65. EMS / TOW / OTHER | 69. ACCESS NUMBER |
|---|---|---|---|---|
| | 66. REPORTING OFFICER Det. John Dillmann  BADGE 1309 | 67. REPORTING OFFICER  BADGE  68. CAR | SUPERVISOR | |

REV. B NOV. 82

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023960

| NOPD SIGNAL | NEW ORLEANS POLICE DEPARTMENT | SUPP STATE COMPUTER NUMBER | |
|---|---|---|---|
| 30 | UNIFORM MOTOR VEHICLE TRAFFIC ACCIDENT REPORT | | |
| | AND INCIDENT REPORT | NOPD ITEM NUMBER | |
| PAGE 3 OF 6 | CONTINUATION SHEET | L-17352-83 | |

| SEQ | QUANTITY | DESCRIPTION | SERIAL NO. | TYPE | STOLEN | RECOVERED |
|---|---|---|---|---|---|---|

the torso, facing in a river direction. The victim's left arm was bent at the elbow, lying across the chest. The right arm was outstretched, facing in a uptown direction. The victim apparently suffered a single gunshot wound of the chest. The victim was clad in a Gray jumpsuit. The only physical evidence located on the scene was a spent 25 caliber casing. This casing was located in the street, approximately six feet from the body of the victim.

At approximately 10:58AM, Unit 3721, manned by Crime Lab Technician James Ducos, arrived on the scene. Technician Ducos processed the crime scene. This consisted of the confiscation of all physical evidence, obtaining scene photographs, measuring the entire scene, and drawing a detailed scene sketch. A copy of the Crime Scene Technician's Report has been made a part of the case file. It is available if deemed necessary.

At 10:50AM, Unit 2497, manned by Coroners Investigator Pernell Lewis, arrived on the scene.

At 11:15AM, Unit 2498, manned by Coroners Chauffeur Greg Mullen, arrived on the scene.

At 11:40AM, Assistant Coroner Dr. Jerry Rosenberg arrived on the scene and pronounced the victim dead. A preliminary examination by Dr. Rosenberg revealed that the victim suffered a single gunshot wound of the upper left chest. No exit wound was located.

In the presence of the investigating detective, the following property was removed from the body:

LEFT FRONT PANTS POCKET- Twenty-Two Dollars in U.S. Currency and one Ninety-Six Dollar check.

RIGHT FRONT PANTS POCKET-Two Dollars in various coins.

RIGHT REAR PANTS POCKET-One Black leather case, containing several keys.

The above mentioned property was turned over to the victim's son-in-law, Julio Gonzales, on the scene.

Once the scene investigation was completed, Detective Dillmann interviewed Mrs. Fay Carnesi. It was learned from Mrs. Carnesi that at about 10:00AM that morning she was leaving her residence when she observed a black male subject, standing on the corner of Deanne and Pines Sts. Mrs. Carnesi was seated in her vehicle, a 1977 Mazda Wagon, which was parked on Pines Blvd, in a downtown direction. This subject then walked past her vehicle and continued on Pine Blvd, in a downtown direction. Moments later, the victim walked up to the vehicle and Mrs. Carnesi rolled the window down. Mrs. Carnesi spoke to her husband for a minute or so and then the victim bent over into the vehicle, kissing her goodbye. As he turned, he was confronted by the unknown black male who produced a handgun. This subject then told the victim "Give me your money!" The victim then asked the subject what he was talking about. At this point, the subject reached for the victim's pocket and the victim grabbed his arm. The subject pushed the

| REPORTING OFFICER | BADGE | REPORTING OFFICER | BADGE | NOPD ACCESS NUMBER |
|---|---|---|---|---|
| Det. John Dillmann | 1309 | | | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023961

| NOPD SIGNAL | NEW ORLEANS POLICE DEPARTMENT | SUPP STATE COMPUTER NUMBER | |
|---|---|---|---|
| 30 | UNIFORM MOTOR VEHICLE TRAFFIC ACCIDENT REPORT | | |
| PAGE 4 OF 6 | AND INCIDENT REPORT<br>CONTINUATION SHEET | NOPD ITEM NUMBER<br>L-17352-83 | |

| SEQ | QUANTITY | DESCRIPTION | SERIAL NO. | TYPE | STOLEN | RECOVERED |
|---|---|---|---|---|---|---|

victim away and shot him at point blank range. Mrs. Carnesi began screaming and the subject pointed the handgun at her. He then told Mrs. Carnesi "Give me your money!" Mrs. Carnesi went on to say that she then took her purse, that was lying on the seat of the vehicle, and threw it out the window. The perpetrator then grabbed the purse and fled on Pines Blvd., in a uptown direction. Mrs. Carnesi then exited the vehicle and ran towards her residence. As she reached the intersection of Deanne and Pines Blvd., she observed the wanted subject fleeing in a light blue vehicle. This vehicle was heading in a lake direction on Deanne Street. Mrs. Carnesi then ran back to the victim and attempted to comfort him. Shortly thereafter, several neighbors brought her into her residence. Upon further questioning, Mrs. Carnesi stated that the perpetrator was armed with a chrome plated automatic. She stated that the subject fired only one shot at her husband. She described the subject as being a black male, approximately twenty-eight years of age, five feet, ten inches tall, one-hundred and fifty pounds, medium build, brown skinned, with a small mustache. She stated that this subject was clad in dark pants, a light colored windbreaker jacket, and was wearing a white plastic shower cap on his head. She added that she would be able to identify this subject if she saw his again. She further stated that the only property stolen was her Navy Blue cloth purse, containing a check book from the Bank of New Orleans and her Louisiana drivers license. A typed written statement was not obtained from Mrs. Carnesi at that time because of her poor physical condition.

Once the interview with Mrs. Carnesi was completed, Detective Dillmann spoke with Detective Mike Lentz, assigned to the M.C.I. Unit of the Seventh District. It was learned from Detective Lentz that the physical description of the wanted subject, furnished by Mrs. Carnesi, fits the physical description of a black male subject wanted for numerous Armed Robberies in the Seventh District area. He added that this subject has been preying on the elderly, mostly pedestrians, in the vicinity of Pines Village. (Area bounded by Morrison Rd, Downman Rd., and Interstate 10) Detective Dillmann, assisted by Detective Lentz then conducted a thorough canvass of the immediate area. Unfortunately, no other witnesses were located.

At approximately 10:00AM, December 18, 1983, Dr. Monroe Samuels performed an autopsy on the body of Martin Carnesi. It was learned that the victim suffered a gunshot wound of the upper left chest with penetration of the heart and right lung. During the autopsy, Dr. Samuels recovered a spent 25 caliber pellet. This pellet was marked for identification and sent to the Crime Lab for analysis. A copy of the Coroner's Day Record has been made a part of the case file. It is available if deemed necessary.

On Monday, December 19, 1983, Detective Dillmann met with Detective Lentz in the Seventh District station. Detective Lentz furnished the investigating detective with copies of the following Incident Reports;

Item # K-29818-83, Armed Robbery, Foch and Dwyer Sts., 11-29-83

Item # L-2521-83, Armed Robbery, 6300 block of Pines Blvd., 12-03-83

Item # L-7810-83, Armed Robbery, 6600 Morrison Rd., 12-08-83

| REPORTING OFFICER | BADGE | REPORTING OFFICER | BADGE | NOPD ACCESS NUMBER |
|---|---|---|---|---|
| Det. John Dillmann | 1309 | | | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023962

| NOPD SIGNAL | NEW ORLEANS POLICE DEPARTMENT | | SUPP STATE COMPUTER NUMBER | |
|---|---|---|---|---|
| 30 | UNIFORM MOTOR VEHICLE TRAFFIC ACCIDENT REPORT | | | |
| PAGE 5 OF 6 | AND INCIDENT REPORT CONTINUATION SHEET | | NOPD ITEM NUMBER L-17352-83 | |

| SEQ | QUANTITY | DESCRIPTION | SERIAL NO. | TYPE | STOLEN | RECOVERED |
|---|---|---|---|---|---|---|

Item # L-12171-83, Armed Robbery, Dwyer and Foch Sts., 12-12-83

Item # L-17352, Armed Robbery Murder, 6000 Blk, Pines Blvd., 12-17-83

Item # L-18303-83, Armed Robbery, 6600 Morrison Rd., 12-18-83

A review of the above mentioned reports reflected that the wanted subject is a black male, late twenties, 5'8" tall, medium build, brown skinned, small mustache, wearing a pink or white plastic shower cap. This subject is armed with a crome plated handgun and is driving an unknown make and model light blue vehicle. All of the aforementioned offenses occurred in the Pines Village area between the hours of 6:00AM and 11:00AM. Several of the victim's can identify the perpetrator. Copies of the above mentioned reports have been made a part of the case file and are available, if deemed necessary.

At approximately 6:30AM, Friday, December 23, 1983, Detective Dillmann was contacted by Detective Richard Marino, assigned to the M.C.I. Unit of the Seventh District. It was ascertained from Detective Marino that approximately 5:05AM that morning, the A & P Food Store, located 6600 Morrison Rd, was robbed. He added that approximately forty-five minutes later, one Raymond Flank, black male, D.O.B. 09-16-83, was arrested for the offense. A 25 caliber crome plated automatic was confiscated, along with the stolen cash. Detective Marino went on to say that the physcial description of Flank closely fit the description of the wanted subject in the Murder of Martin Carnesi. Additionally, Flank was arrested from a 1982 Cheverolet Citation, light blue in color. This vehicle also fit the description of the wanted vehicle in the Carnesi murder. Upon further questioning, Detective Marino stated that Raymond Flank was currently confined to Central Lock-Up. The confiscated weapon had subsequently been transported to the Evidence and Property Section of the Department.

Once this information was obtained, Detective Dillmann proceeded to the Crime Lab where he spoke to Technician Otho Stubbs. Detective Dillmann requested Technician Stubbs to run a ballistic comparison test on the recovered 25 caliber automatic and the pellet recovered from the body of Martin Carnesi. Additionally, Detective Dillmann requested copies of the recent B.O.I. photographs of Raymond Flank, obtained when he was booked that morning.

Detective Dillmann then proceeded to the Homicide Office where he entered the name of the suspect into the N.O.P.D. motion computer. It was learned that Raymond Flank, D.O.B. 09-17-61, residing 830 N. Prieur St., had only two previous arrests, both municipal offenses.

Detective Dillmann then contacted Detective Lentz, who met him in the homicide office. Detective Lentz furnished Detective Dillmann with a copy of the Incident Report, submitted by Police Officers Flot and Riley of the Seventh District. This report, submitted under Item # L-23281-83, reflected that Raymond Flank was positively identified as the perpetrator. The Armed Robbery occurred at the A & P Food Store, located 6600 Morrison Rd. Flank was arrested at approximately 6:15AM, December 23, 1983, from the intersection of Elder and Franklin Ave. He was in possession of a Raven, 25 caliber

| REPORTING OFFICER | BADGE | REPORTING OFFICER | BADGE | NOPD ACCESS NUMBER |
|---|---|---|---|---|
| Det. John Dillmann | 1309 | | | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023963

| NOPD SIGNAL | | NEW ORLEANS POLICE DEPARTMENT | | | SUPP STATE COMPUTER NUMBER | | |
|---|---|---|---|---|---|---|---|
| 30 | | UNIFORM MOTOR VEHICLE TRAFFIC ACCIDENT REPORT | | | | | |
| | | AND INCIDENT REPORT | | | NOPD ITEM NUMBER | | |
| PAGE 6 OF 6 | | CONTINUATION SHEET | | | L-17352-83 | | |

| SEQ | QUANTITY | DESCRIPTION | SERIAL NO. | TYPE | STOLEN | RECOVERED |
|---|---|---|---|---|---|---|

crome plated automatic, Serial Number 683233. Additionally, he was driving a 1982 Cheverolet Citation, Light Blue, bearing Louisiana 178B423. All of the stolen cash was recovered when Flank was arrested. A copy of this Incident Report has been made a part of the case file. It is also available, if deemed necessary.

At approximately 2:30PM, December 12, 1983, Detectives Dillmann and Lentz proceeded to 6901 Deanne St, the residence of Mrs. Fay Carnesi. Mrs. Carnesi viewed a photo-graphic line-up, containing the recent photograph of Raymond Flank. Mrs. Carnesi was able to positively identify Raymond Flank as the subject that shot and killed her husband, during the perpetration of the armed robbery. Mrs. Carnesi then signed and dated the photographs, for identification purposes.

Upon returning to the homicide office, Detective Dillmann was contacted by Technician Otho Stubbs. It was learned from Technician Stubbs that the pellet recovered from the body of Martin Carnesi was positively fired from the 25 caliber automatic confis-cated from Raymond Flank. Additionally, the 25 caliber casing that was found on the crime scene was positively fired from the weapon confiscated from Flank.

Once this information was obtained, Detective Dillmann prepared the necessary forms and transported them to Central Lock-Up. Raymond Flank was then booked with the Armed Robbery, Murder of Martin Carnesi.

As of the completion of this report, Raymond Flank has been positively identified as the subject that shot and killed Martin Carnesi. Additionally, the Murder weapon has been recovered, in the possession of Flank.

Raymond Flank has since been re-booked with two of the aforementioned Armed Robberies in the Pines Village area.

Office of the District Attorney to be consulted. Any furhter information will be submitted, via an additional supplemental report..................................................

| REPORTING OFFICER | BADGE | REPORTING OFFICER | BADGE | NOPD ACCESS NUMBER |
|---|---|---|---|---|
| Det. John Dillmann | 1309 | | | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023964

ITEM# _L-17352-83_   CRIME SCENE TECHNICIAN REPORT   ● PAGE _1_ OF _4_

~~DIV.~~ REQUESTING SERVICE: _HOMICIDE_

LOCATION: _PINES Blvd. AND DEANNE_   SIGNAL: _30_

VICTIM: _MARTIN CARNISE_   ACCUSED: _UNKNOWN AT PRESENT_

DATE & TIME REC'D. _12-17-83_   _10ᴬᴹ 35_ DATE & TIME ARRIVED _12-17-83_   _10ᴬᴹ 55_

RECEIVED SCENE FROM _P/O A. SPIESS_   DATE & TIME _12-17-83_   _10⁵⁵ᴬᴹ_

SERVICES PERFORMED: _✓_ PHOTOS _✓_ SKETCH _____ LATENT PRINTS | _✓_ PHYS. EVIDENCE

PERSONS WHO HAVE ENTERED SCENE:

INVESTIGATION OFFICER (S) _DET. J. Dillman ; P/O Spiess ; P/O FRISARD_

OTHER: _LT. J. RUTH ; CAPT. REEVS ; CHIEF TURNER_

DID INVESTIGATING OFFICER (S) REQUEST ADDITIONAL SERVICES AT THE COMPLETION OF THE SCENE INVESTIGATION?   YES_____   NO _✓_   NO OFFICER ON SCENE _____

| PHOTO# | PHOTOGRAPHS TAKEN - LOCATION | | DESCRIPTION |
|---|---|---|---|
| #1 | PINES Blvd. ; DEANNE | iTEM# | |
| #2 | " | STREET SIGNS AT INTERSECTION | |
| #3 | " | VEH.'S LIC.# 766B440 | MAZDA GLC |
| #4 | " | Body - RIGHT Side | |
| # | " | " - LEFT Side | |
| # | " | " - HEAD TO FEET | |
| #7 | " | " - FEET TO HEAD | |
| #8 | | SPENT CASING ON GROUND NEAR Body. | |
| #9 | | BODY - FACE AND CHEST WOUND | |
| #10 | " | " | |
| #11 | " | CLOSE-UP OF WOUND. | |

| TECHNICIAN: | BADGE# | TECHNICIAN: | BADGE# | SUPERVISOR |
|---|---|---|---|---|
| J. DUCOS | 1167 | N. ORAZIO | 1915 | _(signature)_ |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023965

CONTINUATION

ITEM #: L-17352-83  ●

EVIDENCE COLLECTED  ●

PAGE 2 OF 4

| DATE & TIME COLLECTED | DESCRIPTION OF EVIDENCE | REC'D. BY DATE & TIME | LABORATORY EXAM YES | NO |
|---|---|---|---|---|
| 12-17-83 11:15 AM | OFFICER J. DUCOS COLLECTED 1 SPENT 25 CAL. CASING FROM THE STREET NEAR THE VICTIM'S FEET. | 1:30 PM DEC 17 1983 CENTRAL EVIDENCE & PROPERTY DIV. | | X |
| 12-17-83 1:15 PM | OFFICER J. DUCOS OBTAINED 2 SETS OF INKED FINGERPRINT CARDS FROM THE VICTIM, MARTIN CARMISE W/M 69, IN THE CORONER'S OFFICE | | | X |
| 12-17-83 1:30 PM | OFFICER J. DUCOS TRANSPORTED THE ABOVE LISTED EVIDENCE TO THE CENTRAL PROPERTY & EVIDENCE ROOM. | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | J. F. Ducos | | | |
| | | | | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023966



CERTIFIED DA OFFICE COPY

OPDA-FLANKS023967



PHOTOGRAPHIC DIAGRAM

PAGE 4 OF 4
L-17352-83
J. F. Ducor

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023968

CASE # 299-809 "E" DATE AUG 28 1984   JUDGE Becker

CLERK Thomas   DEFENDANT(S) RAYMOND FLANK   14:30

WILLIAMS / WHITTAKER v. MERRITT

| JUROR # | JUROR'S NAME | | S | D | C | COMMENTS | |
|---|---|---|---|---|---|---|---|
| 40 | ERA M. BOOTHE | ?-5-12 HOUSEWIFE | X | | | . | 1 |
| 186 | JERRY A. HUBBARD | 25-m-0 CONSTRUCTION ① | | | | COUSIN KILLED BY P/O BUT COUSIN DESERVED IT | 2 |
| 233 | DORIS S. LOWE | 58-m-2 HOUSEWIFE | | X | | DAUGHTER-IN-LAW'S MOTHER 30'D | 3 |
| 308 | LOLITA ROCHON | 31-S-2 MACHINE OPR | X | | | VICTIM OF "ATTACK" CAN'T JUDGE | 4 |
| 77 | GAC 60 JOHNNIE G. R. CLARK | 55-D-0 FAMILY SERV /HDD DVLP | X | | | | 5 |
| 351 | NG 72 (SOSHEA) CLIFFORD R. VOISIN | 58-m-1 CPA ② | X | | | J2 | 6 |
| 60 | ALFRED E. BURNETT | 42-m-0 POSTL CLERK ③ | | | | J3 | 7 |
| 150 | 72 GAC SON HAS 67 WALTER R. GATES, SR. | 46-m-2 FLD OPRTR / KAISER | | X | X | FRIEND OF SON 30'D | 8 |
| 52 | GAC 30(DEATH) GACHEWON52-m-2 ALBERT BROWN | LETTER CARRIER | | | X | KNEW V. CAN'T BE FAIR | 9 |
| 321 | NG 62 VRG, ON HUNG 30.1 HERMAN F. SCIENEAUX | 41-m-3 DEALER /GENTILLY SHELL | X | | | | 10 |
| 356 | GAC 62.2, 110/GLC 27(64) JASPER C. WALL | 65-m-1 RETIRED ④ | | | | SON VICTIM OF 64 J4 | 11 |
| 43 | GLC 27(64) GLC 30.1 /GAC 62.2 /GALG22 BERTHA BORRELLO | 68-W-1 HOUSEWIFE | | X | | | 12 |
| 164 | GAC 27(64)(30.1) WILMA GREINER | 31-m-0 HSWF | | X | | | 13 |
| 119 | RELATIVES 30'D JOEL DRUMMER | 46-m-4 MOTEL OWNER | | | | | 14 |
| 266 | M.ARR.966 MICHEAL NOBLE | 31-S-2 DRIVER /PETERSEN MARITIME | X | | | | 15 |
| 213 | LUCILLE H. KOLB | 62-D-2 SECY-ADM /RETIRED | | | | J5 | 16 |
| 122 | ON A GAC 95.1 KENNETH J. DUKE | 31-m-1 SALES / BAKER-TUBULAR | | X | | | 17 |
| 16 | EDDIE P. ARCENEAUX, JR. | 30-m-1 LITHOGRAPHER | | | | J6 | 18 |
| 324 | VICE SUSPECT (?) RUBY L. SHANNON | 30-W-? O.B. TECH / H. DIEU | X | | | | 19 |
| 21 | GLC 30.1>31 PHILIP W. BACKES | 36-S-? PRTS MNGR /TVAR SYS. INC | | X | | | 20 |
| 258 | JOSEPH M. MOONEY | 66-D-1 RETIRED | | X | | V in 64B | 21 |
| 316 | GAC 64 ELEANOR D. SCHAEFFER | 38-S-2 DENT. TECH | | | | J7 | 22 |
| 305 | SHARON R. ROBINSON | 38-m-3 TCHR - ORLEANS | | | | Bro in law 64'd J8 | 23 |
| 45 | FAY R. BOUDREAUX | 54-m-0 COLLECTION OFFICER | SECURITY HOMESTD | | | hus. 64'd J9 | 24 |
| 181 | GAC 64 MRS DOUGLAS C. HITT | 03-m-2 UNANSWERED | | X | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023969

**AUG 28 1984**

CASE # _____   DATE AUG 28 1984   JUDGE _page-2_

CLERK _____   DEFENDANT(S) _____

| JUROR # | JUROR'S NAME | S | D | C | COMMENTS | |
|---|---|---|---|---|---|---|
| 137 | WALTER FOX  60-m-4  SALES - WM. ALLEN SUPPLY | | | | : J10 | 1 |
| 340 | GAC64/GAC AGWIN  PAMELA F. THOMAS  25-S-0  CLERK/TEXACO INC | | | | J11 | 2 |
| 317 | former ST. officer  NICHOLAS F. SCHAMBRA  56-m-0  LAB SPEC./CITY of N.O. | . | | | GREAT J12 | 3 |
| 276 | NORBERT PARKER  44-m-2  ? | . | | X | SCHOOL BOY | 4 |
| 67 | CAROLYN A. CARTER  23-S-0  UNEMPLOYED | | | X | NO DEATH | 5 |
| 318 | GAC 30(DEATH)  KEVIN J. SCHMIDT  25-S-0  TECH.-LADEL INC | | X | | | 6 |
| 197 | ROY A. JARDELL, JR.  53-S-?  SITE MANAGER/PARK EST. APMT | | | X | NO DEATH | 7 |
| 225 | YNG ON 02.2 GAC / GAC 64  MARION N. LEONARD  51-m-1  TEACHER - ORLEANS | | | X | NO DEATH | 8 |
| 297 | ARTHUR C. REYNAUD  57-S-7  DRAFTSMAN/BUICK ASSOC | | | X | NO EARS | 9 |
| 68 | VGLC ON 27(30.1) 27(42)  LINDA L. CARTER  27-m-0  FLAT CHKR/D.H. HOLMES | | X | | | 10 |
| 192 | GAC 27(64)(30.1)  ELAINE JACKSON  26-S-0  C.S. CLERK/TULANE MED | | | | | 11 |
| 309 | RONALD M. ROCHON  35-m-2  WR4S N2KR/U.S. NAVY | | | | | 12 |
| 248 | MARTIN MAY  65-m-3  ART DIRECTOR/AD AGENCY | | | | | 13 |
| 270 | WALDO C. OTIS, JR.  40-D-0  REAL ESTATE | | | | | 14 |
| 153 | LOUIS P. GERMANIS  54-m-3  BUSINESS MGR/MD CLINIC | . | | | | 15 |
| 101 | PAUL DEBROCK  51-m-2  CTR OPRATOR/D.H. HOLMES | | | | | 16 |
| 264 | GAC 77(64)(30.1)  BETTY NEWCOMB  56-S-3 ← SEPARATED  CLERK TYPIST/BOX CO. | | | | | 17 |
| 177 | GAC 64  ALMA L. HENDERSON  51-D-6  TYPIST CLERK/WELFARE N.O. | | | | | 18 |
| 72 | WILLIE MAE CHARLES | | | | | 19 |
| 271 | KENNETH E. OWEN | | | | | 20 |
| 265 | CHRIST J. NIELSEN | | | | | 21 |
| 345 | KATHLEEN TROXCLAIR | | | | | 22 |
| 109 | JOHN DICKSON, JR. | | | | | 23 |
| 353 | ANSON E. WADKINS | | | | | 24 |
| 162 | ROSE RITA GRAY | | | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023970

CASE # _____    DATE **AUG 28 1984**    JUDGE _page - 3_

CLERK _____    DEFENDANT(S) _____

| JUROR # | JUROR'S NAME | S | D | C | COMMENTS | |
|---|---|---|---|---|---|---|
| 28 | WILFRED J. BARTHOLOMEW | | | | | 1 |
| 280 | ELLEN PENNY | | | | | 2 |
| 313 | ROSALIND ROSS | | | | | 3 |
| 96 | ALVIN L. DANIELS | | | | | 4 |
| 79 | ALEXANDER CLAUSON | | | | | 5 |
| 93 | JEAN I. CULLEN | | | | | 6 |
| 156 | CRYSTAL B. GONZALEZ | | | | | 7 |
| 230 | RHODA C. LEWIS | | | | | 8 |
| 1 | BRIAN J. ADAMS | | | | | 9 |
| 166 | EDWARD J. GUESNON | | | | | 10 |
| 105 | DOTTY M. DELMARE | | | | | 11 |
| 129 | RUTH R. FAUST | | | | | 12 |
| 32 | BEVERLYN H. BENN | | | | | 13 |
| 24 | SHARON BAKER | | | | | 14 |
| 149 | JEFFERY A. GATES | | • | | | 15 |
| 148 | DOROTHY :GASPARD | | | | | 16 |
| 364 | DASZIA V. WEBER | | | | | 17 |
| 344 | KAREN TOURNILLON | | | | | 18 |
| 90 | LUBERTHA CRAIG | | | | | 19 |
| 145 | SAMUEL GABLE, JR. | | | | | 20 |
| 188 | JOAN P. HUMPHREY | | | | | 21 |
| 168 | WILLIE MAE GUY | | | | | 22 |
| 69 | AMADEE CASTENELL | | | | | 23 |
| 289 | JENA M. PRICE | | | | | 24 |
| 44 | SUSAN A. BOUCHON | | | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023971

AUG 28 1964

CASE # _____ DATE _____ JUDGE _page-4_

CLERK _____ DEFENDANT(S) _____

| JUROR # | JUROR'S NAME | S | D | C | COMMENTS | |
|---------|-----------|---|---|---|----------|---|
| 373 | TYRONE WILSON | | | | | 1 |
| 201 | ALBERT A. JOHNSON | | | | | 2 |
| 85 | THURMAN C. COOLEY | | | | | 3 |
| 227 | DIANE LESLIE | | | | | 4 |
| 368 | ISAAC WILLIAMS | | | | | 5 |
| | | | | | | 6 |
| | | | | | | 7 |
| | | | | | | 8 |
| | | | | | | 9 |
| | | | | | | 10 |
| | | | | | | 11 |
| | | | | | | 12 |
| | | | | | | 13 |
| | | | | | | 14 |
| | | | | | | 15 |
| | | | | | | 16 |
| | | | | | | 17 |
| | | | | | | 18 |
| | | | | | | 19 |
| | | | | | | 20 |
| | | | | | | 21 |
| | | | | | | 22 |
| | | | | | | 23 |
| | | | | | | 24 |
| | | | | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023972

CASE # 299 809    DATE AUG 28 1984    JUDGE Becker

CLERK Noonan    DEFENDANT(S) Raymond Flank    14:30

| JUROR # | JUROR'S NAME | S | D | C | COMMENTS | |
|---|---|---|---|---|---|---|
| 40 | ERA M. BOOTHE | X | | | | 1 |
| 186 | JERRY A. HUBBARD | AU | | | Cousin killed by P/O. Ⓙ1 | 2 |
| 233 | DORIS S. LOWE | daughter in laws Mom | X | | | 3 |
| 308 | LOLITA ROCHON | X | | | attacked robbery | 4 |
| 77 | JOHNNIE G. R. CLARK ✓ | X | | | | 5 |
| 351 | CLIFFORD R. VOISIN | • | | | can't consider death Ⓒ6 | 6 |
| 60 | ALFRED E. BURNETT ) | | | | Ⓑ3 | 7 |
| 150 | WALTER R. GATES, SR. ← | | X | | son | 8 |
| 52 | ALBERT BROWN | | | X | KNEW ♀ | 9 |
| 321 | HERMAN F. SCIENEAUX | X | | | | 10 |
| 356 | JASPER C. WALL ← | | | | Son 64 d Ⓑ4 | 11 |
| 43 | BERTHA BORRELLO | | X | | | 12 |
| 164 | WILMA GREINER | | | | | 13 |
| 119 | JOEL DRUMMER  ＊ GOOD ＊ | | | | Relative 30 d. | 14 |
| 266 | MICHEAL NOBLE | • | • | | | 15 |
| 213 | LUCILLE H. KOLB | | | | v of 64 | 16 |
| 122 | KENNETH J. DUKE | | | | | 17 |
| 16 | EDDIE P. ARCENEAUX, JR. | | | | | 18 |
| 324 | RUBY L. SHANNON | • | | | | 19 |
| 21 | PHILIP W. BACKES | | | | Aunt murdered | 20 |
| 258 | JOSEPH M.MOONEY | | | | | 21 |
| 316 | ELEANOR D. SCHAEFFER | | | | | 22 |
| 305 | SHARON R. ROBINSON | | | | | 23 |
| 45 | FAY R. BOUDREAUX | | | | | 24 |
| 181 | DOUGLAS C. HITT | | | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023973

| | | | | | | AUG 28 1984 | | JUDGE | page - 2 | |
| CASE. # | | DATE | | | | | | | | |
| CLERK | | | DEFENDANT(S) | | | | | | | |

| JUROR # | JUROR'S NAME | S | D | C | COMMENTS | |
|---|---|---|---|---|---|---|
| 137 | WALTER FOX | | | | | 1 |
| 340 | PAMELA F. THOMAS | | | | | 2 |
| 317 | NICHOLAS F. SCHAMBRA | | | | | 3 |
| 276 | NORBERT PARKER | | | | | 4 |
| 67 | CAROLYN A. CARTER | | | | | 5 |
| 318 | KEVIN J. SCHMIDT | | | | | 6 |
| 197 | ROY A. JARDELL, JR. | | | | | 7 |
| 225 | MARION N. LEONARD | | | | | 8 |
| 297 | ARTHUR C. REYNAUD | | | | | 9 |
| 68 | LINDA L. CARTER | | | | | 10 |
| 192 | ELAINE JACKSON | | | | | 11 |
| 309 | RONALD M. ROCHON | | | | | 12 |
| 248 | MARTIN MAY | | | | | 13 |
| 270 | WALDO C. OTIS, JR. | | | | | 14 |
| 153 | LOUIS P. GERMANIS | | • | | | 15 |
| 101 | PAUL DEBROCK | | | | | 16 |
| 264 | BETTY NEWCOMB | | | | | 17 |
| 177 | ALMA L. HENDERSON | | | | | 18 |
| 72 | WILLIE MAE CHARLES | | | | | 19 |
| 271 | KENNETH E. OWEN | | | | | 20 |
| 265 | CHRIST J. NIELSEN | | | | | 21 |
| 345 | KATHLEEN TROXCLAIR | | | | | 22 |
| 109 | JOHN DICKSON, JR. | | | | | 23 |
| 353 | ANSON E. WADKINS | | | | | 24 |
| 162 | ROSE RITA GRAY | | | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023974

CASE # _____   DATE **AUG 28 1984**   JUDGE _gary-3_

CLERK _____   DEFENDANT(S) _____

| JUROR # | JUROR'S NAME | S | D | C | COMMENTS | |
|---|---|---|---|---|---|---|
| 28 | WILFRED J. BARTHOLOMEW | | | | . | 1 |
| 280 | ELLEN PENNY | | | | | 2 |
| 313 | ROSALIND ROSS | | | | | 3 |
| 96 | ALVIN L. DANIELS | | | | | 4 |
| 79 | ALEXANDER CLAUSON | | | | | 5 |
| 93 | JEAN I. CULLEN | | | | | 6 |
| 156 | CRYSTAL B. GONZALEZ | | | | | 7 |
| 230 | RHODA C. LEWIS | | | | | 8 |
| 1 | BRIAN J. ADAMS | | | | | 9 |
| 166 | EDWARD J. GUESNON | | | | | 10 |
| 105 | DOTTY M. DELMARE | | | | | 11 |
| 129 | RUTH R. FAUST | | | | | 12 |
| 32 | BEVERLYN H. BENN | | | | | 13 |
| 24 | SHARON BAKER | | | | | 14 |
| 149 | JEFFERY A. GATES | | . | | | 15 |
| 148 | DOROTHY :GASPARD | | | | | 16 |
| 364 | DASZIA V. WEBER | | | | | 17 |
| 344 | KAREN TOURNILLON | | | | | 18 |
| 90 | LUBERTHA CRAIG | | | | | 19 |
| 145 | SAMUEL GABLE, JR. | | | | | 20 |
| 188 | JOAN P. HUMPHREY | | | | | 21 |
| 168 | WILLIE MAE GUY | | | | | 22 |
| 69 | AMADEE CASTENELL | | | | | 23 |
| 289 | JENA M. PRICE | | | | —. | 24 |
| 44 | SUSAN A. BOUCHON | | | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023975

AUG 28 1984

ASE # _____ DATE _____ JUDGE _page-4_

LERK _____ DEFENDANT(S) _____

| JUROR # | JUROR'S NAME | S | D | C | COMMENTS | |
|---------|--------------|---|---|---|----------|---|
| 373 | TYRONE WILSON | | | | | 1 |
| 201 | ALBERT A. JOHNSON | | | | | 2 |
| 85 | THURMAN C. COOLEY | | | | | 3 |
| 227 | DIANE LESLIE | | | | | 4 |
| 368 | ISAAC WILLIAMS | | | | | 5 |
| | | | | | | 6 |
| | | | | | | 7 |
| | | | | | | 8 |
| | | | | | | 9 |
| | | | | | | 10 |
| | | | | | | 11 |
| | | | | | | 12 |
| | | | | | | 13 |
| | | | | | | 14 |
| | | | | | | 15 |
| | | | | | | 16 |
| | | | | | | 17 |
| | | | | | | 18 |
| | | | | | | 19 |
| | | | | | | 20 |
| | | | | | | 21 |
| | | | | | | 22 |
| | | | | | | 23 |
| | | | | | | 24 |
| | | | | | | 25 |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023976

ORLEANS PARISH GRAND JURY

JANUARY 19, 1984

STATE OF LOUISIANA                    Police Item No. L-17352-83

VS.

RAYMOND FLANK                         R. S. 14:30

PRESENT:   MR. ERIC DUBELIER, ASSISTANT DISTRICT ATTORNEY

           MEMBERS OF THE ORLEANS PARISH GRAND JURY

WITNESS:   MRS. FAY CARNESI

Other testimony heard, but not transcribed:

       Dr. Sherif Sakla
       Det. John Dillman
       P/O Otto Stubbs

Reported by:  Diane Major, Court Reporter

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023977

FAY CARNESI, Witness, testified as follows:

FOREMAN:

Q    Do you solemnly swear to tell the truth, the whole
     truth, and nothing but the truth, and to keep secret
     the proceedings of this grand jury, so help you God?

A    Yes.

BY MR. DUBELIER:

Q    Ma'm, would you state your full name for the record,
     please.

A    My name is Fay Carnesi.

Q    And where do you live, ma'm?

A    6901 Deanne Street.

Q    Ma'm, I'm going to call your attention back to December 17th
     of 1983, the morning your husband was killed.  Could you
     tell the ladies and gentlemen as best as you can remember
     what happened on that morning?

A    OK.  Every Saturday and Sunday I go to Slidell.  I sell
     antiques.  I usually leave about ten o'clock in the morning.
     And my husband always had a habit of walking -- to come to
     the car and tell me good bye and, you know, tell me to
     be careful and leave before dark because I don't see too
     well, you know, to drive at night.  So I left.  And he had
     to go to the restroom.  So I told him, I said, "Well, I'll

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023978

2

meet you out by the car. Meanwhile, he had a habit of taking the car out of the drive and park it on the side of my house facing Slidell. I walked outside of my house. I was going across my yard and went down the sidewalk. When I did this black guy passed me. He had a -- what you call those -- a shower cap. He had a shower cap on his head. And he passed and he looked at me. I looked up at him. And I said to myself, "For God sakes, what does he have on his head, this guy.", you know. And I took a look at him. He was neatly dressed. And he passed me. Meanwhile, I opened the door of my car, and I had a habit of just throwing my purse in the car on the side of the seat where I drive. And, meanwhile, my husband came out. I had the car door open. My husband came out and he came to tell me good bye. And before I knew it this black guy was in between us, and he said in a low voice, "Give me your money."

Q    Ma'm, were you seated in the car at that time, or were you standing outside of the car?

A    I don't remember whether I was seated and I got up quick. Now, I can't remember that. Uh, when he said, "Give me your money.", I think I was seated on the end of the car and I jumped up. And I said -- my husband said to him, "What did you say?" And I said, "Honey, give him your money." And he just looked at me, stunned like, you know. Well, the guy had a khaki -- like a light beige jacket on with pale blue jeans. They were light blue jeans.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023979

3

Q   I'm treated for my nerves.  I'm so nervous right now.

Just take your time.

A   I've got high blood pressure, too.  And, uh, wait now. Let me get it right.  Yes, I said, "Honey, give him your money."  He said, "What money are you talking about? What money are you talking about?"  So, meanwhile, my husband put his hand -- he had a jumpsuit on.  Excuse me. He put his hand by his pocket, by the jumpsuit pocket, and he kind of hesitated like.  This guy pulled the gun out -- I think he had the gun in his jacket in a side pocket.  And he pulled the gun out and he put it on my husband.  And my husband still had his hand in his pocket. And then he shot my husband.  And when he did I saw the blood coming out of my husband's jumpsuit, and I said to him, "Oh, my God.  You've shot my husband."  So he turned around and he put the gun at me, at my chest.  He said, "Give me your purse."  And I grabbed my purse out the car quick and I handed it to him quick.  And when I did I went to the back of my car and I started running in the middle of the street, screaming toward -- not toward my house, but toward the corner, for the guy across the street. I was screaming his name.  And then I didn't see him. So I -- the mailman grabbed me, and he started running with me back to my house.  Well, I was doing nothing but screaming for help.  I knew I couldn't help my husband. I knew, you know, that was it because blood was coming from,

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023980

5

if it's here." So I looked at this one and I put it down, and I took the one on this side and looked at it. And I kept looking and I recognized him. Then I told the detectives, I said, "I remember one thing about this man. He had a little white blotch on the side of his cheek, a little white mark, like discolored looking." And then the three detectives looked at one another, and he shook his head and said, "That's him." But I don't think they showed the side of his face with that mark, but I happened to remember it because I was looking him in his face twice, you see, and I remembered.

Q     Are you sure that the man you picked out in the pictures is the man that killed your husband?

A     Yes.

Q     OK, ma'm. Any questions?

(No response)

Q     OK. Thank you, Mrs. Carnesi.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023981

4

I think, like from the heart. And, uh, as I got to the corner of my house I ran across my yard, and I saw this blue car parked in front of my house between these two shrubs that I have. And it was a pale blue -- not a shiny car. It was an old car. And it was pale blue. And I saw him just speed off as fast as he could take off.

Q    And that was the same man -- the man in the car was the same man who had shot your husband?

A    Yes. Yes.

Q    Ma'm, do you remember about ...

A    Now, I didn't see him in the car, but I know that it was him, you know, because it just sped off. He would have killed somebody if they had been in the street. That's how fast he went.

Q    OK. Do you remember about a week later, uh, the detectives came to your house and showed you some pictures?

A    Yes.

Q    Were you able to pick a picture out of those pictures that they showed you?

A    Yes.

Q    And the picture you picked, was that the individual who had shot your husband?

A    He had five of them. As soon as I looked I took three and pushed them on the side. And I had one here and one here. And I looked at this one. And I told my daughter, I said, "Get me a flashlight. I want to make sure that it's him

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023982

C E R T I F I C A T E

I hereby certify that the preceding transcript is a true and correct copy of the testimony given, under oath, in the preceding matter, before the Orleans Parish Grand Jury, on the 19th day of January, 1984, and reduced to typewriting by me.

_____

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023983

## SCHEDULED EVENT FORM

CASE NUMBER 302    SYSTEM NUMBER 84000519

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STATUS |
|------|-----------|-------|--------|----------------|---------------|------------------|
| 8/22 | Raymond Flank | MH | DE | — | — | 010 |

| NEXT DATE | 8/28/84 | NEXT EVENT | T | AOA | Moseley | CODE | RMOS | DATA ENTRY | |
|-----------|---------|------------|---|-----|---------|------|------|------------|--|
| JUDGE | Beiker | | REMARKS | | | | | | |
| REPORTER | | | | | | | | | |

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STATUS |
|------|-----------|-------|--------|----------------|---------------|------------------|
| 8-28-85 | Raymond Flank | T | Mistrial | | 169 | |

| NEXT DATE | 8-31-85 | NEXT EVENT | SH | AOA | Whitaker | CODE | BWHI | DATA ENTRY | |
|-----------|---------|------------|----|-----|----------|------|------|------------|--|
| JUDGE | | | REMARKS | | | | | | |
| REPORTER | | | | | | | | | |

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STATUS |
|------|-----------|-------|--------|----------------|---------------|------------------|
| 8-31-85 | Raymond Flank | SH | held | | | |

| NEXT DATE | 10-29-84 | NEXT EVENT | T | AOA | Whitaker | CODE | BWHI | DATA ENTRY | |
|-----------|----------|------------|---|-----|----------|------|------|------------|--|
| JUDGE | | | REMARKS | | | | | | |
| REPORTER | | | | | | | | | |

| DATE | DEFENDANT | EVENT | RESULT | CONTINUANCE BY | REASON & CODE | DEFENDANT STATUS |
|------|-----------|-------|--------|----------------|---------------|------------------|
| 10-29-84 | Raymond Flank | T | C | M | 109 | |

| NEXT DATE | 1-15-85 | NEXT EVENT | T | AOA | Whitaker | CODE | BWHI | DATA ENTRY | |
|-----------|---------|------------|---|-----|----------|------|------|------------|--|
| JUDGE | | | REMARKS | | | | | | |
| REPORTER | | | | | | | | | |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023984

Copy to Homicide
12/19/83

# CORONER'S OFFICE
## DAY RECORD

SS NO. 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

Driver Greg Mullins

Wagon Out 10:25 Am

Wagon In 12:00 pm

Cert. 12-20-1983

2305

Item No. 17352

Date 12/17/83

Time 10:20Am

Informant Det. Dillman

Telephone No. 3142

Name Martin Peter Carnesi

Address 6901 Deanne St.

Age 69  Sex M  Race W  Marital Status Widowed  P.B. No.

Date of Death 12-17-83 @ 11:40 AM  Occupation Locksmith  Nativity N.O., La.

Place of Death 6000 block of Pines Blvd

Adm. to Hospital _____ @ _____  Undertaker Lamana Panno Fallo

Received By Campbell

Autopsy By Dr Samuels  on 12/18/83  @ 9:15Am  Wt 177  Ht 5' 5"  Box No.

Reported to Dr. Rosenberg

---

**VIOLENT DEATHS:**

To Scene: Coroner Rosenberg  Investigator Lewis  Photographer Lewis  Photo No. L-36-83

B of I Nuebs 3727 F8  Seal No.  N.O.P.D. No.

Identified By  Address

Pub. Adm.: ( )  In presence of

---

History: Pronounced dead by: Dr. Rosenberg

Dec, 69 yrs old found lying face up on the ground with a G.S.W. to upper chest. Ake to info from Det Dillman. Dec victim of a Atm robbery. Dec had just walked out of his house with his wife. Wife was getting in car. Perpetrator walk up demanding purse. Perpetrator pulled out a gun, shot dec in upper chest. Wife Fay Carnesi, 6901 Deanne 242-7531. VP turned over to son-in-law on scene Julio Gozales 6911 Deanne 245-0561

Final Diagnosis:

Gunshot wound of chest penetration of heart and right lung.

Homicide: Happened in 6000 block of Pines Blvd

on 12-17-83  To Toxicologist For

Case No. 75  DATE 4-19-84

CARNESI  BY Celia Hate

A TRUE COPY OF THE CORONER'S RECORD

Analysis On

J. Rosenberg, MD
Assistant Coroner

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023985

AUTOPSY PROTOCOL                                    December 18, 1983
MARTIN CARNESI
69 W/M

EXTERNAL EXAMINATION:  The body is that of a well developed, well
nourished white male appearing about the stated age of 69 years.
It is clothed in an olive green jumpsuit, white undershirt, Jockey
shorts, blue and brown slippers.  A small 3 mm hole is located in
the upper medial left side of the chest portion of the jumpsuit
and a tiny hole is noted in the undershirt underlying this.  The
surrounding cloth is soaked with blood.  Examination of the head
shows the scalp to be covered with thin graying hair with alopecia
in the frontal region and also over the crown.  The scalp itself
is normal and intact.  Examination of the eyes show the pupils to
be round and regular.  The sclerae and conjunctivae are normal.
The nasal passages are normal.  Examination of the oral cavity
shows upper and lower plates to be present within the oral cavity.
There is an entrance gunshot wound present on the left side of the
chest.  It measures 3 mm in diameter and shows a 3 mm crescentric
rim of abrasion on the upper lateral aspect of the wound.  The
wound itself is located 6 cm to the left of the midline, 13 cm
below the midportion of the left clavicle at the level of the
3rd intercostal space.  No wound of exit is noted.  Further examina-
tion of the body shows no other significant identifying marks or
scars to be present.  The body is opened with the usual autopsy
incision.  On reflecting the skin and muscles from the anterior
chest, the bullet is seen to have entered the left side of the
chest through the 4th intercostal space anteriorly.  On removing
the sternal plate, examination of the viscera in situ shows a large
amount of hemorrhage into the soft tissues overlying the anterior
aspect of the pericardial sac.  The right pleural cavity contains
approximately 1400 to 1600 cc of fluid and partially clotted blood.
The left pleural cavity contains approximately 50 cc of yellowish
serous fluid.  The pericardial sac contains approximately 60 to 70
cc of fluid and partially clotted blood molded around the contours
of the heart.  The peritoneal cavity is normal.  Examination of the
viscera in situ shows the bullet to have entered the anterior aspect
of the pericardial sac.  Examination of the heart in situ shows the
bullet to have entered the anterior aspect of the right ventricle
adjacent to the interventricular septum in its midportion.  The
bullet is traced through the heart and exits on the posterior
aspect of the right atrium.  The bullet has exited from the
pericardial sac on its right posterior portion.  It has entered the
right pleural cavity, passing through the medial aspect of the lower
lobe on the medial aspect subpleurally and has exited from the
right pleural cavity through the 10th intercostal space adjacent to
the vertebral column.  The bullet is found embedded in the soft tissues
of the back adjacent to this region surrounded by a large amount of
hemorrhage into the muscles and surrounding tissues.  The bullet is

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023986

**AUTOPSY PROTOCOL**

ORLEANS PARISH CORONER'S OFFICE

STATE'S
EXHIBIT
S-1

No. S83-12-75

Name: MARTIN PETER CARNESI          Age: 69  Color: W  Sex: M

Date & Time of Death: 12-17-83 at 11:40 a.m.

Date & Time of Autopsy: 12-18-83 at 9:15 a.m.

**FINAL DIAGNOSES**

1. Gunshot wound of chest.
2. Penetration of:
   a. Heart.
   b. Right lung.
3. Hemothorax, right.
4. Hemopericardium.
5. Arteriosclerotic heart disease.

Classification of Death: _____ HOMICIDE _____

JERRY ROSENBERG, M.D.
ASST. Coroner

A TRUE COPY OF THE
CORONER'S RECORD

DATE 4-19-84

BY _Celia Galle_

gallbladder and extra-hepatic biliary passages are normal.

PANCREAS: The pancreas is normal.

ADRENALS: Both adrenal glands show the presence of a few small cortical nodules which are bright yellow in color and measure approximately .2 to .5 cm in size.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023987

MARTIN  CARNESI                                                          3.

SPLEEN:  The spleen weighs 160 grams.  The capsule is smooth and
blue-gray.  On cut section, normal splenic parenchyma is seen.  No
focal lesions are noted.

KIDNEYS:  The right kidney weighs 160 grams, the left kidney weighs
170 grams.  They are similar in appearance.  The capsules strip
with minimal difficulty.  The cortcial surface is minimally granular
in appearance.  On cut section, there is clear corticomedullary
demarcation.  The cortex, medulla, papillae and pelves are normal.

GASTROINTESTINAL SYSTEM:  The esophagus, stomach, small intestine
and large bowel show no lesions.

HEAD:  On reflecting the scalp, no lesions are noted.  On the
undersurface of the scalp, the calvarium is intact.  On removing
the calvarium, the cerebral hemispheres are symmetrical.  The
meninges are clear and transparent.  The vessels at the base of the
brain show moderate atherosclerotic changes.  Multiple coronal
sections through the cerebral hemispheres, brain stem and cerebellum
show no gross lesions.  The base of the skull is intact and shows no
evidence of trauma.  Dissection of the posterior mediastinum show
the aorta to be intact.  There is a moderate amount of hemorrhage
noted in the soft tissues of the posterior mediastinum in the lower
portion just above the diaphragm along the course of the bullet
tract.  The aorta itself, as previously mentioned, is intact.  The
esophagus is intact.  The aorta shows marked atherosclerotic changes
with marked intimal plaque formation, focal calcification and
ulceration.

PROVISIONAL ANATOMICAL DIAGNOSIS:

1.  Gunshot wound of chest.
2.  Penetration of:
    a.  Heart.
    b.  Right lung.
3.  Hemothorax, right.
4.  Hemopericardium.
5.  Arteriosclerotic heart disease.

NOTE:  1 bullet recovered.


_____
Monroe S. Samuels, M.D., Pathologist
dcg

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023988

**FORENSIC LABORATORY**
Coroner's Office
Parish of Orleans
2700 Tulane Avenue
New Orleans 19, La.

January 5, 1984

REPORT OF THE LABORATORY

TO:   Coroner's Office
      Parish of Orleans

Reference Material Received:   12-19-83    Laboratory No.:   T731-83
                                          Item No.:

Examination Requested:         Alcohol, Drugs

Description of Investigation:  Death of MARTIN CARNESI

Subjects:

Specimens:
1.   One sample of blood labeled with the above name.
2.   One sample of urine labeled with the above name.

RESULTS OF LABORATORY EXAMINATION:
1.   Chemical analysis of specimen #1 was negative for alcohol.
2.   Chemical analysis of specimen #2 was negative for commonly
     abused drugs and alkaloids.

Angela P. Comstock
Chemist

Rubye P. Ory
Toxicologist

Reviewed by:

Frank Minyard, M.D.
Coroner, Parish of Orleans

Monroe S. Samuels, M.D.
Laboratory Director

A TRUE COPY OF THE
CORONER'S RECORD

DATE 4-19-84

BY Celia Galle

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023989

## NEW ORLEANS POLICE DEPARTMENT — INCIDENT REPORT / SUPPLEMENTAL REPORT

PAGE 1 OF

1. ITEM NUMBER: L-17352-83

**EVENT**

| 2. SIGNAL | 3. INCIDENT | 4. DATE/TIME OCCURRED | DIST | 6. SECTOR | | |
|---|---|---|---|---|---|---|
| 30 | MURDER | 12-17-83/0AM 7 | | 702 | □ SELF INITIATED  □ FLAGGED DOWN  □ CFS | |

7. LOCATION OF OCCURRENCE: 6000 BLK. PINES BLVD.

| 8. DATE/TIME OF REPORT | 9. ZONE/SUBZONE | 10. WEATHER | 11. TEMP | 12. LIGHTING | 13. BULLETIN REQ'D |
|---|---|---|---|---|---|
| 12-23-83/PM | DO1 | 2 | 50 | G | □ YES ☒ NO |

14. NAME ☒ VICTIM □ REPORTING PERSON □ WITNESS □ PERSON INTERVIEWED: CARNESI, MARTIN (LAST NAME / FIRST NAME / MIDDLE NAME)

RACE: W  SEX: M  DATE OF BIRTH: 11/06/15

VICTIM'S RACE/SEX: ☒ 1601 WHITE  □ 1602 BLACK  □ 1603 OTHER  □ 1610 MALE  □ 1611 FEMALE

16. HOME ADDRESS: 6901 DEANNE ST.
17. HOME PHONE: 242-7531
18. DRIVER'S LICENSE:
OCCUPATION: RETIRED

19. BUSINESS ADDRESS: NONE
20. BUSINESS PHONE:
21. SOC. SECURITY NO.:

18. RESIDENCE STATUS: □ 630 N.O. RESIDENT  □ 631 METRO RESIDENT  □ 632 TOURIST  □ 633 BUSINESS

| 22. SOBRTY. | INJURY | TYPE INJURY | TREATED | MEDICAL | TRANS | 23. TRANS. TO | 24. DOCTOR/CORONER |
|---|---|---|---|---|---|---|---|
| 5 | 1 | G.S.W. CHEST. | DOA | X | X | MORGUE. | N/A. |

25. NAME □ VICTIM □ REPORTING PERSON □ WITNESS □ PERSON INTERVIEWED

**WITNESS/REPORTING PERSON/VICTIM**

47. NAME OF ARRESTEE: FLANK, RAYMOND

RACE: N  SEX: M  DATE OF BIRTH: 9-16-63

48. RIGHTS WAIVED: □ YES ☒ NO   FORM NUMBER: N/A

49. ADDRESS: 830 N. PRIEUR ST.
50. DATE/TIME ARREST: 12/23/83 3:00 PM
51. ARREST CREDIT: 29
52. RIGHTS ADVISED BY: C.A. FLOT JR.

| 53. ARREST LOCATION | 54. DIST. | 55. ZONE | 56. RELAT | 57. TRANS. UNIT | 58. TRANSPORTED BY |
|---|---|---|---|---|---|
| 730 S. WHITE | X | X | X | X | X |

| 59. SOBRTY. | INJURY | TYPE INJURY | TREATED | MEDICAL | TRANS | 60. TRANS. TO | 61. DOCTOR/CORONER |
|---|---|---|---|---|---|---|---|
| X | X | NONE. | — | — | — | | |

MUNICIPAL □  STATE □  JUVENILE □  ALIAS

SOCIAL SECURITY:

MAGISTRATE DATE: 1-6-83  TIME: 6:00 PM

**ARRESTED SUBJECT**

62. CHARGES/COMMENTS: RS. 14, ART 30, RELATIVE TO THE MURDER OF MARTIN CARNESI.

SUB. ARRESTED FOR ARMED ROBBERY OF THE A&P. FOOD STORE, 6600 MORRISON RD. SUBSEQUENT INVESTIGATION BY MEMBERS OF THE HOMICIDE DIVISION REVEALED THAT THE ARRESTED SUBJECT SHOT THE VICTIM, DURING THE PERPETRATION OF AN ARMED ROBBERY

HEREBY TAKE CUSTODY OF THE ABOVE NAMED CHILD AND PROMISE TO BRING HIM/HER TO COURT, PROBATION DEPARTMENT, OR THE JUVENILE DIVISION, WHEN NOTIFIED

NAME (PRINT) | ADDRESS (PRINT) | (DATE & TIME) | RELATIONSHIP

RELEASED BY (PRINT) _____ SIGNATURE _____ CUSTODIAN

**CODES**

| WEATHER | LIGHTING | RACE | SOBRIETY | INJURY | TREATED | MEDICAL/TRANS. | RELATIONSHIP TO VICTIM | |
|---|---|---|---|---|---|---|---|---|
| 1. CLEAR | I — Indian | 1. SOBER | 1. Fatal | 1. REFUSED | 1. POLICE EMS | 1. HUSBAND/WIFE | 7. COMMON LAW | |
| 2. CLOUDY | G — GOOD | S — Spanish | 2. HBD | 2. Critical Non-Fatal | 2. TREATED/RELEASED | 2. OTHER EMS | 2. FATHER/MOTHER | 8. RELATIVES |
| 3. RAIN | | N — Negro | 3. INTOX | 3. Serious Non-Fatal | 3. HOSPITALIZED | 3. POLICE | 3. SON/DAUGHTER | 9. STRANGER (KNOWN TO AREA) |
| 4. SNOW | F — FAIR | W — White | 4. DRUGS | 4. Severe | | 4. CIVILIAN | 4. EMPLOYEE/EMPLOYER | 10. COMPLETE STRANGER |
| 5. FOG | | O — Oriental | 5. UNKNOWN | 5. Moderate | | | 5. EMPLOYEE/EMPLOYER | |
| 6. OTHER | P — POOR | X — Other | | 6. Minor | | | 8. FRIEND/ACQUAINTANCE | |
| | | | | 7. No Injury | | | | |

**ADM**

63. DETECTIVE: DET. John Dillman
64. TECHNICIAN:
65. EMS / TOW / OTHER:
69. ACCESS NUMBER:

66. REPORTING OFFICER: Det. John Dillman  BADGE: 1309
67. REPORTING OFFICER:
BADGE:  88. CAR:
SUPERVISOR:

REV. 9 NOV. 83

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023990

 

**CRIMINAL INVESTIGATION BUREAU**

| | | | |
|---|---|---|---|
| Off. Date 12/17/83 | Off. Time 10:05AM | Item L-17352-83 | Off. Location 6000 BLK Pinew Blvd |
| Type of Offense Murder | | Name of Business | Phone |
| Victim | | Address | Phone |
| Weapon See Narrative | | Stolen Value | Recovered Value |
| Arrested/Wanted/Accused | See Narrative | | |
| Description | | | |
| Witness: | | | |

Detective John Dillmann, assigned to the homicide division of the Major Offense
Bureau, reports of continuing the investigation into the fatal shooting of
Martin Carnesi, white male, age 69, formerly residing at 6901 Deanne st, which
occured at approximately 10:05AM, December 17, 1983, in the 6900 BLK. of Pines Blvd.

Relative to this investigation, at approximately 6:30AM, Friday, December 23, 1983,
the investigating detective was contacted by Det. Richard Marino, assigned to the
M.C.I. Unit of the Seventh District. It was learned from Det. Marino that at
approximately 5:05AM that morning the A&P Food Store, located at 6600 Morrison Rd,
had been held up by a black male subject. He added that approximately forty-five
minutes later, one Raymond Flank, black male, D.O.B. 09/16/63, was arrested for the
offense. A 25 caliber automatic pistol was recovered, along with the cash stolen
from the robbery. Det. Marino went on to say that the physical discription of the
arrested subject fit the discription of the unknown subject wanted in the armed
robbery, murder, of Martin Carnesi. Additionally, Raymond Flank was arrested from
a 1982 Chevolet Citation, light blue in color. This vehicle also matched the
physical discription of the wanted vehicle in the aforementioned offense. Upon
further questioning, Det. Marino stated that Raymond Flank was currently at C.L.U,
being booked with the armed robbery of the A&P Food Store. The recovered weapon
had been transported to the Evidence and Property Section of the Department.

Once this information was obtained, Det. Dillmann proceeded to the Crime Lab
where he requested a ballistic comparison test on the recovered weapon and the
recovered spent pellet, recovered from the body of Martin Carnesi. Additionally,
B.O.I. photographs were requested of the recent booking of the suspect, Raymond
Flank.

At approximately 11:30AM, Friday, December 23, 1983, Det. Dillmann was contacted
by Technician Otho Stubbs. It was ascertained that the pellet recovered from the
body of Martin Carnesi was fired from the 25 caliber automatic pistol, recovered
from Raymond Flank. Additionally, the 25 caliber shell casing, recovered on the
original crime scene, was also fired from this weapon. (This information will
be covered in the finsibed report).

Detective Dillmann next prepared a photographic line-up, containing the recent
photograph of Raymond Flank. At approximately 2:30PM, Friday, December 23, 1983,
Det. Dillmann proceeded to 6901 Deanne st, the residence of Mrs. Fay Carnesi.
A photographic Line-Up was conduced and Mrs. Carnesi was able to positively
identify Raymond Flack as being the subject that shot and killed the victim,
during the perpetration of an Armed Robbery. She then signed the photographs for
identification purposes.

As of the completion of this daily, Raymond Flank has been booked in abstencia
with the murder of Martin Carnesi. He is also under investigation for several
other Armed Robberies in the Seventh District area.

FULL REPORT TO FOLLOW

| | | |
|---|---|---|
| DETS. ASSIGNED DILLMANN | | DATE 12/27/83 |
| N° 001467  REFERENCES: | | SUPV. SIGNATURE |

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023991

25 shell was found
at scene

**CORONER'S OFFICE**

PARISH OF ORLEANS

Pathologist's Report:

Case of _MARTIN CARNESI_

Coroner _____

Autopsy by _DR SAMUELS_

Date _12/11/63_          Time _9:15 AM_

Provisional Anatomical Diagnosis:

1. GSW CHEST

2. PENETRATION OF

   a) HEART

   b) RT LUNG

3. HEM: THORAX - RIGHT

4. HEM: PERICARDIUM

5. ASITE

(ONE BULLET RECOVERED)

Materials for laboratory examination:

BLOOD BILE URINE POINT

DRUG

Signed _____

BODY RELEASED

Name _MARTIN CARNESI_

Date Died _12/11/63_

Rec'd. by _____

To _AUSTRIA_

Clothing   Yes   No

Chauffeur _W. Sale_

**CORONER'S OFFICE**
**Parish of Orleans**

| LAST | FIRST | MIDDLE |
|---|---|---|

FATHER: _Carnesi, Peter_

MOTHER: _Sciambra, Rita_

DATE OF BIRTH: _11-6-1914_

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023992



DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL TOBACCO AND FIREARMS

# Report of Laboratory Examination

FORENSIC SCIENCE BRANCH
NATIONAL LABORATORY CENTER
1401 RESEARCH BLVD.
ROCKVILLE, MARYLAND 20850
PHONE: FTS  AREA CODE: 301
CHIEF:  443-1443
EVIDENCE ROOM:  443-5447
EXAMINER/ANALYST: 202-294-0420

**TO:** *(Use window envelope. Begin typing two lines below dots.)*

Mr. Bruce Whittaker
Assistant District Attorney
619 South White Street
New Orleans, LA  70119

**DATE:**
February 13, 1985

**YOUR:**

**RE:**
Examination of
Evidence

**OUR:**
85-N-0096F

**DATE EXHIBITS RECEIVED:**
January 25, 1985

**DELIVERED BY:**  Registered Mail #R218345049

**TYPE OF EXAMINATION REQUESTED:**
Firearms

**EXHIBITS:**

Item 1 - One (1) .25 caliber Raven Arms pistol, model MP-25, white metal finish,
wood grips, with magazine, serial #683233.
Item 2 - One (1) envelope containing one (1) .25 caliber, deformed copper-jacketed
lead bullet, weight: 50.1 grams, rifling class characteristics (RCC):
Left-6, marked S, OS and AJ for identification.
Item 3 - One (1) envelope containing one (1) .25 auto caliber discharged shell,
FC headstamp, marked OS, JFD and AJ for identification.
Item 4 - One (1) envelope containing three (3) .25 auto caliber, copper-jacketed
lead cartridges, FC headstamp.

RESULTS OF EXAMINATION:

The above described firearm (item 1) was examined and test-fired by the under-
signed.  It is mechanically sound and in operable condition.  The test-fired
bullets and shells were compared macroscopically with the evidence bullet
(item 2) and the discharged shell (item 3) with negative results.

It is the opinion of this writer that neither the bullet (item 2) nor the dis-
charged shell (item 3) were fired in the firearm submitted for examination (item 1).

All exhibits to be returned to the submitter via registered mail.

ALFRED C. JOHNSON
Senior Firearms Examiner

REVIEWED BY:

For DANIEL D. GARNER, Chief
Forensic Science Laboratory
National Laboratory Center

ATF F 7100.2 (11-78)    EDITION OF 4/78 MAY BE USED

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023993

1-4e (Rev 11-22-77)

 

# UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
### IDENTIFICATION DIVISION
### WASHINGTON, D.C. 20537

PAGE    1

01/25/84

Use of the following FBI record, NUMBER   457 055 CA6   is REGULATED BY LAW. It is furnished FOR
OFFICIAL USE ONLY and should ONLY BE USED FOR PURPOSE REQUESTED. When further explanation of arrest charge   06
or disposition is needed, communicate directly with the agency that contributed the fingerprints.

| Contributor: Identifier (ORI) Name Case Number (OCA) | Subject: Name State Number (SID) | Arrested or Received | C — Charge  D — Disposition |
|---|---|---|---|
| NATIONAL CRIME INFORMATION CENTER FGPT. | | CLASS: | AA 06 PO 17 18 AA PO PI PI 16 |
| LANPD0000 POLICE DEPARTMENT NEW ORLEANS, LA 245827 | FLANK, RAYMOND | 12/23/83 | C-MURDER 299-825C 299-809E LIFE- |
| LA0360000 SHERIFF'S OFFICE NEW ORLEANS, LA 245827 | FLANK, RAYMOND | 01/02/84 | C-ARMED ROBBERY 2CTS 157,000 Acc 1/27 299-932E |
| COPY PER CONTRIBUTOR LA036015A DISTRICT ATTORNEY NEW ORLEANS, LA | | | |

FORM X342 (1-82)

18634-19636

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023994



BIN                         FBI   457 055 CA6   OCA   245827

FLANK, RAYMOND                          B 511 09/17/61

NCIC
FPC    AA 06 PO 17 18 AA PO PI PI 16              SEX M

HENRY
GLASS      6 A  3 U        IOO 18
           A 12 W         OII

      LANPDOOOO POLICE DEPARTMENT
             NEW ORLEANS              LA 12/23/83
CC LA036015A DISTRICT ATTORNEY
             NEW ORLEANS              LA

A search of the fingerprints on the above individual has failed to disclose prior arrest data

      01/19/84                    IDENTIFICATION DIVISION
                             FEDERAL BUREAU OF INVESTIGATION
I-B (REV 7-14-72)

299,825 C
299-809 E

fostered
1/2727

Acc 1/20

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023995

```
DAS1 M     5124 00591212<
NO WARRANT/WANT NOPD COMPUTER CENTER<
NPDO000 FLANK           RAYMOND      NM 09/17/61    511 165 BLK BRO     000
NPDO000  S=437232141                                                   001
NPDO000 08307    PRIER    ST         NEWORLEANS LA          12/23/83    997
NPDO000  TATRHND   INITIAL'R'                        PHYS DESCRIPTOR    000
MONIKER JOHN                         NM 09/17/61 LA 511 165 BLK BRO     000
MONIKER RAY                          NM 09/17/61 LA 511 165 BLK BRO     001
NPDO000 01557    TREASURE  ST        NEWORLEANS LA          03/16/83    998
NPDO000 01449 N  VILLERE   ST        NEWORLEAN LA           12/30/80    999
NPDO000  SCFHD                                      PHYS DESCRIPTOR     001
NPDO000  SCRFHEAD                                   PHYS DESCRIPTOR     002
NPDO000 PAINTER           SELF                               12/23/83   999
NPDO000 BI=245827    TRAFFIC T=00 C=01  CITY A=002 C=003  FELONY A=02 C=00   000
         MISD A=02 C=00    FPC=AA06P01918AAPOPIPI15<
X/R 5124 CCN/00591212

DAS1 R    5124                                  CCN/005912122<
NPDO000 FLANK          RAYMOND       NM 09/17/61   511 165 BLK BROX
NPDO000  BI/245827    TT/00  TC/01  CA/002  CC/003  FA/02  FC/00  MA/02  MC/00X
NPDO000 00730 S  WHITE    ST         1D01 L1735283      ARR-ND/00882072   695
        RS 14  30        MURDER-FIRST DEGREE  12/23/83 0300 PM AC/23      695
NPDO000 00830 N  PRIEUR   ST         7    L2328183      ARR-ND/00882040   697
        RS 14  69        RECEIVNG STOLEN THINGS 12/23/83 0515 AM AC/07    696
        RS 14  64        ROBBERY ARMED      12/23/83 0515 AM AC/07        697
NPDO000 00800 BLK N  CLAIBORNE  AV   3Y02 C1707483 ET AL ARR-ND/00845801  699
239927A WARRAN T                        03/15/83 0145 AM AC/03 DSP/04    698
DISPO    GUILTY          7 DAYS  HOUSE OF D  03/16/83                    698
494238  828MCS  42-30    CRIMINAL DAMAGE PROPTY 03/15/83 0145 AM AC/03 DSP/04  699
DISPO    SUSPENDED        $75   20 DAYS       03/16/83                   699
NPDO000 00839    ESPLANADE  AV   5A   L2261880      ARR-NO/SUMMONS       999
534669  828MCS  28-18    PUTTING GARBAGE N STRT 12/23/80 0030 AM AC/05   999
DISPO    CONTINUED                          12/24/80                     999

M  5125
```

OPDA-FLANKS023996

<u>RAYMOND FLANK</u>

DECEMBER 17, 1983   5:05 AM
6000 PINES BLVD.

Ⓥ MARTIN CARNESI

FAY CARNESI (w) ⇒ 12-23-83 positik ID
⇒ A cane up to car. ⇒ struggle ⇒shot. (ID)
⇒ 0 Then robbed (w)
P/O RILEY⇒ 12-23-83 ⇒ call 64G ⇒ recovered gun + $

Corcren ⇒ 1 shot chest. ⇒ pellet recovered.

Dillman (ID)

Stubbs⇒ pellet matches gun.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023997

V-D          — 12/17/83
             — 6900 Pine Blvd

Intro                        — 2 part trial

                             — challenge

             14:30           — prior death
Law          14:64

Specific Intent

BRD

- P/O testimony
- victims
- 2 days              SEQUESTRATION
- prior service

If state proves

                      → one witness ←
                      Agg Circumstance

WITHERSPOON
   - Consider death
   - believe in capital punishment

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023998

Δ opening

- Δ at home   12/23/83.

- 4 photos w/ dark background
     one w/ light background.

- no physical line-up.

- mistaken I.D.

- say Δ owned light colored
   automobile

          → Ralph Flank owned
             a car. Said Δ
             didn't own a car.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS023999



Dr. Samuels

→ Distance had to be couple of feet
away
2' to 3' away.
track of bullet wound.
→ downward and toward rt

→ 5'5"    170 lbs.

P/O Al Spiess    15 YEARS
12/17/83

- described scene

- Mrs. Carnesi hysterical — lying on the sofa

B/M    20-30    5'10" → 6'10"
135 → 145

Thin moustache
Thin build
- brown complexion
- beige jkt
- dk pants
- shower cap

→ Lt. Blue car

CROSS EXAM

No problem

CERTIFIED DA OFFICE COPY

John Dillman    18 Y NOPD
            14 Y HOMICIDE

-45 minute investigations, then spoke to
Mrs. Carnesi.

- descriptions,
        B/M    mid/late 20s
        5'10"    150    med build
        brown skinned    lt complextion
        soft spoken
        nice looking black man

        dk pants
        windbreaker
        shower cap

    - Automatic gun    chrome

    - small moustache

- photo line-up    went to her residence

    ⟹ not suggestive

        S-5 photo line-up
        POSITIVE LINE-UP

⟹ flashlight -    Mrs. Carnesi asked
                for it.

- picked up photo    began crying

CERTIFIED DA OFFICE COPY

OPDA-FLANKS024001

Cross - exam

- small moustache
- chocolate skinned

- detailed cross about description

- doesn't know who 2ND photo was

- no physical line-up

- couldn't see hair

Mrs. Carnesi

- lived 6901 Deanne St 33 years
- married 35 years 6 children
                              grandchildren

- saw Δ pass up Mrs. Carnesi
  shower cap

- Δ came b/f Mrs. Carnesi & Ψ

- Ψ stepped back Δ shot him.

- she ran

- wearing glasses

CERTIFIED DA OFFICE COPY

OPDA-FLANKS024002

- nothing covering his face
- V was trying to give Δ his money.

<u>car</u>

- Δ's car looks like car that left
  the scene

ID. in court

→ can't forget his face

- doesn't remember talking to p/o
  at scene.

- remembers talking to Dillman

  - shower cap
  - little moustache.
  - size of son-in-law

  - wasn't real black

- <u>Photo line-up</u>        12/23/83
  not suggestive
  → no hints
        Shown by Dillman
  saw Δ's picture - got hysterical

CERTIFIED DA OFFICE COPY

OPDA-FLANKS024003



→ doesn't want to accuse ~~an~~ wrong man.

→ every night when I go to bed
    see the man's face

→ couldn't forget picture / face.

[Cross Exam]

- never seen Δ before

photos
→ questions about 2ⁿᵒ photo

→ time
    doesn't remember giving a description
        to police.

- doesn't remember times

about same size as son-in-law

        son-in-law presented in court

CERTIFIED DA OFFICE COPY

OPDA-FLANKS024004



– moustache

– skin hue

→

– doesn't remember any questions about – teeth
                                                    – earrings
                                                    – nose

→ short hair

[ △ looks thinner ]

⬤⬤⬤

⇒ FACE ⇐

→ Lt. Blue    Backing

   I.D.'d  in  court.

→ SMALL CAR    sped off

CERTIFIED DA OFFICE COPY

OPDA-FLANKS024005



CERTIFIED DA OFFICE COPY



→ 12/17/83

→ 6900 Pines Blvd

→ Martin Carnesi    69

→ Fay Carnesi

Photo  12/23/85

- DR MONROE SAMUELS
- P/O AL SPEISS
- JOHN DILLMAN
- FAY CARNESI
- P/O TEA FLOT
- JOHNNIE THOMAS

— INTRO
- LAW
- DON'T CONSIDER PENALTY
- STATE'S CASE

— NO REASONABLE DOUBT.
→ LAWYER'S QUESTIONS NOT EVIDENCE

Carnesi's residence

DESCRIPTION

thin moustache
thin build
brown complexion
- clothing
- shower cap

Lt. Blue Car.

CERTIFIED DA OFFICE COPY

OPDA-FLANKS024007



CERTIFIED DA OFFICE COPY

OPDA-FLANKS024008



CERTIFIED DA OFFICE COPY



CERTIFIED DA OFFICE COPY

OPDA-FLANKS024010



CERTIFIED DA OFFICE COPY



CERTIFIED DA OFFICE COPY



CERTIFIED DA OFFICE COPY

OPDA-FLANKS024013



CERTIFIED DA OFFICE COPY



CERTIFIED DA OFFICE COPY

OPDA-FLANKS024015



CERTIFIED DA OFFICE COPY

OPDA-FLANKS024016



CERTIFIED DA OFFICE COPY



CERTIFIED DA OFFICE COPY



CERTIFIED DA OFFICE COPY

OPDA-FLANKS024019



CERTIFIED DA OFFICE COPY