UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND FLANKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-6897** |
| **THE CITY OF NEW ORLEANS et al.** | **SECTION: "G"(4)** |

### ORDER AND REASONS

This litigation arises from Plaintiff Raymond Flanks's ("Plaintiff") wrongful conviction for first-degree murder in 1985. Plaintiff names as Defendants the City of New Orleans; Jason Williams, in his official capacity as Orleans Parish District Attorney; Anne Kirkpatrick, in her official capacity as Superintendent of the New Orleans Police Department; John Dillmann, in his individual capacity; and John/Jane Does #1-20 in their individual capacities.[1] Plaintiff alleges the Orleans Parish District Attorney's Office ("OPDA") secured his wrongful conviction in violation of his constitutional rights by withholding material exculpatory evidence in violation of OPDA's obligations under *Brady v. Maryland*.[2]

Before the Court is Defendants' Motion to Exclude Expert Testimony of Robert Lancaster ("Lancaster").[3] Lancaster's opinions concern when Plaintiff would have been released from prison on his sentence for armed robbery if he had not also been convicted of first-degree murder. Defendants contend that Lancaster's testimony should be excluded because his expert report does not show that his opinions are reliably based on his experience or on the evidence in this case.[4]

---

[1] *See* Rec. Doc. 27.

[2] *Id.* at 4–5. *See Brady v. Maryland*, 373 U.S. 83 (1963).

[3] Rec. Doc. 96.

[4] Rec. Doc. 96-1.

1

Plaintiff opposes the motion.[5] For the reasons discussed below, the Court finds that Lancaster's proposed testimony is unhelpful and invades the province of the Court. Consequently, Lancaster's expert testimony must be excluded from trial. The Court will instruct the jury on the applicable law regarding "good time" release. If the jury finds for Plaintiff on liability, it will then be tasked with the factual determination on when Plaintiff would have been released from prison absent the allegedly wrongful conviction. Accordingly, having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

On November 16, 2023, Plaintiff filed a Complaint against Defendants in this Court for alleged violations of his constitutional rights under 42 U.S.C. § 1983 and alleged violations of state law.[6] On June 4, 2024, Plaintiff filed an Amended Complaint.[7] This matter is set for trial on December 8, 2025. This case is related to Plaintiff's alleged wrongful conviction in May 1985 for the first-degree murder of Martin Carnesi.

In May 1985, a jury found Plaintiff guilty of first-degree murder in the death of Martin Carnesi, and Plaintiff was sentenced to life in prison.[8] Nearly 37 years later, on November 17, 2022, Plaintiff's first-degree murder conviction was vacated.[9] At the November 17, 2022 exoneration hearing, the "OPDA stated that 'the State agrees that Mr. Flank's [sic] conviction was

---

[5] Rec. Doc. 108.

[6] Rec. Doc. 1.

[7] Rec. Doc. 27.

[8] Rec. Doc. 27 at 12–13.

[9] *Id.* at 14.

obtained in violation of *Brady v. Maryland*' because 'the State failed to disclose … materials [that] are favorable, and under circumstances of the State's case against Mr. Flank[s], material.'"[10]

Separately, Plaintiff was arrested in December 1983, for an armed robbery at the A&P Food Store on Morrison Road in New Orleans.[11] In July 1984, he plead guilty to that armed robbery, and he was sentenced to 15 years imprisonment.[12] The armed robbery conviction is not challenged in the present lawsuit.

Plaintiff retained Robert Lancaster, a lawyer, as an expert in Louisiana parole and pardon law. Lancaster opines that:

> [T]he Department of Corrections would have applied a 50% diminution rate to all offenses sentenced before 1992. Thus, a 50% diminution rate applied to Mr. Flanks's fifteen-year sentence the Department of Corrections would have applied a 50% diminution rate to all offenses sentenced before 1992. Thus, a 50% diminution rate applied to Mr. Flanks's fifteen-year sentence for armed robbery would mean that Mr. Flanks could have been eligible for 'good time' release after serving seven years and six months.[13]

On October 28, 2025, Defendants filed the instant Motion to Exclude Expert Testimony of Robert Lancaster.[14] On November 4, 2025, Plaintiff filed an opposition to the motion.[15] On November 10, 2025, Defendants filed a reply brief in further support of the motion.[16]

---

[10] *Id.*

[11] Rec. Doc. 96-1 at 4.

[12] *Id.*

[13] Rec. Doc. 96-2.

[14] Rec. Doc. 96.

[15] Rec. Doc. 108.

[16] Rec. Doc. 112.

## II. Parties' Arguments

### A.  *Defendants' Arguments in Support of the Motion*

Defendants argue that the proposed testimony of Lancaster is unreliable because he provides no explanation for his conclusion that the Department of Corrections would have applied a 50% diminution rate to Plaintiff's sentence for armed robbery.[17] Defendants point out that Lancaster cites no laws, regulations, or authoritative sources regarding parole and calculation of good time credits.[18] To the extent Lancaster is relying on his experience, Defendants assert he provides no explanation for how his experience informed this conclusion.[19] Defendants point out that Lancaster did not complete law school until 2000, and he was not admitted to the Louisiana State Bar until 2009.[20] Therefore, Defendants argue Lancaster could not have personal experience representing Louisiana prisoners seeking early release based on good time in the late 1980s or early 1990s.[21]

Additionally, the report refers to Department of Corrections records provided by Plaintiff's counsel, but Defendants point out that Lancaster failed to explain which records he reviewed or relied on in forming his opinions.[22] Defendants note that Lancaster does not mention Plaintiff's disciplinary record or whether the 30 disciplinary infractions at Angola would have affected the good time credits.[23] Finally, Defendants contend Lancaster's opinions "are vague to the point of

---

[17] Rec. Doc. 96-1 at 5.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 6.

being irrelevant."[24] Although Lancaster opines that Plaintiff could have been eligible for release after serving 7.5 years, Defendants note that Lancaster does not address the likelihood that Plaintiff actually would have been released.[25]

### B.    *Plaintiff's Arguments in Opposition to Motion*

In opposition, Plaintiff begins by arguing that Lancaster is qualified to render these opinions.[26] Plaintiff points out that Lancaster has been a professor at LSU Law since 2009, and prior to that he taught at Yale Law School, American University School of Law, and Indiana University School of Law.[27] Before going into academia, Lancaster worked as a public defender for seven years, and he teaches the Parole and Reentry Clinic at LSU Law.[28] Plaintiff contends that Louisiana law at the time of his conviction supports Lancaster's opinion that he could have been eligible for good time release on the armed robbery conviction after serving seven years and six months.[29]

If the jury in this case finds one or more Defendants liable for violating Plaintiff's constitutional rights, Plaintiff asserts that the length of time he wrongfully spent in prison is an essential consideration for jurors in determining damages.[30] Plaintiff contends Lancaster will provide relevant, probative expert testimony how long Plaintiff would have served in prison absent

---

[24] *Id.*

[25] *Id.*

[26] Rec. Doc. 108 at 3–4.

[27] *Id.* at 4.

[28] *Id.*

[29] *Id.* at 5.

[30] *Id.* at 6.

5

the wrongful conviction.[31] Responding to Defendants' argument that Lancaster was not practicing law in the 1980s and 1990s, Plaintiff asserts that "[l]imiting expert testimony to witnesses who were alive and practicing in the field at the time certain laws were in effect or implemented is unsupported by any case law, and practically untenable."[32] Responding to Defendants' argument that Lancaster failed to list the documents he reviewed, Plaintiff points out that Defendants subpoenaed the Department of Corrections' records and Plaintiff then provided Lancaster with all of the documents.[33] According to Plaintiff, "[t]he mere fact that he does not list a compendium of all the documents contained in the Defendants' own disclosure cannot serve to disqualify his expertise in this case."[34] Finally, Plaintiff submits Lancaster's opinion is not too speculative, and if Defendants believe his opinions are incomplete the proper remedy is to address those issues through cross-examination.[35]

## C.   *Defendants' Further Arguments in Support of the Motion*

In reply, Defendants contend Lancaster's report is too vague to determine whether the conclusions are reliable.[36] Defendants contend that determining early release due to good time credits is not necessarily a simple matter, as the applicable law has changed several times.[37] Defendants assert that at the time of Plaintiff's conviction eligibility for "double good time" was only available when a prisoner opted to receive increased diminution of sentence for good behavior

---

[31] *Id.* at 7.

[32] *Id.* at 11.

[33] *Id.* at 12.

[34] *Id.*

[35] *Id.* at 12.

[36] Rec. Doc. 112 at 3.

[37] *Id.*

in lieu of incentive wages, and there is no evidentiary basis to conclude that Plaintiff would have chosen this option.[38] Defendants also point out that Plaintiff failed to meaningfully address whether the numerous disciplinary infractions would have affected the good time credits.[39] To the extent Lancaster is explaining to the jurors the applicable law on good time credits, Defendants argue this invades the province of the Court to instruct the jury on the applicable law.[40]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[41] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education," may provide expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[42] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[43]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific

---

[38] *Id.* at 4.

[39] *Id.*

[40] *Id.* at 5.

[41] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[42] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[43] Fed. R. Evid. 702.

7

testimony or evidence admitted is not only relevant, but reliable."[44] The court's gatekeeping function mostly involves a two-part inquiry.

First, the court must determine whether the expert testimony is reliable, which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[45] The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[46] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[47] In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[48]

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[49] The second inquiry primarily analyzes whether the expert testimony is relevant.[50]

---

[44] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[45] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[46] *Seatrax*, 200 F.3d at 372.

[47] *See Daubert*, 509 U.S. at 590.

[48] *Id.* at 592–94. In *Kumho Tire*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[49] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[50] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[51] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[52] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[53] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left to the jury's consideration."[54]

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."[55] "The rule was enacted to change the old view that [] giving an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[56] The rule, however, "does not open the door to all opinions."[57] Witnesses may not "tell the jury what result to reach," nor may they "give legal conclusions."[58] The Fifth Circuit has explained that "the task of separating impermissible question which call for overbroad or legal responses from permissible questions is not a facile one," but one that requires courts to exclude questions or answers from experts that "would supply the jury with no information other than the expert's

---

[51] *See Daubert*, 509 U.S. at 596.

[52] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[53] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[54] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[55] Fed. R. Evid. 704(a).

[56] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[57] *Id.*

[58] *Id.* (citing *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981)).

view of how its verdict should read."[59]

## IV. Analysis

Defendants argue that the proposed testimony of Lancaster is unreliable because he provides no explanation for his conclusion that the Department of Corrections would have applied a 50% diminution rate to Plaintiff's sentence for armed robbery.[60] In opposition, Plaintiff cites Louisiana caselaw to support Lancaster's statement that Plaintiff could have been eligible for release after serving half of his sentence for armed robbery.[61] The Court finds Lancaster's proposed testimony to be unhelpful, as the substance of his opinion can easily be addressed by a jury instruction.

"[A]n expert may never render conclusions of law,"[62] as that "would constitute an invasion of 'the province of the court to determine the applicable law and to instruct the jury as to that law.'"[63] Allowing such expert testimony in a jury trial is both unhelpful and harmful because:

> the jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word 'expert' and once the jury hears of the [expert]'s experience and expertise, it might think the witness even more reliable than the judge. If an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury.[64]

---

[59] *Id.*

[60] Rec. Doc. 96-1 at 5.

[61] *Bradley v. Louisiana Dep't of Pub. Safety & Corr.*, 2024-1030 (La. App. 1 Cir. 5/23/25), 417 So. 3d 763, 765.

[62] *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).

[63] *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991) (quoting *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)); *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996); *Goodman*, 571 F.3d at 399.

[64] *Cefalu v. Edwards*, No. 12-1377, 2013 WL 5592947, at *1 (E.D. La. Oct. 10, 2013) (quoting *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); *see also Jarrow v. Cupit*, No. 99-3539, 2000 WL 1537989, at *2 (E.D. La. Oct. 17, 2000) ("[I]t is the Court's role, not that of one party's expert witness, to instruct the jury on the law of this

>The United States Fifth Circuit Court of Appeals has recognized that:

>[M]erely being a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact. However, "it must be posited as an a priori assumption [that] there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.[65]

In *Estate of Sowell v. U.S.*,[66] the Fifth Circuit upheld the trial court's exclusion of an attorney-expert who sought to testify regarding what a reasonable fiduciary would do. The Fifth Circuit reasoned that "[w]hether the Estate was 'acting reasonably' was, for all practical purposes, the only issue for the jury in this case to decide."[67]

The principles adopted in *Estate of Sowell* are applicable here. This Court has reviewed Lancaster's expert report and finds that it clearly invades the province of the Court to instruct the jury on any applicable law. Lancaster's report opines that:

>[T]he Department of Corrections would have applied a 50% diminution rate to all offenses sentenced before 1992. Thus, a 50% diminution rate applied to Mr. Flanks's fifteen-year sentence the Department of Corrections would have applied a 50% diminution rate to all offenses sentenced before 1992. Thus, a 50% diminution rate applied to Mr. Flanks's fifteen-year sentence for armed robbery would mean that Mr. Flanks could have been eligible for 'good time' release after serving seven years and six months.[68]

The report does not provide any explanation on how Lancaster reached this conclusion. It appears Lancaster may have reached this conclusion based on his experience teaching the Parole and

---

case. The law 'requires only one spokesperson ... who of course is the judge." (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988))).

[65] *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997) (quoting *Specht*, 853 F.2d at 807).

[66] 198 F.3d 169 (5th Cir. 1999).

[67] *Id.* at 171.

[68] Rec. Doc. 96-2 at 2.

Reentry Clinic at LSU Law for the past 11 years. Lancaster states that the course "includes a comprehensive segment on the law providing for diminution of sentences" and "[t]he client representation of the Parole and Reentry Clinic includes an extensive review of the clients' Department of Corrections records, as well as an understanding of their parole eligibility date, diminution of sentence date, and adjusted good time date."[69]

The report does not cite any laws or regulations upon which Lancaster relied. In opposition to the instant motion, Plaintiff cites Louisiana caselaw discussing Act 848, which became effective in January 1988, and allowed any inmate sentenced after July 1, 1982 who qualifies for good time credit to "receive double good time credit, 30 days for every 30 days served."[70] The issue of whether Plaintiff would have received good time credits is relevant to damages because the jury will have to assess the length of time Plaintiff wrongfully spent in prison. Nevertheless, the Court finds the testimony proposed by Lancaster unhelpful in assisting the jurors on this issue.

The Court will provide the jury with a jury instruction on the law regarding good time credits. Lancaster does not provide any additional opinions beyond that law. He states only that Plaintiff "*could* have been eligible for 'good time' release after serving seven years and six months."[71] He does not opine as to any factors that the Department of Corrections may have considered in determining Plaintiff's eligibility for release. Therefore, his opinion provides only a legal conclusion that Plaintiff *could* have been eligible for good time release after serving half of his sentence for armed robbery. The Court will instruct the jury on the applicable law regarding good time credits. Any disputes on how the law would have applied to Plaintiff's armed robbery

---

[69] *Id.* at 1.

[70] *Bradley v. Louisiana Dep't of Pub. Safety & Corr.*, 2024-1030 (La. App. 1 Cir. 5/23/25), 417 So. 3d 763, 765.

[71] Rec. Doc. 96-2 at 2 (emphasis added).

conviction can be addressed in the parties' proposed jury instructions. Even without Lancaster's expert opinion, the jury may hear testimony from fact witnesses and consider said testimony alongside the jury instructions regarding the applicable law and make their own determination of whether Plaintiff would have received good time credits for the armed robbery conviction if he had not been convicted of murder.

## V. Conclusion

For the reasons stated herein, the Court finds that Lancaster's proposed testimony is unhelpful and invades the province of the Court. Consequently, Lancaster's expert testimony must be excluded from trial. The Court will instruct the jury on the applicable law regarding "good time" release. If the jury finds for Plaintiff on liability, it will then be tasked with the factual determination on when Plaintiff would have been released from prison absent the allegedly wrongful conviction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Exclude Expert Testimony of Robert Lancaster[72] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this  1st  day of December, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[72] Rec. Doc. 96.