## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND FLANKS, | Civil Action No. 23-06897 |
| *Plaintiff*, | |
| | Section G |
| v. | Chief Judge Nannette Jolivette Brown |
| THE CITY OF NEW ORLEANS, *et al.*, | Division 4 |
| *Defendants*. | Magistrate Judge Karen Wells Roby |

### JOINT PRETRIAL ORDER

**I.    The date of the pre-trial conference.**

November 24, 2025, at 2:00 p.m.

**II.    The appearance of counsel identifying the parties represented.**

For Plaintiff Raymond Flanks:

SHANIES LAW OFFICE          MURELL LAW FIRM
David B. Shanies            Christopher Murell
Deborah I. Francois         Meghan Matt
Tristan M. Ellis
Eleanor C. Davis

~~For Defendants City of New Orleans, Anne Kirkpatrick (in her official capacity as Superintendent of the New Orleans Police Department), and John Dillmann:~~

~~William R.H. Goforth~~
~~Sean M. Markey~~
~~Jalen R. Harris~~
~~Corwin St. Raymond~~
~~Donesia D. Turner~~

For Defendant Jason Williams (in his official capacity as Orleans Parish District Attorney):

STANLEY REUTER ALFORD OWEN MUNSON & PAUL, LLC
W. Raley Alford, III
Matthew J. Paul
Inga C. Petrovich

**III.    A description of the parties.**

Plaintiff Raymond Flanks is an individual. ~~Defendant John Dillmann is an individual. Defendant City of New Orleans is a municipal corporation existing under and by virtue of the laws of the City of New Orleans and the State of Louisiana, and having the powers and duties imposed by law thereon. Defendant Anne Kirkpatrick is the Superintendent of the New Orleans Police Department, sued in her official capacity.~~ Defendant Jason Williams is the Orleans Parish District Attorney ("OPDA"), sued in his official capacity.

**IV.    With respect to jurisdiction, a brief summary of the factual basis supporting each claim asserted, whether original claim, counterclaim, third-party claim, etc., and the legal and jurisdictional basis for each such claim, or if contested, the jurisdictional questions.**

This Court has original subject matter jurisdiction over Mr. Flanks' federal law claims under 28 U.S.C. §§ 1331 and 1343. The Plaintiff alleges that this Court has supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. The Defendants do not dispute the issue of supplemental jurisdiction at this time, while the Plaintiff's federal claims remain pending.

**V.    A list and description of any motions pending or contemplated and any special issues appropriate for determination in advance of trial on the merits.**

~~The motions currently pending before the Court are:~~

- ~~The Defendants' Renewed Motion to Exclude Expert Testimony of Brandy Bradley, R. Doc. 159;~~

- ~~Plaintiff's Motion to Amend Exhibit List, R. Doc. 182;~~

- ~~OPDA's Motion to Strike Supplemental Expert Report of Laurie Levenson, R. Doc. 193; and~~

- ~~Plaintiff's Motion for Reconsideration, R. Doc. 197.~~

**VI.    A brief, <u>joint</u> summary of the material facts.**

In 1985, an Orleans Parish jury convicted Mr. Flanks of the 1983 murder of Martin Carnesi. Mr. Carnesi's widow, Faye Carnesi, testified in court and identified Mr. Flanks as the man who

shot her husband while robbing the two of them. Mr. Flanks's brother testified that he and Mr. Flanks were at home together when the murder occurred. Mr. Flanks was sentenced to life in prison. In 2021, the Innocence Project New Orleans started representing Mr. Flanks in his effort to overturn his conviction. In November 2022, Mr. Flanks and an Orleans Parish Assistant District Attorney filed a joint motion to vacate Mr. Flanks's conviction and sentence. The motion argued that Mr. Flanks's conviction was unconstitutional because favorable evidence was not disclosed to him in his criminal case. The motion was granted, Mr. Flanks's conviction and sentence were vacated, and he was released from prison.

Mr. Flanks has now sued ~~the City of New Orleans; Anne Kirkpatrick, in her official capacity as the Superintendent of the New Orleans Police Department ("NOPD"); John Dillmann; and~~ Jason Williams, in his official capacity as Orleans Parish District Attorney. Mr. Flanks claims that he is innocent of the murder of Martin Carnesi and that he was wrongfully convicted because OPDA violated his constitutional rights ~~and because John Dillmann acted negligently in his investigation of the Carnesi murder, while acting in his capacity as an employee of NOPD and the City of New Orleans~~. He seeks to hold the Defendants liable for the time he spent in prison and other harm caused by his murder conviction.

~~John Dillmann was an NOPD homicide detective at the time and was the lead investigator for the Carnesi murder investigation. Mr. Flanks claims, based on Mrs. Carnesi's grand jury testimony, that Detective Dillmann conducted an improper and suggestive photographic identification procedure that caused Mrs. Carnesi to mistakenly identify him as the murderer. He also claims that Detective Dillmann was aware of information that was favorable to Mr. Flanks's defense but withheld that information from prosecutors and from Mr. Flanks. Specifically, he claims that Detective Dillmann failed to disclose discrepancies between Mr. Flanks and Mrs.~~

~~Carnesi's descriptions of the murderer and the car he drove. Mr. Flanks also claims that the robbery~~
~~and murder of Martin Carnesi was part of a series of several robberies committed in the same area~~
~~over several weeks, and that descriptions by those victims show that the robberies were all~~
~~committed by someone else.~~

~~Mr. Flanks also claims that the City of New Orleans and Superintendent Kirkpatrick are~~
~~liable for Detective Dillmann's actions because he was acting in his capacity as a NOPD and City~~
~~employee at the time.~~ Mr. Flanks also claims that District Attorney Williams is liable because the
prosecutors in his case failed to disclose evidence that was favorable to his defense—specifically,
Mrs. Carnesi's testimony before a grand jury regarding, among other things, the identification
procedure conducted by Detective Dillmann, and documents from the police department and
district attorney's office's files. Mr. Flanks claims that the prosecutors were acting pursuant to
official policies, practices, and/or customs of the Orleans Parish District Attorney's Office.

The Defendants dispute Mr. Flanks's allegations. They do not believe that Mr. Flanks's
constitutional rights were violated, and they believe the joint motion to vacate his conviction in
2022 was based on an incomplete and erroneous understanding of the facts. The Defendants claim
that the photographic identification procedure conducted by Detective Dillmann was proper and
was not suggestive. They claim that Mrs. Carnesi was confident in her identification of Mr. Flanks
and that she correctly identified him as her husband's murderer. They deny that any evidence was
withheld from Mr. Flanks that was favorable to him and that could have changed the outcome of
his trial. They also claim that some of the information that Mr. Flanks believes should have been
disclosed to him was in fact disclosed or known to him. They also claim that information about
the other robberies in the same area was not favorable to Mr. Flanks, because he was implicated
in at least two of those robberies.

The Defendants deny that ~~the City of New Orleans, the New Orleans Police Department, or~~ the Orleans Parish District Attorney's Office had any unconstitutional policies or customs. They also deny that any police officers or prosecutors were acting pursuant to any unconstitutional policies or customs. The Defendants also claim that, even if Mr. Flanks can prove his claims, he is not entitled to compensation for all the time he spent in prison because he separately pleaded guilty to armed robbery in 1985 and was concurrently serving a 15-year sentence for armed robbery while he was in prison for murder.

**VII.    A single listing of all uncontested material facts.**

*The robbery and murder of Martin Carnesi*

1.  On the morning of December 17, 1983, Martin Carnesi was shot and killed in front of his house on Deanne Street in the Little Woods neighborhood of New Orleans.

2.  Mr. Carnesi was speaking to his wife, Faye Carnesi, who was preparing to leave in her car, when a man approached them on foot, pulled out a gun, demanded Mr. Carnesi's money, and ultimately shot him.

3.  NOPD officer Albert Spiess responded to the scene of the shooting, spoke to Mrs. Carnesi, and obtained a brief description of the perpetrator. Mrs. Carnesi described the perpetrator as a black man, 20 to 30 years old, 5'10" to 6' tall, 135 to 145 lbs., with a thin mustache, thin/medium build, and brown complexion, wearing dark pants, a beige windbreaker, and a shower cap that was "white milky" or possibly cream-colored. Mrs. Carnesi also stated that immediately after the shooting, she saw a light blue vehicle, unknown make and model, driving away.

4.  Later the same day, Detective John Dillmann with the NOPD Homicide Division interviewed Mrs. Carnesi. Mrs. Carnesi described the perpetrator as a black man, about 28 years old, 5'10" tall, 150 lbs., brown-skinned, with a medium build and a small mustache, wearing dark pants, a light-colored windbreaker jacket, and a white plastic shower cap, and holding a chrome-plated automatic handgun. She also stated that she saw the perpetrator drive away at high speed in a light blue vehicle.

5.  The only physical evidence recovered from the scene was a spent .25 caliber cartridge casing located in the street about six feet from Mr. Carnesi.

6.  A bullet was recovered from Mr. Carnesi's body during his autopsy.

*The robbery of Alice Alvarado at the A&P Food Store*

7.     On the morning of December 23, 1983, Raymond Flanks robbed the A&P Food Store at 6600 Morrison Road in New Orleans. He approached a cashier, Alice Alvarado, a 38-year-old white female, pulled out a gun, and took money and checks from the cash register.

8.     After the robbery, Mr. Flanks left the A&P Food Store in a light blue 1982 Chevrolet Citation.

9.     Mr. Flanks was arrested later in the morning following the robbery at the A&P Food Store. At the time of his arrest, he had a loaded .25 caliber chrome nickel automatic handgun, as well as money and checks taken from the cash register. At the time of his arrest, he did not have a shower cap or any other hat.

10.    After Mr. Flanks's arrest on December 23, 1983, Alice Alvarado and the store's night manager, William Bean, viewed Mr. Flanks and identified him as the man who had just robbed the store.

11.    On December 23, 1983, Raymond Flanks was arrested for armed robbery and possession of stolen property in connection with the A&P Food Store robbery, under NOPD Item No. L-23281-83.

12.    At a hearing the following month, Officer Claude Flot testified that he responded to the scene on the day of the robbery and was informed by Officer Mays that the suspect was "a black male about 6 feet, wearing a white hat, sunglasses and a long knee length brown leather coat."

*Raymond Flanks's arrest and indictment for the Carnesi murder*

13.    After Raymond Flanks was arrested for the armed robbery of Alice Alvarado, police suspected that he may also be responsible for the Carnesi murder and other robberies in the Pines Village area.

14.    On December 23, 1983, Detective Dillmann requested that the NOPD Crime Lab perform a ballistics comparison of the gun that Mr. Flanks had when he was arrested and the bullet recovered from the body of Mr. Carnesi.

15.    Police records also reflect that, later that same day, December 23, 1983, Otho Stubbs, a firearms examiner with the NOPD Crime Lab, contacted Detective Dillmann and informed him that the bullet recovered from Mr. Carnesi's body and the shell casing found at the crime scene were fired from the gun taken from Mr. Flanks.

16.    On December 27, 1983, Officer Stubbs issued a written report stating that the bullet recovered from Mr. Carnesi's body was fired from the gun taken from Mr. Flanks. The report did not mention the shell casing found at the crime scene.

17.    On December 23, 1983, NOPD detectives, including Detective Dillmann and Detective Lentz, visited Mrs. Carnesi at her home and showed her photographs of either five or six individuals, including Raymond Flanks.

18.    On December 23, 1983, at 8:06 p.m., Raymond Flanks was arrested for the murder of Martin Carnesi.

19.    On January 19, 1984, the grand jury heard evidence concerning the murder of Martin Carnesi. Assistant District Attorney Eric Dubelier presented testimony by Faye Carnesi, Dr. Sherif Sakla, Detective Dillmann, and NOPD Firearms Examiner Otho Stubbs.

20.    Before the grand jury, Mrs. Carnesi described the car the perpetrator drove away in after the shooting: "It was a pale blue – not a shiny car. It was an old car. And it was pale blue."

21.    Before the grand jury, Mrs. Carnesi also described the photographic identification procedure: "[The detective] had five [photographs]. As soon as I looked I took three and pushed them on the side. And I had one here and one here. And I looked at this one. And I told my daughter, I said, 'Get me a flashlight. I want to make sure that it's him if it's here.' So I looked at this one and I put it down, and I took the one on this side and looked at it. And I kept looking and I recognized him. Then I told the detectives, I said, 'I remember one thing about this man. He had a little white blotch on the side of his cheek, a little white mark, like discolored looking.' And then the three detectives looked at one another, and he shook his head and said, 'That's him.' But I don't think they showed me the side of his face with that mark, but I happened to remember it because I was looking him in his face twice, you see, and I remembered." Mrs. Carnesi also testified that she was sure that the man she picked out in the pictures was the man who killed her husband. The grand jury did not ask any questions to Mrs. Carnesi.

22.    The grand jury indicted Raymond Flanks for the first-degree murder of Martin Carnesi.

23.    A transcript of Mrs. Carnesi's testimony before the grand jury was prepared after the indictment was returned. Transcripts of the other witnesses who testified before the grand jury were not prepared.

*Raymond Flanks pleads guilty to the armed robbery of Alice Alvarado*

24.    On July 12, 1984, Raymond Flanks appeared for a jury trial on the charge of armed robbery of Alice Alvarado. After jury selection and opening statements, Mr. Flanks withdrew his plea of not guilty and pleaded guilty as charged.

25.    In connection with his guilty plea, Raymond Flanks signed a "Waiver of Constitutional Rights Plea of Guilty" form. The back of the form states: "1. I am pleading guilty with the understanding that that I will not be sentenced until after my trial for first degree murder. 2. If acquitted of the first-degree murder charge I will be sentence to 10 years DOC on this armed robbery charge. 3. If convicted of first-degree murder I will receive no more than 15 years." Underneath this writing are the signatures of Mr. Flanks and his lawyers.

*Hearing on motion to suppress identification*

26. On August 10, 1984, Raymond Flanks's lawyer filed various motions in the Carnesi murder case, including a Motion to Suppress Identification.

27. On August 20, 1984, the State filed on the court docket a list with the names and addresses of all witnesses who may be called at trial.

28. On August 22, 1984, the court held a hearing on Mr. Flanks's motion to suppress the identification by Faye Carnesi. Mrs. Carnesi and Detective Dillmann testified and were cross-examined by Mr. Flanks's lawyer. The court denied the motion.

29. At the motion hearing, Mrs. Carnesi described the photographic identification procedure on December 23, 1983, and testified that she identified the photograph of Raymond Flanks as depicting the man who killed her husband. Mrs. Carnesi also testified that Detective Dillmann did not try to get her to pick the picture of Mr. Flanks.

30. At the motion hearing, Mr. Flanks's lawyer asked Mrs. Carnesi whether the police asked her about any "permanent characteristics" of the man who shot her husband, and Mrs. Carnesi responded: "I don't know. It seems to me—I maybe mistaken. It seems to me like I saw a little tiny white speck on his cheek here, like a pigment. It was very, very small. I don't know whether he still has it or not."

31. At the motion hearing, Mrs. Carnesi testified that she could not identify the make or model of the car that she saw driving away immediately after her husband was shot.

32. At the motion hearing, Mrs. Carnesi testified that, when she first saw the man who later shot her husband, she was sitting in her car with the door open.

33. At the motion hearing, Detective Dillmann testified that, in his initial interview with Mrs. Carnesi, she described the perpetrator as "a black male, approximately twenty-eight years of age."

34. At the motion hearing, Detective Dillmann testified that, when he conducted the photographic lineup procedure with Mrs. Carnesi, "she immediately pulled four of the photographs out with two remaining and then asked for a flash light." Detective Dillmann further testified that Mrs. Carnesi "wanted to have a closer look to make sure that she was able to positively make an identification."

*First trial on murder charge*

35. On August 29, 1984, Raymond Flanks appeared for a jury trial on the murder charge.

36. Faye Carnesi testified at the 1984 trial that Raymond Flanks was the man who shot her husband.

37. Officer Otho Stubbs presented ballistics evidence at the 1984 trial and testified that the gun taken from Mr. Flanks was the same gun used to shoot Martin Carnesi.

38. Raymond Flanks's brother, Ralph Flanks, testified at the 1984 trial that Raymond Flanks was at home with him, sleeping, at the time of the murder.

39. After two-and-a-half hours of deliberation, the jurors reported that they could not reach a verdict, and the court declared a mistrial.

*Additional ballistics testing*

40. On January 18, 1985, Assistant District Attorney Bruce Whittaker sent the gun recovered from Mr. Flanks at the time of his arrest, ammunition found in that gun, the bullet recovered from Mr. Carnesi's body, and the shell casing collected from the crime scene to the United States Bureau of Alcohol, Tobacco and Firearms for comparison.

41. On February 13, 1985, Alfred C. Johnson, Senior Firearms Examiner at the States Bureau of Alcohol, Tobacco and Firearms, issued a report addressed to Bruce Whittaker stating that "[t]he test-fired bullets and shells were compared macroscopically with the evidence bullet (item 2) and the discharged shell (item 3) with negative results." Mr. Johnson also stated: "It is the opinion of this writer that neither the bullet (item 2) nor the discharged shell (item 3) were fired in the firearm submitted for examination (item 1)."

*Second trial*

42. On May 14, 1985, Raymond Flanks appeared for a second jury trial on the murder charge.

43. The State did not produce Mrs. Carnesi's grand jury testimony to Mr. Flanks or his attorney before or during his second trial.

44. The State did not produce any handwritten notes by Detective Dillmann to Mr. Flanks or his attorney before or during his second trial.

45. The State did not produce any NOPD Criminal Investigation Bureau "daily" reports concerning the Carnesi murder investigation to Mr. Flanks or his attorney before or during his second trial.

46. At the second trial, Officer Albert Speiss testified that, when he spoke to Mrs. Carnesi on the day of the murder, she described the perpetrator leaving in a "light blue" vehicle. Officer Speiss further testified that Mrs. Carnesi did not describe the vehicle as "late model."

47. At the second trial, Detective Dillmann testified that, when he spoke to Mrs. Carnesi on the day of the murder, she described the perpetrator leaving in a "light blue late model automobile."

48.     At the second trial, Detective Dillmann described the photographic identification procedure he conducted with Mrs. Carnesi on December 23, 1983.

49.     At the second trial, Detective Dillmann testified that he "found it unusual" that Mrs. Carnesi asked for a flashlight during the photographic lineup procedure. Det. Dillmann further testified that "the lighting conditions were good in the kitchen" and that Mrs. Carnesi was wearing glasses.

50.     At the second trial, Mrs. Carnesi identified Raymond Flanks as the man who shot her husband.

51.     At the second trial, Mrs. Carnesi was shown a photograph of the 1982 Chevrolet Citation that Raymond Flanks was driving on the day he was arrested for armed robbery. Mrs. Carnesi testified that it "looks exactly like the back of the car" that she saw leaving the scene of the murder.

52.     At the second trial, Mrs. Carnesi described the photographic identification procedure on December 23, 1983, and testified that she identified the photograph of Raymond Flanks as the man who killed her husband. Mrs. Carnesi also testified that Detective Dillmann did not point out any particular photograph in any way.

53.     Raymond Flanks did not testify at his second trial.

54.     No ballistics evidence was introduced at the second trial, and neither Otho Stubbs nor Alfred Johnson testified.

55.     During the "guilt" phase of the second trial, no evidence or testimony was introduced referring to the gun recovered from Mr. Flanks when he was arrested for armed robbery.

56.     At the second trial, Detective Dillmann testified that Mrs. Carnesi told him that the man who shot her husband was "armed with a small caliber revolver, a small caliber automatic."

57.     At the conclusion of the second trial, the jury unanimously found Raymond Flanks guilty of the first-degree murder of Martin Carnesi.

58.     After the guilty verdict, the case proceeded to the penalty phase, in which the jury determined whether Mr. Flanks should receive the death penalty or life imprisonment. The jury recommended life imprisonment.

59.     During the penalty phase, testimony was introduced referring to the gun recovered from Mr. Flanks when he was arrested for armed robbery as a ".25 caliber automatic."

60.     Mr. Flanks's lawyer did not object to the testimony about the ".25 caliber automatic" or seek to introduce evidence of the ATF report by Alfred Johnson.

61.    The prosecutors in the Orleans Parish District Attorney's Office were acting on behalf of the State of Louisiana when they prosecuted Raymond Flanks.

62.    On June 11, 1985, Raymond Flanks was sentenced to life imprisonment at hard labor in the custody of the Department of Corrections, without benefit of parole, probation, or suspension of sentence, for the first-degree murder of Martin Carnesi.

63.    Also on June 11, 1985, Raymond Flanks was sentenced to fifteen years at hard labor in custody of the Department of Corrections, without benefit of parole, probation, or suspension of sentence, and with credit for time served, for the armed robbery of Alice Alvarado.

*Appeal and post-conviction proceedings*

64.    On June 24, 1985, Raymond Flanks wrote a letter to the clerk of the criminal court seeking documentation of analysis by the "Federal Bureau of Investigation Expert High Technology Center" showing that the bullet recovered from Martin Carnesi's body was not fired by the gun taken from Mr. Flanks.

65.    On July 14, 1985, Raymond Flanks wrote another letter to the clerk of the criminal court asking for documentation of the "ballistical examination" that "revealed that the gun which they used against me in the first trail wasn't the gun used in the murder case."

66.    Raymond Flanks appealed his murder conviction to the Fourth Circuit Court of Appeal. Among other things, Mr. Flanks argued that the photographic identification procedure used with Mrs. Carnesi was improperly suggestive.  He did not yet have the grand jury transcript in his possession.

67.    On December 13, 1988, the Fourth Circuit Court of Appeal affirmed Mr. Flanks's conviction. The court's opinion stated: "Our review of the photos confirm that they depict similarly featured men. No picture can be singled out as drawing more attention than the others."

68.    In July 2014, Raymond Flanks filed an application for post-conviction relief in state criminal court, arguing that the State withheld exculpatory evidence from him—specifically, test results from the Bureau of Alcohol, Tobacco, and Firearms finding that the gun he was arrested with did not fire the bullet recovered from Martin Carnesi's body.

69.    In September 2014, the state criminal court denied the application for post-conviction relief. The court's ruling stated: "Petition fails to show that the prosecutor engaged in any misconduct or that disclosure of the laboratory examination report was not made to the defense prior to trial."

70.    In October 2014, Raymond Flanks filed an application for supervisory writs in the Fourth Circuit Court of Appeal to challenge the denial of post-conviction relief.

71.    In December 2014, the Fourth Circuit Court of Appeal denied the application for supervisory writs. The court's ruling stated: "Additional testing performed on the weapon by the ATF was at the defense's request. As such, the defense was obviously in possession of the report that it requested."

72.    In January 2015, Raymond Flanks filed an application for supervisory writs in the Louisiana Supreme Court to challenge the denial of post-conviction relief.

73.    In April 2015, the Louisiana Supreme Court denied the application for supervisory writs.

*OPDA policies*

74.    The Orleans Parish District Attorney's Office did not have a written policy manual until 1987.

75.    From 1983 through 1985, the Orleans Parish District Attorney's Office did not have any written policies regarding compliance with prosecutors' duty under the Fourteenth Amendment of the United States Constitution to provide information favorable to criminal defendants.

76.    From 1983 through 1985, the Orleans Parish District Attorney's Office did not have any written policies regarding the transcription or disclosure of grand jury testimony to trial prosecutors or criminal defendants.

77.    From 1983 through 1985, the Orleans Parish District Attorney's Office employed a court reporter who attended grand jury proceedings.

## VIII.    A single listing of the contested issues of fact.

1.    The circumstances of the photographic identification procedure involving Mrs. Carnesi.

2.    The evidence and information disclosed to prosecutors by John Dillmann or other members of the New Orleans Police Department.

3.    The evidence and information disclosed by prosecutors to Raymond Flanks and his lawyers.

4.    The evidence and information known or available to Raymond Flanks and his lawyers.

5.    The extent to which any allegedly undisclosed evidence or information affected the outcome of Raymond Flanks's second trial for murder.

6.    Raymond Flanks's involvement in the murder of Martin Carnesi.

7.      Whether Raymond Flanks was identified or charged in the Randazzo and/or Valentino case.

8.      Whether Raymond Flanks's lawyer requested that the criminal court appoint a laboratory to perform ballistics testing on the gun recovered from Mr. Flanks when he was arrested.

9.      Whether the criminal court ordered that additional ballistics testing be performed on the gun recovered from Mr. Flanks when he was arrested.

10.     The nature and extent of harm suffered by Raymond Flanks as a result of his conviction for the murder of Martin Carnesi.

11.     The nature and extent of training, supervision, and discipline at the Orleans Parish District Attorney's Office concerning *Brady* obligations during and around the time of Raymond Flanks's prosecution.

12.     Whether the Orleans Parish District Attorney's Office, during and around the time of Raymond Flanks's prosecution, maintained a pervasive custom and practice of encouraging due process violations.

13.     Whether the Orleans Parish District Attorney's Office, during and around the time of Raymond Flanks's prosecution, had a pervasive culture of indifference to its due process obligations.

14.     Whether, during and around the time of Raymond Flanks's prosecution, there was a pervasive lack of knowledge regarding *Brady* obligations at the Orleans Parish District Attorney's Office.

15.     Whether District Attorney Harry Connick was aware, at the time of Raymond Flanks's prosecution, that his office's official policies concerning disclosure of exculpatory evidence had caused constitutional violations in the past.

16.     Whether District Attorney Harry Connick was aware, at the time of Raymond Flanks's prosecution, that his office's official policies concerning disclosure of exculpatory evidence were likely to cause constitutional violations in the future.

17.     Whether, and to what extent, the disclosure decisions made by prosecutors in the Carnesi murder case were caused by the official policies of the Orleans Parish District Attorney's Office.

18.     Whether, and to what extent, during and around the time of Raymond Flanks's prosecution, grand jury transcripts were made available to the trial prosecutors in the Orleans Parish District Attorney's Office.

19.     The average numbers of cases accepted, jury trials, judge trials, guilty pleas, and trial convictions in the years during and around the time of Raymond Flanks's prosecution.

20. Whether Mrs. Carnesi told Detective Dillmann at some point that the perpetrator was driving an old car and had a white blotch on his face.

21. Whether Mrs. Carnesi testified at the motion hearing that two of the photographs included in the array for the photographic identification procedure depicted men without mustaches.

~~**VIII(b).    The material facts and circumstances relied on by the Plaintiff to established the claimed negligence of Defendant John Dillmann.**~~

~~1.    ** The Defendants note that many of these facts are contested. **Mrs. Carnesi initially described the Perpetrator as a Black man in his late twenties, about 5'10" and 150 pounds, with a medium build, brown skin, and a mustache.~~

~~2.    Mrs. Carnesi also noted that the Perpetrator was wearing "a white plastic shower cap on his head," which, as she said at trial, she noticed because she "ha[d] never seen anyone with a showercap [sic] on their head before."~~

~~3.    Mrs. Carnesi also told Detective John Dillmann, the lead investigator on the case, that she remembered that the perpetrator had "a white blotch" on his head and was driving an "older" car.~~

~~4.    When Mrs. Carnesi appeared before the grand jury approximately four weeks after the crime, she similarly testified that the "one thing" she remembered about the Perpetrator was that he "had a little white blotch on the side of his check, a little white mark, like discolored looking" and that the car she saw speed away after the crime was "not a shiny car[,] [i]t was an old car."~~

~~5.    The NOPD immediately associated this crime with a series of similar armed robberies that had occurred in the same area.~~

~~6.    The assailant described by the victims of these crimes was largely consistent with Mrs. Carnesi's initial description of the Perpetrator: a Black man in his twenties, 5'8" to 5'11" tall, with a medium build and brown skin, with a mustache, and wearing a shower or "hospital type" cap in a variety of colors.~~

~~7.    He was also described as driving an "old, light blue or gray vehicle."~~

~~8.    As of December 19, 1983, two days after Mr. Carnesi's murder, the police had identified similar robberies on November 29, 1983; December 3, 1983; December 8, 1983; December 12, 1983; and December 18, 1983.~~

~~9.    One victim also described the perpetrator as being in his thirties, as having a "heavy" build, and as weighing approximately 200 pounds.~~

~~10.    Mr. Flanks became a suspect in Mr. Carnesi's murder after he was arrested while fleeing from an unrelated armed robbery of an A&P Food Store on December 23, 1983.~~

14

11.     Mr. Flanks was not described as wearing a shower cap.

12.     Mr. Flanks was not arrested with a shower cap (or any other hat).

13.     Mr. Flanks did not have a "Jheri curl" hairstyle in December of 1983.

14.     There is no evidence that Mr. Flanks ever wore a "Jheri curl" hairstyle or a shower cap.

15.     NOPD paperwork indicates that Otho Stubbs claimed he forensically matched Ralph Flanks's gun to the gun used for Mr. Carnesi's murder that same day.

16.     Otho Stubbs issued his final report claiming to have matched Ralph Flanks's gun to the shell casing recovered from the murder scene on December 26, 1983.

17.     Otho Stubbs did not forensically test the shell casing that was recovered from the crime scene. Stubbs Report.

18.     In 1985, the United States Bureau of Alcohol Tobacco and Firearms conducted an examination and testing, at the request of the New Orleans Police Department and Orleans Parish District Attorney's Office, to determine whether the bullet recovered from Mr. Carnesi's body and/or the shell casing collected from the crime scene could have been fired from the gun recovered at the time of Mr. Flanks's arrest.

19.     The ATF's official report, dated February 13, 1985, stated that the result of the testing was that neither the bullet nor the shell casing could have been fired from the gun recovered at the time of Mr. Flanks's arrest.

20.     On the day of his arrest, Mr. Flanks was driving a 1982 light blue Chevrolet Citation.

21.     About a week after Mr. Carnesi's murder, NOPD detectives—including Defendant John Dillmann—visited Mrs. Carnesi at her home and showed her a photo array with photos of either five or six individuals, including Mr. Flanks.

22.     Mrs. Carnesi testified about this identification procedure at the grand jury. She testified that she narrowed the lineup down to two photos—Mr. Flanks and one other—and then asked her daughter to bring her a flashlight to "make sure that it's him if it's here."

23.     Two of the "fillers" lacked mustaches, despite that being part of the witness's description of the Actual Perpetrator.

24.     Mrs. Carnesi told the detectives that the "one thing" she remembered about the Perpetrator was the "little white blotch on the side of his cheek, a little white mark, like discolored looking." Grand Jury Tr. at 5. In response, Defendant Dillmann "shook his head and said, 'that's him,'" indicating the photo of Mr. Flanks. *Id.*; *see also* Trial Tr. 27 (Dillmann only detective who spoke to Mrs. Carnesi during the identification procedure); Lentz Dep. Tr. 53:4–24 (same).

~~25.    NOPD policy requiring that an in-person lineup be conducted following a photo array that resulted in a positive identification.  Defendant Dillmann did not follow that policy in this case.~~

**VIII(c).        The nature and extent of the Plaintiff's alleged personal injuries.**

**\*\* The Defendants note that many of these facts are contested. \*\***

1.      Due to his wrongful conviction and imprisonment, Mr. Flanks lost his chance to have meaningful relationships with his family members and friends.  He also lost all the social benefits that come from freedom, including the opportunities to create community ties and participate in normal civilian life.

2.      The torment his family suffered exacerbated Mr. Flanks own torment and the psychological burden he had to bear.

3.      The injuries and damages sustained by Mr. Flanks, arising from the deprivation of his civil rights, include: the violations of his clearly established rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; personal injuries; past and future pain and suffering; past and future severe mental anguish; past and future emotional distress; extreme fear; economic damages including loss of income and diminution in future earning potential and the inability to obtain certain professional licenses; infliction of physical illness and injury resulting from his confinement; humiliation, indignities, embarrassment, degradation, and egregious injury to reputation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom and physical liberty including but not limited to diet, sleep, personal care, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression.

**VIII(f).        The facts and circumstances relied on by the Plaintiff as constituting duress, fraud, or mistake.**

See above lists of Uncontested and Contested Material Facts.

**VIII(g).        Itemized statement of special damages.**

Mr. Flanks seeks $975,578.00 in lost wages.

## IX.    A single listing of the contested issues of law, as well as memoranda by each party briefing each contested issue, including citations of relevant authorities.

1.      Whether the evidence and information the plaintiff claims was suppressed was required to be disclosed pursuant to *Brady v. Maryland* and related jurisprudence.

2.      Whether the official policies of the Orleans Parish District Attorney's Office concerning disclosure of exculpatory evidence in effect during and around the time of Raymond Flanks's prosecution were unconstitutional.

3.    Whether the official policies of the Orleans Parish District Attorney's Office concerning disclosure of exculpatory evidence in effect during and around the time of Raymond Flanks's prosecution were adopted or approved by District Attorney Harry Connick with deliberate indifference to the constitutional rights of criminal defendants.

4.    Whether the Orleans Parish District Attorney's Office, during and around the time of Raymond Flanks's prosecution, maintained a custom and practice of encouraging due process violations that was so pervasive as to constitute an official municipal policy.

5.    Whether the claims against the Orleans Parish District Attorney's Office are barred by the Eleventh Amendment/sovereign immunity because prosecutors acted as an arm of the State of Louisiana in prosecuting Raymond Flanks.

6.    Whether the alleged policies of the Orleans Parish District Attorney's Office that Raymond Flanks complains of are attributable to the State of Louisiana, rather than the Orleans Parish District Attorney's Office, because prosecutors acted on behalf of the State of Louisiana in prosecuting Mr. Flanks.

The parties h memoranda briefing the contested issues as requested.

**X.    A list and description of the exhibits that each party intends to introduce at the trial.**

**For Plaintiff Raymond Flanks:**

| Exhibits Plaintiff Expects to Offer – Admitted Without Objection |
|---|
| ATF Report of Laboratory Examination and Supporting Documents (ATF00001-18) |
| May 1985 Trial Transcript (OPDA-FLANKS000537-664) |
| Grand Jury Testimony of Faye Carnesi (OPDA-FLANKS000023-29) |
| Operations Manual- Identification of Suspects - Lineups, Crime Scenes, Mug Shots [1982 version] (CNO-020764-67) |
| December 17, 1983 Incident Report re: Carnesi Murder (OPDA-FLANKS000244-250) |
| December 20, 1983 Daily Report re: Carnesi Murder (OPDA-FLANKS000265) |
| December 23, 1983 Supplemental Report re: Carnesi Murder (OPDA-FLANKS000239-243) |
| Crime Scene Technician Report (OPDA-FLANKS000275-278) |
| Evidence/Property Card & Continuation Card (OPDA-FLANKS000279-280) |
| Property Voucher (CNO 041-42) |
| Stubbs Lab Report (FLANKS_004703) |
| Photos of Raymond Flanks (OPDA-FLANKS000271) |
| Coroner's Office Pathologist's Report (OPDA-FLANKS000282) |

| |
|---|
| 1984 Suppression Hearing Transcript (FLANKS_003005-52) |
| Handwritten Detective Notes (OPDA-FLANKS000030-33) |
| Nolle Prosequi and Court Order (OPDA-FLANKS000020-22) |
| A.D.A. Check List Prior To Trial (OPDA-FLANKS000409) |
| March 21, 2022 Corrections Services Offender Annual Assessment (OPDA-FLANKS000665-668) |
| October 31, 2024, Letter of Incarceration re: Raymond Flanks (FLANKS_004819) |
| Screening Action Form (FLANKS_000158) |
| Signed ATF Report (OPDA-FLANKS000389) |
| December 17, 1983 Daily Report re: Carnesi Murder (OPDA-FLANKS000264, 267) |
| December 27, 1983 Daily Report re: Carnesi Murder (OPDA-FLANKS000263) |

| Exhibits Plaintiff Expects to Offer – With Objections | Nature of Objections[1] |
|---|---|
| *Unholy Matrimony* by John Dillmann | Hearsay, Relevance, 403 (unfair prejudice, confusion) |
| Memo from Val M. Solino to Harry Connick "RE: Brady Reversals." (OPDA-FLANKS008481-83) | Relevance, Hearsay, Lack of personal knowledge |
| Transcript of Deposition of Orleans Parish District Attorney's Office ("OPDA") (in the above-captioned case) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of Deposition of City of New Orleans (in the above-captioned case) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript and Video of Deposition of John Dillmann (in the above-captioned case) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript and Video of Deposition of Jason Williams (in the above-captioned case) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of November 17, 2022, Vacatur Hearing in *State v. Flank* (FLANKS_002900-2928) | Hearsay, Lack of personal knowledge |
| Electric Chair (in the possession of James "Jim" Williams) | Relevance, 403 (unfair prejudice, confusion, misleading) |

---

[1] Objections are on behalf of all Defendants.

| | |
|---|---|
| August 21, 2022, Affidavit of Bruce Whittaker (FLANKS_004100-4102) | Hearsay |
| Video Recording of September 11, 2025, Meeting of the Judiciary C Committee of the Louisiana Senate (FLANKS_004835) | Hearsay, Relevance, Lack of personal knowledge |
| Video Recording of September 5, 2024, Testimony of Jason Williams to the Louisiana Senate (FLANKS_004834) | Hearsay, Relevance, Lack of personal knowledge |
| May 13, 1991, Findings of Investigation of Louisiana State Penitentiary at Angola (FLANKS_004824-4832) | Hearsay, Relevance, 403 (unfair prejudice, confusion, misleading), Lack of personal knowledge |
| "About Row 7" Webpage (FLANKS_004818) | Hearsay, Relevance |
| "Deliver Justice" from OPDA Webpage (FLANKS_004833) | Hearsay, Relevance, Lack of personal knowledge |
| Transcript of May 12, 2014, Post-Conviction Hearing in *State v. Adams* (OPDA-FLANKS008552-8565) | Hearsay, Relevance, Lack of personal knowledge |
| Transcript of September 26, 2013, Post-Conviction Hearing in *State v. Robert Jones* (OPDA-FLANKS013211-13341) | Hearsay, Relevance, Lack of personal knowledge |
| Transcript of January 9, 2017, Deposition of John Dillmann (OPDA-FLANKS004563-4916) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of October 27, 2016, Deposition of OPDA (Graymond Martin) (OPDA-FLANKS006614-6827) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of February 20, 2017, Deposition of Harry Connick (OPDA-FLANKS007517-7639) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of May 26, 2005, Deposition of Harry Connick (OPDA-FLANKS007640-7723) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of May 8, 2007, Deposition of Harry Connick (OPDA-FLANKS007724-7828) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of April 18, 2005, Deposition of Harry Connick (OPDA-FLANKS007934-7963) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of February 6, 2001, Deposition of Harry Connick (OPDA-FLANKS010253-10283) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |

| | |
|---|---|
| Transcript of March 14, 2022, Deposition of John Dillmann (OPDA-FLANKS010707-10936) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of February 13, 2019, Deposition of Harry Connick (OPDA-FLANKS012367-12489) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of February 11, 2019, Deposition of Harry Connick (OPDA-FLANKS015946-16157) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of May 26, 2005, Deposition of Harry Connick (OPDA-FLANKS019380-19644) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of John Thompson Trial (OPDA-FLANKS021244-22364) | Hearsay, Relevance; 403 (unfair prejudice, confusion, misleading, delay, wasting time, cumulative) |
| Transcript of April 30, 2025, Deposition of Jason Williams in *Reeder v. Williams,* et al. (E.D. La. No. 22-CV-4614) | All objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Joint Agreement and Motion to Vacate Conviction (OPDA-FLANKS000036-47) | Relevance, Hearsay, 403 (unfair prejudice, confusion, misleading) |
| Photos of Plaintiff and Jason Williams (FLANKS_004848-55)* | |
| Photo of Jim Williams and Electric Chair (OPDA-FLANKS020526, R. Doc. 182-1 at PDF p.23)* | |
| Photo of "Beanie" (FLANKS_004863)* | |
| Photos of Plaintiff and His Fiancee (FLANKS_004857-62)* | |
| Childhood Photos of Plaintiff and Family (FLANKS_004839-47)* | |

| **Exhibits Plaintiff May Offer if the Need Arises – Admitted Without Objection** |
|---|
| *Truvia v. Connick* (Lexis) (August 8, 2014) |

---

\* These exhibits are the subject of Plaintiff's pending motion to amend his exhibit list, R. Doc. 182, which is opposed by Defendants.

| Exhibits Plaintiff May Offer if the Need Arises – With Objections | Nature of Objections[2] |
|---|---|
| OPDA's Responses & Objections to Plaintiff's First Set of Interrogatories | Relevance |
| John Dillmann's Responses & Objections to Plaintiff's First Set of Interrogatories | Relevance |
| OPDA's Responses & Objections to Plaintiff's First Set of Requests for Admission | Relevance, 403 (cumulative) |
| Plaintiff's First Set of Requests for Admission to Anne Kirkpatrick/the City of New Orleans | Relevance |
| Plaintiff's First Set of Requests for Admission to John Dillmann | Relevance, 403 (cumulative) |
| Transcript of January 11, 2017, Deposition of Ralph Capitelli (OPDA-FLANKS008626-8785) | Hearsay; All other objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of May 9, 2022, Deposition of Kendall Green (OPDA-FLANKS011240-11443) | Hearsay; All other objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| Transcript of March 26, 2019, Deposition of Camille Buras (OPDA-FLANKS013855-14197) | Hearsay; All other objections reserved per Paragraph 11(a) of Pre-Trial Notice |
| *State v. Hammler* (Lexis) (April 24, 1975) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *Lockett v. Blackburn* (Lexis) (April 12, 1978) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *Monroe v. Blackburn* (Lexis) (November 21, 1979) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *Davis v. Heyd* (Lexis) (May 29, 1973) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *Smith v. Cain* (Lexis) (January 10, 2012) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |

---

[2] Objections are on behalf of all Defendants.

| | |
|---|---|
| *Clark v. Blackburn* (Lexis) (December 10, 1980) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *Kyles v. Whitley* (Lexis) (April 19, 1995) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Carney* (Lexis) (June 21, 1976) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Curtis* (Lexis) (May 19, 1980) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Falkins* (Lexis) (March 6, 1978) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Knapper* (Lexis) (May 6, 1991) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Lindsey* (Lexis) (April 2, 2003) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Oliver* (Lexis) (October 9, 1996) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Perkins* (Lexis) (November 29, 1982) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Rosiere* (Lexis) (May 20, 1986) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Smith* (Lexis) (December 11, 1991) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Thompson* (Lexis) (July 17, 2002) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
| *State v. Washington* (Lexis) (June 29, 1989) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |

| *Floyd v. Cain* (Lexis) (September 9, 2016) | Hearsay, Relevance, Lack of personal knowledge; Lack of authentication |
|---|---|

**Exhibits Defendants Intend to Introduce – Admitted Without Objection**

| # | Exhibit | Bates Numbers |
|---|---|---|
| 9 | Transcript of testimony from January 19, 1984 grand jury in State v. Raymond Flank | OPDA-FLANKS000511–17, FLANKS_004102–08 |
| 10 | Transcript of Faye Carnesi testimony from August 22, 1984 hearing in Case No. 299-809 | FLANKS_003005–32 |
| 13 | Transcript of May 14–15, 1985 trial in Case No. 299-809 | OPDA-FLANKS000537–664, FLANKS_002760–2887 |
| 20 | Plea of Guilty Form in Case No. 299-825 | FLANKS_003437-3438 |
| 21 | Judgment of Sentencing in Case No. 299-825 | DPSC-FLANKS00034 |
| 41.14 | NOPD Evidence and Property Cards for Item No. L-23281-83 | CNO 041 - CNO 042 |
| 52.17 | GJ Transcript - Fay Carnesi | OPDA-FLANKS000511–17 |
| 53.5 | Car Photos | OPDA-FLANKS027904-027906 |
| 53.7 | NOPD Evidence/Property Card | OPDA-FLANKS027947-027948 |
| 85 | April 20, 2022 letter from Mike Early | FLANKS_002935 |
| 86 | June 24, 1985 Letter from Flanks | FLANKS_003178-003180 |
| 91 | Records produced by the Bureau of Alcohol Tobacco and Firearms in response to OPDA's subpoena | ATF00001–18 |
| 93 | Map of Pines Village area | FLANKS_004198 |
| 94 | Photographs of Flanks Post-Release | |
| 95 | December 27, 1983 report of NOPD Crime Lab | FLANKS_003522 |

**Exhibits Defendants Intend to Introduce – With Objections[3]**

| # | Exhibit | Bates Numbers | Nature of Objections |
|---|---------|---------------|----------------------|
| 1 | Docketmaster for Case No. 299-809 | FLANKS_003986-3988 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 2 | Minute entries for Case No. 299-809 | FLANKS_003989-4021; 3147-3148; 3158-3160; 3412-3420 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 hearsay |
| 3 | Bill of Indictment for Carnesi murder | FLANKS_3129-3130 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 4 | Filed defense motions in Case No. 299-809 | FLANKS_3196-3208 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); |
| 5 | Filed answers to defense motions in Case No. 299-809 | FLANKS_003186-3191 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 901 (authentication) |
| 6 | Filed witness work sheet for Case No. 299-809 | FLANKS_003220-3221 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 7 | Defense subpoena duces tecum in Case No. 299-809 | FLANKS_003195 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 hearsay |
| 8 | Filed return on defense subpoena duces tecum in Case No. 299-809 | FLANKS_003192-3194 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 hearsay |
| 11 | Transcript of John Dillmann testimony from August 22, 1984 hearing in Case No. 299-809 | FLANKS_003033–52 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 hearsay |

---

[3] All objections are by the Plaintiff.

| 12 | Transcript of Ralph Flank testimony from August 29, 1984 trial in Case No. 299-809 | OPDA-FLANKS000519–36 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 hearsay |
|---|---|---|---|
| 14 | Transcript of jury charges from May 14–15, 1985 trial in Case No. 299-809 | FLANKS_003053–98 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 15 | Docketmaster for Case No. 299-825 | FLANKS_003421-003422 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character) |
| 16 | Minute Entries for Case No. 299-825 | FLANKS_003423-3436 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |
| 17 | Bill of Information for Case No. 299-825 | OPDA-FLANKS027949 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |
| 18 | Arrest Register for Case No. 299-825 | OPDA-FLANKS027950 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |
| 19 | Transcript of January 10, 1984 preliminary hearing in State v. Raymond Flank, Case No. M-142727 | FLANKS_003439–44 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |
| 22 | Docketmaster for Case No. 299-932 | FLANKS_003468-003469 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay); 901 (authentication) |
| 23 | Minute Entries for Case No. 299-932 | FLANKS_003449-3467 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay); 901 (authentication) |

| 24 | Bill of Information for Case No. 299-932 | FLANKS_003445-3446 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |
|---|---|---|---|
| 25 | Arrest Register for Case No. 299-932 | FLANKS_003447 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay); 901 (authentication) |
| 26 | Screening Action Form for Case No. 299-932 | FLANKS_004089 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |
| 27 | December 13, 1988 Opinion in Case No. KA-7733, Louisiana Fourth Circuit Court of Appeal | FLANKS_002991–3004 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 & 802 (hearsay) |
| 28 | June 2, 1992 Order denying post-conviction relief in Case No. 299-809, Orleans Parish Criminal District Court | FLANKS_003659 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 29 | November 11, 1995 Order denying writs in Case No. 93-KH-1094, Louisiana Supreme Court | FLANKS_004631 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 30 | January 12, 1996 Order denying reconsideration in Case No. 93-KH-1094, Louisiana Supreme Court | FLANKS_004632 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 31 | Report and recommendation from Magistrate Moore in Case No. 96-cv-4155, U.S. District Court for the Eastern District of Louisiana | OPDA-FLANKS000119-125 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |

| 32 | Judgment in Case No. 96-cv-4155, U.S. District Court for the Eastern District of Louisiana | OPDA-FLANKS000110-112 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
|---|---|---|---|
| 33 | May 24, 1999 Order denying writs in Case No. 99-K-0627, Louisiana Fourth Circuit Court of Appeal | FLANKS_002964–65 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 34 | November 19, 1999 Order denying writs in Case No. 99-KH-1917, Louisiana Supreme Court | FLANKS_003790 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 35 | October 5, 2004 Judgment denying post-conviction relief in Case No. 299-809, Orleans Parish Criminal District Court | FLANKS_003809–10 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 36 | December 21, 2004 Order denying writs in Case No. 2004-K-1929, Louisiana Fourth Circuit Court of Appeal | FLANKS_004668, 2936 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 37 | July 16, 2014 Application for Post-Conviction Relief in Case No. 299-809, Orleans Parish Criminal District Court | FLANKS_004599–4610, 3353–3406, 3844–95 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 38 | September 17, 2014 Judgment denying post-conviction relief in Case No. 299-809, Orleans Parish Criminal District Court | FLANKS_003351–52 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 39 | December 16, 2014 Order denying writs in Case No. 2014-K-1298, Louisiana Fourth Circuit Court of Appeal | FLANKS_003914 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |

| 40 | April 4, 2016 Order denying writs in Case No. 2015-KH-0177, Louisiana Supreme Court | FLANKS_003470–74 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
|---|---|---|---|
| 41 | **NOPD Case file for Item No. L-17352-83** | CNO 001 - CNO 053 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.1 | NOPD Incident Report for Martin Carnesi murder, Item No. L-17352-83 | CNO 006 - CNO 012 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.2 | NOPD Supplemental Report for Martin Carnesi murder, Item No. L-17352-83 | CNO 001 - CNO 005 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.3 | NOPD Incident Report for Item No. L-232810-83 | CNO 013 - CNO 024 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.4 | December 27, 1983 "daily" for Item No. L-17352-83 | CNO 025 - CNO 026 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.5 | December 20, 1983 "daily" for Item No. L-17352-83 | CNO 027 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41,6 | December 19, 1983 "daily" for Item No. L-17352-83 | CNO 028 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.7 | December 17, 1983 "daily" for Item No. L-17352-83 | CNO 029 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.8 | Firearm Trace Raven Arms 25 Caliber SN683233 | CNO 030 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |

| 41.9 | Criminal history printout for Ralph Flank | CNO 031 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
|---|---|---|---|
| 41.1 | Criminal history printout for Raymond Flanks | CNO 032 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.11 | Booking photographs of Raymond Flanks | CNO 033 - CNO  034 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 41.12 | Crime Scene photographs for Item No. L-17352-83 | CNO 035 - CNO 036 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 41.13 | NOPD Crime Scene Technician Report for Item No. L-17352-83 | CNO 037 - CNO 040 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.15 | Coroner's Office autopsy and day records | CNO 043 - CNO 044 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.16 | NOPD Complaint History Detail for Item No. L-17352-83 | CNO 045 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 41.17 | Handwritten notes from NOPD case file for Item No. L-17352-83 | CNO 046 - CNO 053 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 42 | Arrest Register for Raymond Flank, Item No. L-17352-83 | OPDA-FLANKS000408 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 43 | Raymond Flank booking photos, undated | OPDA-FLANKS000271–72 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |

| 44 | NOPD Incident Report for Item No. L-02521-83 | OPDA-FLANKS000369–72 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
|---|---|---|---|
| 45 | NOPD Incident Report for Item No. L-07810-83 | OPDA-FLANKS000373–77 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 46 | NOPD Incident Report for Item No. L-12171-83 | OPDA-FLANKS000378–81 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 47 | NOPD Supplemental Report for Item No. L-12171-83 | OPDA-FLANKS027969-27974 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 48 | Arrest register Item No. L-12171-83 | OPDA-FLANKS027967 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 49 | NOPD Operations Manual, Rule 2 - Moral Conduct | CNO-012926 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 50 | NOPD FSOP 3.0 - Consulting the District Attorney | CNO-020572 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 51 | NOPD FSOP 5.0 - Identification of Suspects - Lineups, Crime Scenes, and Mug Shots | CNO-020768 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 52 | **OPDA case file for Case No. 299-809** | OPDA-FLANKS382-510, 27852–96 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |

| 52.1 | OPDA file jacket for Case No. 299-809 | OPDA-FLANKS027886–88 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
|---|---|---|---|
| 52.2 | Case Review and Trial Brief for Case No. 299-809 | OPDA-FLANKS027858 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.3 | Case Review Sheet | OPDA-FLANKS027859 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.4 | Application for Bill of Particulars with handwritten responses | OPDA-FLANKS027852–57 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.5 | Prayer for Oyer with handwritten responses | OPDA-FLANKS027890 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.6 | Suppression Motions w/ Written Responses | OPDA-FLANKS027880-027884 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.7 | ADA Check List Prior to Trial | OPDA-FLANKS000409 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.8 | 12/17/1983 CIB Report | OPDA-FLANKS000382-383 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.9 | 12/19/1983 CIB Report | OPDA-FLANKS000384 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.1 | 12/20/1983 CIB Report | OPDA-FLANKS000385 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |

| 52.11 | 12/27/1983 CIB Report | OPDA-FLANKS000386 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
|---|---|---|---|
| 52.12 | 1/5/1984 Forensic Lab Report | OPDA-FLANKS000387 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.13 | 2/13/1985 ATF Report | OPDA-FLANKS000389-390 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 52.14 | Arrest Register | OPDA-FLANKS000408 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.15 | Coroner Documents | OPDA-FLANKS000411-415 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 et seq. (hearsay) |
| 52.16 | Crime Scene Tech Report | OPDA-FLANKS000416-419 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 52.18 | Screening Action Form | OPDA-FLANKS027896 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 52.19 | Criminal History | OPDA-FLANKS000424 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 52.2 | Article | OPDA-FLANKS000456 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 52.21 | Incident Report | OPDA-FLANKS000433 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |

| 52.22 | Supplemental Report | OPDA-FLANKS000485-490 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
|---|---|---|---|
| 52.23 | Witness Work Sheet | OPDA-FLANKS000510 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 52.24 | Transcript of Ralph Flanks | OPDA-FLANKS000519–36 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 52.25 | Indictment | OPDA-FLANKS000443 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53 | **OPDA case file for Case No. 299-825** | OPDA-FLANKS027897-027952 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53.1 | Case Review and Trial Brief for Case No. 299-825 | OPDA-FLANKS027901 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53.2 | Answer to Bill of Particulars | OPDA-FLANKS027911-027912 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53.3 | Answers to Motions to Suppress | OPDA-FLANKS027913-027914 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53.4 | Answer to Motion for Discovery & Inspection | OPDA-FLANKS027924-027925 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53.6 | Incident Report | OPDA-FLANKS027937-027946 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |

| 53.8 | Arrest Register | OPDA-FLANKS027950 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
|---|---|---|---|
| 53.9 | Screening Action Form | OPDA-FLANKS027951 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53.1 | Bill of Information | OPDA-FLANKS027949 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 53.11 | Witness Work Sheet | OPDA-FLANKS027952 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 54 | **OPDA case file for Case No. 299-932** | OPDA-FLANKS027954-027975 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 54.1 | Case Review and Trial Brief for Case No. 299-932 | OPDA-FLANKS027958 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 54.2 | Affidavit and NP Form for Case No. 299-932 | OPDA-FLANKS027961-27962 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 54.3 | Raymond Flanks Criminal History | OPDA-FLANKS027959 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 54.4 | Screening Action Form | OPDA-FLANKS027965 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
| 54.5 | Bill of Information | OPDA-FLANKS027966 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |

| 54.6 | Arrest Register | OPDA-FLANKS027967 | 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 602 (foundation); 801 et seq. (hearsay) |
|---|---|---|---|
| 54.7 | Incident Report | OPDA-FLANKS027971-027974 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character) |
| 54.8 | Supplemental Report | OPDA-FLANKS027969-027970 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character) |
| 54.9 | Witness Work Sheet | OPDA-FLANKS027975 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character) |
| 55 | OPDA revised annual report for 1988 | OPDA-FLANKS027977–82 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 56 | OPDA Screening Division annual report for 1989 | OPDA-FLANKS027983–28022 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 57 | OPDA Trial Division annual report for 1989 | OPDA-FLANKS028023–49 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 58 | OPDA Screening Division annual report for 1990 | OPDA-FLANKS028050–93 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 59 | OPDA Trial Division annual report for 1990 | OPDA-FLANKS028094–129 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 60 | OPDA Screening Division annual report for 1991 | OPDA-FLANKS028130–164 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |

| 61 | OPDA Trial Division annual report for 1991 | OPDA-FLANKS028165–201 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
|----|----|----|----|
| 62 | OPDA Screening Division annual report for 1992 | OPDA-FLANKS028202–31 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 63 | OPDA Trial Division annual report for 1992 | OPDA-FLANKS028232–267 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 64 | OPDA Screening Division annual report for 1993 | OPDA-FLANKS028268–289 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 65 | OPDA Trial Division annual report for 1993 | OPDA-FLANKS028290–324 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 66 | OPDA Screening Division annual report for 1994 | OPDA-FLANKS028325–46 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 67 | OPDA Trial Division annual report for 1994 | OPDA-FLANKS028347–83 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 68 | OPDA Screening Division annual report for 1995 | OPDA-FLANKS028384–413 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 69 | OPDA Trial Division annual report for 1995 | OPDA-FLANKS028414–58 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 70 | OPDA Screening Division annual report for 1996 | OPDA-FLANKS028459–84 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |

| 71 | OPDA Trial Division annual report for 1996 | OPDA-FLANKS028485–533 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
|----|--------------------------------------------|------------------------|----------------------------------------------------------------------------------------------------------------------------|
| 72 | OPDA Screening Division annual report for 1997 | OPDA-FLANKS028534–58 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 73 | OPDA Trial Division annual report for 1997 | OPDA-FLANKS028559–604 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 74 | OPDA Screening Division annual report for 1998 | OPDA-FLANKS028605–32 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 75 | OPDA Trial Division annual report for 1998 | OPDA-FLANKS028633–80 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 76 | OPDA Screening Division annual report for 1999 | OPDA-FLANKS028681–708 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 77 | OPDA Trial Division annual report for 1999 | OPDA-FLANKS028709–55 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 78 | Louisiana State Bar Code of Professional Responsibility, version in effect in 1984–1985 | | No document identified |
| 79 | October 3, 2023 Contract for Guest Speaker | FLANKS_002929–30 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 80 | Video recording of Visiting Room interview with Raymond Flanks | | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |

| 81 | Transcript of Visiting Room interview with Raymond Flanks | | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 404 (character); 801 (hearsay) |
|---|---|---|---|
| 82 | Matthew Martens interview with Raymond Flanks, available at https://www.wordmp3.com/details.aspx?id=50851 | | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 83 | DOC Discharge on Armed Robbery Sentence | DPSC-FLANKS00045 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 801 (hearsay) |
| 84 | Post Sentence Investigation Report | Sealed Medical Records p.2-6 of 49 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative); 602 (foundation); 801 (hearsay) |
| 87 | July 14, 1985 Letter from Flanks | FLANKS_003172-003173 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 88 | July 22, 2013 letter from Raymond Flank to Leon Cannizzaro, with note to Emily Maw | FLANKS_003512 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 89 | May 19, 2014 letter from Raymond Flank to Emily Maw, with attachments | FLANKS_004117–86 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 90 | Handwritten letter from Raymond Flank to Emily Maw | FLANKS_004147 | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |
| 92 | Photograph of Martin Carnesi | | 402 (relevance); 403 (waste of time, confusion, misleading, unfair prejudice, cumulative) |

XI.    **A list of all deposition testimony that each party intends to offer into evidence at trial.**

The Plaintiff intends to offer the deposition testimony of Harry Connick, Leon Cannizzaro, John Dillmann, Orleans Parish District Attorney's Office, the City of New Orleans, Jason Williams, and other deposition transcripts identified as exhibits above.

The Defendants intend to introduce portions of Raymond Flanks's deposition testimony at trial. Additionally, to the extent that any other party introduces deposition testimony in evidence, the Defendants reserve their right under Federal Rule of Civil Procedure 32(a)(6) to introduce other portions of the deposition. The Defendants may also use the deposition testimony of other witnesses as necessary for purposes of impeachment. Finally, to the extent that any witness is unavailable for trial, the Defendants reserve their rights under Federal Rule of Civil Procedure 32(a)(6) to introduce that witness's deposition testimony.

The Defendants have objected to the Plaintiff's deposition designations on the ground that they were not timely submitted. *See* Doc. No. 141. The Defendants further contend that the deadlines regarding deposition designations were not extended by the Court's December 2, 2025 order continuing the trial because the order provides that all deadlines other than those addressed in the order "remain unchanged." Doc. No. 155. Plaintiff is working diligently to pare down his previously submitted testimony designations and requests a deadline of January 8 to provide notice of any designations for which there are objections that the parties cannot amicably resolve. The Defendants maintain their objections but are willing to review any revised designations sent by the Plaintiff and consider whether they can reach any agreement.

XII.    **A list and brief description of any charts, graphs, models, schematic diagrams, and similar objects which, although not to be offered in evidence, respective counsel intend to use in opening statements or closing arguments.**

Any such demonstrative that any party intends to use was provided to counsel for all other parties at least **five** full working days prior to trial. If there is any opposition to their use, the dispute will be submitted to the Court at least **three** full working days prior to trial.

XIII(a).    **A "will call" list of witnesses for all parties, including the names, addresses, and statement of expected testimony.**

**For Plaintiff Raymond Flanks:**

**Plaintiff Expects to Call**

| Witness Name | Address and Phone Number | Brief Statement of Testimony |
|---|---|---|
| Jamie Becker | Through Plaintiff's counsel | Firearms and ballistics expert witness to opine on the original firearms evidence in this case and concerns therein |
| Brandy Bradley | Through Plaintiff's counsel | Forensic vocational expert witness to opine on damages to Mr. Flanks |
| Brian L. Cutler | Through Plaintiff's counsel | Eyewitness procedure expert witness to opine on the eyewitness identifications in this case; the likely psychological effect that Dillmans alleged actions during the photo lineup procedure would have, as known in the psychological research on the risks of false eyewitness identification and false eyewitness confidence. False confidence refers to the expression of a high level of confidence in a mistaken eyewitness identification; factors that could affect the risk of false identification and false confidence in this case |
| Dr. Sarah DeLand | Through Plaintiff's counsel | Expert witness on the psychiatric effect on Mr. Flanks due to his incarceration at Angola |
| Ralph Flanks | 1657 Treasure Street New Orleans, LA 70119 | Raymond Flanks's innocence of the murder of Martin Carnesi; the investigation of the murder of Martin Carnesi; OPDA and NOPD employees' conduct in the case of Raymond Flanks |

| Witness Name | Address and Phone Number | Brief Statement of Testimony |
|---|---|---|
| Raymond Flanks | Through counsel | Raymond Flanks's innocence of the murder of Martin Carnesi; the investigation of the murder of Martin Carnesi; OPDA and NOPD employees' conduct in the case of Raymond Flanks |
| Laurie Levenson | Through Plaintiff's counsel | Policies and practices of OPDA expert witness to opine on whether the policies in place in 1983 complied with *Brady*, and if they contributed to Mr. Flanks' wrongful conviction |
| Dr. Kathryn Thomas | Through Plaintiff's counsel | Expert testimony—psychological assessment of Mr. Flanks revealing diagnoses of Post-Traumatic Stress Disorder and Obsessive Compulsive Disorder related to his incarceration; to opine on scientific research related to exonerees and mental health issues |
| Sullivan Dabney | 1490 Mirabeau Avenue New Orleans, LA 70122 (404) 644-7972 | Character, reputation, and physical appearance of Raymond Flanks in and before 1983 |
| John Jerry Glas | Deutsch Kerrigan 755 Magazine Street New Orleans, LA 70130 (504) 593-0627 | OPDA policies, customs, and/or practices concerning preventing and responding to alleged, potential, or established constitutional violations by OPDA employees, including, but not limited to, hiring, training, disciplinary, investigative, managerial, supervisory, and other personnel matters. |
| John Dillmann | Through counsel | The murder of Martin Carnesi; investigation of the murder of Martin Carnesi; OPDA and NOPD employees' conduct in the case of Raymond Flanks; NOPD policies, customs, and/or practices exhibiting deliberate indifference to employees' constitutional violations; pattern and practice of prosecutorial and investigative misconduct resulting in constitutional violations |

| Witness Name | Address and Phone Number | Brief Statement of Testimony |
|---|---|---|
| Kendall Green | Current Address Unknown (504) 782-5220 | OPDA policies, customs, and/or practices concerning preventing and responding to alleged, potential, or established constitutional violations by OPDA employees, including, but not limited to, hiring, training, disciplinary, investigative, managerial, supervisory, and other personnel matters. |
| James ("Jim") Williams | 706 Derbigny Street Gretna, LA 70053 (504) 361-0636 | Prosecution of the murder of Martin Carnesi; OPDA policies, customs, and/or practices concerning preventing and responding to alleged, potential, or established constitutional violations by OPDA employees, including, but not limited to, hiring, training, disciplinary, investigative, managerial, supervisory, and other personnel matters. |
| Cassandra Delpit | (504) 289-9812 | Raymond Flanks's character and conditions at Angola State Prison; effect of incarceration on Mr. Flanks |
| Nicholas Joseph Trenticosta | (504) 352-8019 7100 Saint Charles Avenue New Orleans, LA 70118 | NOPD and/or OPDA policies, customs, and/or practices concerning violations of state and federal law and the state and federal constitutions by police and prosecutors. |
| Isaac Knapper | (504) 524-0660 2836 Conti Street New Orleans, LA 70119 | NOPD and/or OPDA policies, customs, and/or practices concerning violations of state and federal law and the state and federal constitutions by police and prosecutors. |
| Jeffrey Smith | (504) 289-0301 2735 Tulane Ave. New Orleans, LA 70119 | Mr. Flanks's criminal defense; NOPD and/or OPDA policies, customs, and/or practices concerning violations of state and federal law and the state and federal constitutions by police and prosecutors. |

**For the Defendants:**

1.      Jim Williams
        (504) 361-0636
        708 Derbigny Street

Gretna, LA 70053

Mr. Williams is expected to testify about the prosecution of Raymond Flanks for the murder of Martin Carnesi and other robberies that occurred in December 1983. Mr. Williams is also expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution.

2.  District Attorney Jason Williams
    *contact through counsel for OPDA*
    Mr. Williams is expected to testify about Raymond Flanks's post-conviction proceedings and the Civil Rights Division review of Mr. Flanks's conviction. Mr. Williams is also expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution, based on his office's review of numerous convictions from around that time.

3.  Michael Grey
    *contact through counsel for OPDA*
    Mr. Grey is expected to testify about Raymond Flanks's post-conviction proceedings and the Civil Rights Division review of Mr. Flanks's conviction.

4.  Ralph Capitelli
    (504) 582-2425
    1100 Poydras Street, Suite 2950
    New Orleans, LA 70163
    Mr. Capitelli is expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution.

5.  Timothy McElroy
    (504) 442-0168
    1400 Bonnabel Blvd.
    Metairie, LA 70005
    Mr. McElroy is expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution.

6.  Bridget Bane
    (504) 434-9776
    1 Wagon Train Lane
    Saint Rose, LA 70087
    Ms. Bane is expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution.

7.  Honorable Dennis Waldron
    (504) 895-7824

1007 Soniat Street
New Orleans, LA 70115
Judge Waldron is expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution.

8.  Claude Kelly
(504) 655-1646
500 Poydras Street, Room 318
New Orleans, LA 70130
Mr. Kelly is expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution.

9.  Michael Simpson
(504) 680-3000
650 Poydras Street, 16th Floor
New Orleans, LA 70130
Mr. Simpson is expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office during and around the time of Mr. Flanks's prosecution.

10. Diane Major
(225) 637-2229
5577 Fordoche Road
Fordoche, LA 70732
Ms. Major is expected to testify about the policies, practices, and customs of the Orleans Parish District Attorney's Office relating to grand jury proceedings during and around the time of Mr. Flanks's prosecution.

11. John Dillmann
*contact through his counsel*
Mr. Dillmann is expected to testify about the murder of Martin Carnesi, other robberies that occurred in the same area in December 1983, and the police investigation into those crimes. Mr. Dillmann is also expected to testify about the prosecution of Raymond Flanks. Mr. Dillmann is also expected to testify about his training as to eyewitness identification procedures and about New Orleans Police Department policies, practices, and training, during and around the time of the Carnesi murder investigation, concerning provision of evidence and information to the Orleans Parish District Attorney's Office in effect during and around the time of the Carnesi murder investigation.

12. Michael Lentz
(504) 261-4804
5831 Pembrook Drive
New Orleans, LA 70131
Mr. Lentz is expected to testify about the murder of Martin Carnesi, other robberies

that occurred in the same area in December 1983, and the police investigation into those crimes. Mr. Lentz is also expected to testify about New Orleans Police Department policies, practices, and training, during and around the time of the Carnesi murder investigation, concerning eyewitness identification procedures and to provision of evidence and information to the Orleans Parish District Attorney's Office.

13. Raymond Flanks
   *contact through his counsel*
   Mr. Flanks is expected to testify about the murder of Martin Carnesi, other robberies that occurred in the same area in December 1983, and the police investigation into those crimes. Mr. Flanks is also expected to testify about his prosecution for that murder and two of those robberies, including post-conviction proceedings. Mr. Flanks is also expected to testify about the claims and allegations he has made in this case.

14. Debra C. Gonzales
   (504) 261-1213
   6044 Milne Blvd.
   New Orleans, LA 70124
   Ms. Gonzales is expected to testify about the murder of Martin Carnesi, the police investigation into that murder, and about Raymond Flanks's post-conviction proceedings.

15. Julio Gonzalez
   (504) 382-9014
   Address unknown
   Mr. Gonzalez is expected to testify about the murder of Martin Carnesi and the police investigation into that murder.

16. Lieutenant David Barnes
   *contact through counsel for City of New Orleans*
   Lieutenant Barnes is expected to testify about New Orleans Police Department policies and procedures in effect during and around the time of the Carnesi murder investigation.

17. Detective Ryan Aucoin
   *contact through counsel for City of New Orleans*
   Detective Aucoin is expected to testify about the records maintained by the New Orleans Police Department homicide division for Item No. L-17352-83.

18. Tumulesh K.S. Solanky
   (504) 427-0188
   4717 Rue Laurent, Metairie, LA 70002
   Dr. Solanky is expected to testify about his findings, opinions, and conclusions set forth in his expert report issued in this case, concerning statistical comparisons of the number of alleged *Brady* violations in Orleans Parish to the number of prosecutions,

pleas, trials, and trial convictions.

**XIII(b)-(c).    Statements regarding witnesses.**

Witness lists were filed in accordance with the Federal Rules of Civil Procedure and prior court orders. The parties have exchanged expert reports in accordance with the Federal Rules of Civil Procedure and prior court orders.

**XIV.    A statement indicating whether the case is a jury or non-jury case.**

This is a jury case. The jury trial is applicable to all aspects of the case. Proposed jury instructions, special jury interrogatories, trial memoranda, and any special questions that the Court is asked to put to prospective jurors on voir dire shall be electronically filed with the Court not later than **seven** full working days prior to the trial date, unless specific leave to the contrary is granted by the Court. The parties will comply with the requirement for trial memoranda, which should address any anticipated evidentiary problems which require briefing and jury instructions and special jury interrogatories that require explanation beyond mere citation to authority, and which are to be electronically filed not less than **seven** full working days prior to trial.

**XV.    A statement regarding separate trials of liability and quantum.**

The issue of liability will not be tried separately from that of quantum.

**XVI.    A statement describing any other matters that might expedite a disposition of the case.**

None known at this time.

**XVII.    A statement regarding the commencement and duration of trial.**

Trial shall commence on January 12, 2026, at 9:00 a.m. The parties estimate that eight days of trial are required.

**XVIII. A statement regarding formulation of the pre-trial order.**

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared.  Reasonable opportunity has been afforded counsel for corrections or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**XIX.   A statement regarding settlement.**

Possibility of settlement of this case was considered.


MURELL LAW FIRM                              SHANIES LAW OFFICE


By: */s/ Christopher J. Murell*
      Christopher J. Murell
      La. Bar No. 32075                        By: _____
      Meghan K. Matt
      La. Bar No. 39975                        David B. Shanies* (T.A.)
      4005 Saint Claude Avenue                 Deborah I. Francois*
      New Orleans, Louisiana 70117             Tristan M. Ellis*
      (504) 717-1297 (Tel)                     Eleanor C. Davis*
      chris@murell.law                         110 West 40th Street, Tenth Floor
      meghan@murell.law
                              New York, New York 10018
                              (212) 951-1710 (Tel)
                              (212) 951-1350 (Fax)
                              david@shanieslaw.com
                              deborah@shanieslaw.com
                              tristan@shanieslaw.com
                              eleanor@shanieslaw.com

                              *Admitted *Pro Hac Vice*


*/s/ William R.H. Goforth*                    */s/ Matthew J. Paul*
**William R.H. Goforth, 33153**               W. Raley Alford, III, 27354
Assistant City Attorney                       Matthew J. Paul, 37004
**Sean M. Markey, 41467**                     Inga C. Petrovich, 31284
Assistant City Attorney

**Jalen R. Harris, 41073**
Assistant City Attorney
**Corwin St. Raymond, 31330**
Chief Deputy City Attorney
**Donesia D. Turner, 23338**
City Attorney
1330 Perdido Street
City Hall – Room 5E03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Fascimile: (504) 658-9868
wrgoforth@nola.gov

*Counsel for City of New Orleans, Anne Kirkpatrick, in her official capacity as Superintendent of the New Orleans Police Department, and John Dillmann*

STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile: (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com
icp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*

**NEW ORLEANS, LOUISIANA,** this  9th  day of January, 2026.


**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**